**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAEL CANAAN, | ) | Civil Action No. 2:23-cv-02107-WSH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARNEGIE MELLON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Joshua W. B. Richards (Pa. I.D. 204315)*
Patrick F. Nugent (Pa. I.D. 313979)*
*Admission Pending*
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7737 / -7134
E-mail: Joshua.Richards@saul.com
E-mail: Patrick.Nugent@saul.com

John Paul Regan (Pa. I.D. 320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Telephone: (412) 209-2500
E-mail: JP.Regan@saul.com

*Counsel for Defendant Carnegie Mellon University*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

III.    LEGAL STANDARDS ....................................................................................... 9

IV.     ARGUMENT ..................................................................................................... 10

     A.     Canaan fails to state a discrimination claim under Title VI because she does not allege that she was treated differently from similarly-situated, non-Jewish students.................................................................................................... 10

     B.     Canaan fails to state a hostile educational environment claim under Title VI because she was not subject to severe and pervasive harassment and CMU was not deliberately indifferent. ........................................................................ 11

        1.     Canaan does not allege "severe, pervasive, and objectively offensive" harassment. ............................................................... 12

        2.     Canaan does not allege that the University was deliberately indifferent to any alleged harassment. ...................................... 16

     C.     Canaan fails to state a retaliation claim under Title VI because she does not allege that the University engaged in a material adverse action. .......................... 17

     D.     Canaan fails to state a claim for breach of contract because the procedures upon which Canaan relies do not apply. .............................................................. 18

     E.     Canaan fails to state a claim for intentional infliction of emotional distress because the conduct alleged is not extreme and outrageous and was not alleged to be of the kind and nature that Arscott was hired to perform................ 20

     F.     Dismissing the Complaint with prejudice is warranted because amendment would be futile. ....................................................................................................... 23

V.      CONCLUSION................................................................................................... 24

EXHIBIT 1 – *Office for Institutional Equity & Title IX, Resource Guide & Information*, CARNEGIE MELLON UNIVERSITY

EXHIBIT 2 – *Procedures for Alleged Violations of the Statement of Assurance*, CARNEGIE MELLON UNIVERSITY

EXHIBIT 3 – *Sexual Misconduct Policy*, § III "Prohibited Conduct," CARNEGIE MELLON UNIVERSITY

EXHIBIT 4 – Danah Abdulla, *A Platform for Third World Solidarity: The Popular Front for the Liberation of Palestine Bulletin*, THE FUNAMBULIST (Feb. 28, 2019)

EXHIBIT 5 – Aamer Ibraheem, *Emptying the Jawlan, Constructing the Apartheid*, THE FUNAMBULIST (Nov. 3, 2017)

EXHIBIT 6 – Steven Salaita, *Languages of Colonialism and Resistance in Palestine*, THE FUNAMBULIST (Apr. 8, 2022)

EXHIBIT 7 – *Sexual Misconduct Policy*, § IX.8 "Retaliation," CARNEGIE MELLON UNIVERSITY

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

FEDERAL CASES

*American Handiwork, Inc. v. 84 Lumber Company, L.P.*,
    2:21-cv-00028-MJH, 2021 WL 366478 (W.D. Pa. Aug. 18, 2021) .........................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................9

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014) ..............................................................................................10

*Bougher v. Univ. of Pittsburgh*,
    882 F.2d 74 (3d Cir. 1989) .................................................................................................13

*C.M. v. Pemberton Twp. High Sch.*,
    CV No. 16-9456, 2017 WL 384274 (D.N.J. Jan. 27, 2017) ..............................................15

*Cooper v. Menges*,
    541 F. App'x 228 (3d Cir. 2013) ......................................................................................17

*David v. Neumann Univ.*,
    187 F. Supp. 3d 554 (E.D. Pa. 2016) ................................................................................18

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ................................................................................................ *passim*

*Davis v. Quaker Valley Sch. Dist.*,
    No. 13-1329, 2016 WL 912297 (W.D. Pa. Mar. 10, 2016) ..............................................11

*Doe v. Galster*,
    768 F.3d 611 (7th Cir. 2014) .......................................................................................12, 15

*Doe v. Haverford Coll.*,
    No. 23-cv-299, 2023 WL 5017964 (E.D. Pa. Aug. 7, 2023) ............................................21

*Doe v. McDonald's USA, LLC*,
    504 F. Supp. 3d 360 (E.D. Pa. 2020) ................................................................................22

*Doe v. Mercy Catholic Medical Ctr.*,
    850 F.3d 545 (3d Cir. 2017) ..............................................................................................13

*Doe v. Princeton University*,
    790 F. App'x 379 (3d Cir. 2019) ....................................................15

*Doe 6 v. Pa. State Univ.*,
    982 F. Supp. 2d 437 (E.D. Pa. 2013) ..............................................22

*Earl v. NVR, Inc.*,
    990 F.3d 310 (3d Cir. 2021)............................................................18

*Frazer v. Temple Univ.*,
    25 F. Supp. 3d 598 (E.D. Pa. 2014) ...............................................17

*Gebser v. Lago Vista Independent Sch. Dist.*,
    524 U.S. 274 (1998)................................................................10, 12

*Hassen v. Gov't of V.I.*,
    861 F.3d 108 (3d Cir. 2017)..............................................................9

*Hitchens v. Cnty. of Montgomery*,
    CIV.A. 00–4282, 2002 WL 253939 (E.D. Pa. Feb. 20, 2002)........................20, 21

*Ke v. Drexel Univ.*,
    No. CV 11-6708, 2015 WL 5316492 (E.D. Pa. Sept. 4, 2015),  ...........11

*L.L. v. Evesham Twp. Bd. of Educ.*,
    710 F. App'x 545 (3d Cir. 2017) ...............................................10, 17

*Lansberry v. Altoona Area School District*,
    318 F. Supp. 3d 739 (W.D. Pa. July 20, 2018) ...............................15

*Lei Ke v. Drexel Univ.*,
    645 F. App'x 161 (3d Cir. 2016) ....................................................11

*M.J. v. Luzerne Cnty.*,
    No. 3:17-CV-1443, 2018 WL 1960527 (M.D. Pa. Apr. 25, 2018)........................23

*McClain v. Citizen's Bank, N.A.*,
    57 F. Supp. 3d 438 (E.D. Pa. 2014) ...............................................22

*Mekuns v. Capella Educ. Co.*,
    No. 15-cv-1542, 2015 WL 7075825 (E.D. Pa. Nov. 13, 2015)  ...........18

*Mollett v. Leith*,
    No. 09-cv-1192, 2011 WL 5407359 (W.D. Pa. Nov. 8, 2011)................14

*Murrell v. Sch. Dist. No. 1,*
   186 F.3d 1238 (10th Cir. 1999) ...................................................13

*Page v. City of Pittsburgh,*
   114 F. App'x 52 (3d Cir. 2004) ....................................................15

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
   998 F.2d 1192 (3d Cir. 1993)......................................................10

*Phillips v. Cnty. of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)........................................................23

*Rullo v. Univ. of Pittsburgh,*
   No. 17-cv-1380, 2020 WL 1472422 (W.D. Pa. Mar. 26, 2020) .......................12, 16

*Sabo v. UPMC Altoona,*
   386 F. Supp. 3d 530 (W.D. Pa. 2019)................................................23

*Schmidt v. Skolas,*
   770 F.3d 241 (3d Cir. 2014).........................................................10

*Sewell v. Monroe City Sch. Bd.,*
   974 F.3d 577 (5th Cir. 2020) ........................................................13

*Thompson v. Real Estate Mortg. Network,*
   748 F.3d 142 (3d Cir. 2014).........................................................9

*Vance v. Spencer Cnty. Pub. Sch. Dist.,*
   231 F.3d 253 (6th Cir. 2000) ........................................................13

*Vurimindi v. Fuqua Sch. of Bus.,*
   435 F. App'x 129 (3d Cir. 2015) ....................................................18

*Ware v. Rodale Press, Inc.,*
   322 F.3d 218 (3d Cir. 2003).........................................................18

*Whitfield v. Notre Dame Middle School,*
   412 F. App'x 517 (3d Cir. 2011) ........................................10, 15, 17, 18

*Z.H. v. Penn Hills Sch. Dist.,*
   No. 12-cv-1696, 2013 WL 300753 (W.D. Pa. Jan. 25, 2013) ................................11

*Zeno v. Pine Plains Central Sch. Dist.,*
   702 F.3d 655 (2d Cir. 2012)........................................................12

### STATE CASES

*Costa v. Roxborough Memorial Hosp.*,
    708 A.2d 490 (Pa. Super. Ct. 1998) ........................................................22

*Fitzgerald v. McCutcheon*,
    410 A.2d 1270 (Pa. Super. Ct. 1979) ....................................................23

*Hoy v. Angelone*,
    691 A.2d 476, *as modified,* 691 A.2d 485 (Pa. Super. Ct. 1997) ....................................20, 21

*Papieves v. Lawrence*,
    263 A.2d 118 (Pa. 1970) ........................................................................21

### FEDERAL STATUTES AND RULES

42 U.S.C. § 2000d ........................................................................................10

Fed. R. Civ. P. 12 ..........................................................................................9

Defendant Carnegie Mellon University ("CMU" or the "University") submits this memorandum in support of its Motion to Dismiss the Complaint (Doc. No. 1), as follows:

## I.   <u>INTRODUCTION</u>

Plaintiff Yael Canaan – a Jewish alumnae and 2023 graduate of CMU's School of Architecture – argues in this lawsuit that she experienced antisemitism during her time at the University. The University takes those allegations extraordinarily seriously; antisemitism is repugnant and antithetical to all of the University's core values. In the event this lawsuit proceeds, the University will demonstrate not just that Canaan's description of the University is wrong, but that the University's commitment to opposing antisemitism and hate in all its forms is unwavering. But at this early stage of the litigation, the University understands that the Court is required to accept all of Canaan's allegations as if they are entirely true.

Nevertheless, in order to proceed on her claims, Canaan must do more than allege she experienced antisemitism; she must allege facts that show, among other things, that the University actively participated in actionable harassment by acting *with intent* – by showing "deliberate indifference" to Canaan's treatment, by refusing to follow its own procedures in response to her reports, or by retaliating against her. She has not alleged facts that show those things because the University did none of them. Put simply, Plaintiff's lawsuit cannot proceed past the pleading stage because sometimes even conduct which, if true, would be antithetical to the University's core values may not be actionable under the law. That is exactly the case here.

Once Plaintiff's sweeping generalizations about the University are set to one side, what remains are a small handful of incidents, discussed individually and in detail below. The incidents are not trivial. Indeed, Canaan's allegations shocked the University and its community, not least of all because they sound so unlike the Carnegie Mellon that its students, faculty, and alumni know. But as surprising as these alleged interactions are, they do not constitute what the Supreme Court

of the United States has defined as unlawful harassment. In place of that legal standard, Canaan proposes a definition of antisemitism that is so broad that even its own primary author has argued against its implementation at institutions of higher education for fear that it will chill freedom of expression.[1] Particularly in the charged atmosphere of current events, it is critical to recognize that there is a difference between what the Supreme Court defines as actionable harassment and what Canaan, the University, or the Court might characterize as "antisemitic." That is, there is a difference between conduct that is offensive and conduct that we litigate, a difference intended by Congress and repeatedly affirmed by the Courts. To be sure, those concepts overlap materially, but they are not coextensive. And in any case, it is the *facts* Canaan alleges that the Court must measure against the legal standard, not Canaan's opinion about whether her allegations, if true, would constitute antisemitism.

In sum, the question in this lawsuit is not whether Plaintiff felt hurt, offended, or emotionally unsafe, but whether the alleged conduct that resulted in those feelings meets the legal standards set in the Circuit and the Supreme Court. It does not. The incidents Plaintiffs alleges, if true, would, in some cases, be deeply troubling and inappropriate. But they are not actionable. Even accepting all factual allegations as true, the Complaint fails to state plausible, viable claims against the University for the following reasons.

*First*, Plaintiff's Title VI discrimination claim fails as a matter of law because the Complaint does not allege facts showing that Canaan was treated differently from similarly situated, non-Jewish students.

---

[1] *Compare* Compl. ¶¶ 38-40 *with* Kenneth S. Stern, S.C. antisemitism bill isn't needed, The Post and Courier (Sept. 14, 2020), https://www.postandcourier.com/s-c-anti-semitism-bill-isn-t-needed/article_f17d607e-29e5-11e7-b4a7-a35035f3dc38.html.

*Second*, Plaintiff's Title VI hostile educational environment claim fails as a matter of law because the Complaint does not allege (1) conduct that meets the Supreme Court's standard of severe and pervasive harassment or (2) that the University was deliberately indifferent to Plaintiff's reports about her interactions.

*Third*, Plaintiff's Title VI retaliation claim fails as a matter of law because the Complaint does not allege retaliation by the institution (the entity that receives federal funds and is subject to Title VI) and the allegations that two of Canaan's studio instructors retaliated against her do not constitute institutional retaliation as a matter of law.

*Fourth*, Plaintiff's breach of contract claim fails because neither of the documents Plaintiff invokes apply by their plain, explicit terms. The Title IX Resource Guide applies only to sex-based discrimination and the procedural guarantees provided in the other set of procedures Canaan cites are triggered only if a student files a formal complaint, which Canaan concedes she did not do.

*Fifth*, Plaintiff's intentional infliction of emotional distress claim fails because (1) the conduct alleged is not "extreme and outrageous" as a matter of law and, in any event, (2) the Complaint fails to allege facts sufficient to establish vicarious liability as to the University.

The parties have met and conferred. Plaintiff has been provided the reasons why her claims are deficient, and she has elected to make no amendments to her Complaint. Because the deficiencies in the Complaint are fundamental and an opportunity for amendment has already been provided, the Complaint should be dismissed with prejudice.

## II.     **FACTUAL BACKGROUND**

### University Procedures Referenced in Complaint

The Complaint puts two sets of University procedures at issue – the Office for Institutional Equity & Title IX Resource Guide (the "Title IX Resource Guide") and the Procedures for Alleged Violations of the University's Statement of Assurance (the "Procedures") – by virtue of allegedly

"failing to review Canaan's reports of discrimination and follow her wishes about next steps." Compl. ¶¶ 79 n. 20,[2] 84 n. 26, [3]149.

The Title IX Resource Guide applies to allegations of "Prohibited Conduct," which is defined by reference to the University's Sexual Misconduct Policy. Exhibit 1 at 1. The University's Sexual Misconduct Policy defines "Prohibited Conduct" as "the following specifically defined forms of behavior: Sexual Assault, Sexual Exploitation, Sexual Harassment, Stalking, Dating Violence, Domestic Violence, Retaliation, and Violation of Protective Measures."[4]

The Procedures, on the other hand, "set[] forth the procedures for reviewing formal complaints alleging a violation of the university's Statement of Assurance," which "prohibits unlawful discrimination on the basis of . . . national origin, . . . religion, creed, ancestry, belief" and "acts of retaliation for exercising rights protected by the Statement of Assurance." Exhibit 2 at 1. The Procedures "distinguish[] the action of reporting a concern from filing a formal complaint," and explain that "information shared about suspected Discriminatory Conduct does not automatically trigger formal action or an investigation." *Id*. at 2. Only when a formal complaint is filed will "the Office for Institutional Equity and Title IX . . . review the formal complaint" and determine whether the allegations "if true, meet[] the definition of Discriminatory Conduct and [are] within the scope of these procedures," in which case it will commence an investigation. *Id*. at 3.

---

[2] *Office for Institutional Equity & Title IX, Resource Guide & Information*, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/title-ix/iex---resource-guide-updated-2023.pdf, a true and correct copy of which is attached hereto as Exhibit "1".

[3] *Procedures for Alleged Violations of the Statement of Assurance*, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/policies/forms-and-documents/soa-violations.pdf, a true and correct copy of which is attached hereto as Exhibit "2".

[4] *Sexual Misconduct Policy*, at § III, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/policies/administrative-and-governance/sexual-misconduct/prohibited-conduct.html, a true and correct copy of which is attached hereto as Exhibit "3".

<u>Tree of Life Synagogue and Early Events</u>

Canaan alleges that she enrolled at CMU in August 2018. Compl. ¶ 14. During her first semester, eleven Jewish people were murdered, and two critically injured, at the nearby Tree of Life Synagogue. *Id*. CMU held a memorial service for the Tree of Life victims on October 29, 2018. Compl. ¶ 15. Canaan alleges that she requested an extension on an assignment to attend the service from Mary-Lou Arscott, a professor in the School of Architecture, but that Arscott "denied her request without explanation," such that Canaan was unable to attend. *Id.*

Canaan asserts that she suffered other antisemitic incidents while attending the University, though she does not attribute the incidents to the University. For example, Canaan highlights a May 2021 Facebook post in which the president of a student group "call[ed] out the Jewish community" and identified "Canaan and other Jewish students because of their affiliation with Jewish organizations on campus." Compl. ¶ 16. Canaan does not allege that the Facebook post constituted a policy violation, or that she filed a formal complaint under the University's procedures in response to the Facebook post.

<u>Spring Semester 2022 Studio Review</u>

Canaan alleges that Arscott made remarks to her during her final review for her Spring semester 2022 studio class that Canaan contends were antisemitic. Compl. ¶¶ 18-26. On May 5, 2022, Canaan presented a project "focused on the conversion of a public space into a private space through an eruv." Compl. ¶ 23. An eruv is a "small wire boundary that symbolically extends the private domain of devoutly religious Jewish households into public areas, permitting activities within it that are normally forbidden in public on the Sabbath." *Id*. While explaining the concept of an eruv to Arscott, Canaan alleges that Arscott "cut her off," interjecting "that the wall in the model looked like the wall Israelis use to barricade Palestinians out of Israel." Compl. ¶ 25. Arscott then allegedly stated that "Canaan's time would have been better spent if she had instead explored

'what Jews do to make themselves such a hated group.'" *Id*. Canaan alleges that she reported the incident to her studio professor, and later, to Erica Cochran Hameen, the School of Architecture's Director of Diversity, Equity, and Inclusion. Compl. ¶¶ 26-27.

After Cochran Hameen allegedly "failed to follow up," Canaan e-mailed Gina Casalegno, Vice President for Student Affairs and Dean of Students, and Wanda Heading-Grant, CMU's Chief Diversity Officer and Vice Provost for Diversity, Equity, and Inclusion. Compl. ¶ 30. Casalegno met with Canaan on June 13, 2022, via Zoom, during which Casalegno offered to go for a "casual walk" with Arscott, her "close personal friend," after which she would follow up with Canaan. Compl. ¶ 34. Casalegno then followed up with Canaan on July 28, 2022, and August 18, 2022, after meeting with Arscott, to report "that she had a thoughtful conversation with Arscott," and that "Heading-Grant would be in touch to arrange a meeting between Canaan and Arscott, which Canaan understood would be for Arscott to apologize." Compl. ¶¶ 35-36.

<u>November 2, 2022 Meeting with Arscott and Subsequent Communications</u>

Canaan alleges that she met with Heading-Grant and Arscott on November 2, 2022. Compl. ¶ 37. She alleges that Arscott refused to apologize and expressed no remorse. *Id*. Instead, Arscott supposedly stated to Canaan only, "I'm sorry you felt that way." *Id*. Canaan claims that she realized that the DEI Office had done nothing to "facilitate" or prepare Arscott, or even to inform Arscott about what Canaan reported, alleging that Heading-Grant said and did nothing on the Zoom. *Id*.

Following the meeting, Canaan contends that Arscott quickly "struck again," by sending an e-mail that included a link to a purportedly "anti-Jewish, anti-Israel blog called The Funambulist that she had referenced on the Zoom." Compl. ¶ 38. Canaan alleges that The Funambulist "regularly publishes antisemitic and anti-Israel articles" and that its content "falls squarely within the International Holocaust Remembrance Alliance's definition of antisemitism, which has been adopted by 43 countries, including the United States." Compl. ¶¶ 39-40. In response, Canaan

alleges that she "promptly sent an email to Heading-Grant and Casalegno to report Arscott's email and the attached link to The Funambulist." Compl. ¶ 41.[5] Canaan claims that she "noted that Arscott's email made her extremely upset and demonstrated that Arscott did not have any remorse." *Id*. Canaan alleges that "Heading-Grant responded once again in language that ignored the problem and discredited the complaint," and that Heading-Grant did not reply again until November 13, 2022, stating "there was nothing she could do." Compl. ¶¶ 41-42. Instead, "ignoring unmistakable, blatant abuse of a student by a professor, [Heading-Grant] said that if Canaan felt aggrieved – which Heading-Grant presumably did not believe was true or legitimate – Canaan should contact CMU's Office for Institutional Equality and Title IX." Compl. ¶ 43.

<u>Institutional Equity and Title IX Office Involvement</u>

Canaan met with Elizabeth Rosemeyer, CMU's Title IX Coordinator and Vice Provost for Diversity, Equity, and Inclusion, on Monday, November 21, 2022. Compl. ¶ 44. Canaan alleges that Rosemeyer discouraged her from filing a formal complaint, and that she "gave in to Rosemeyer's pressure," and did not file a formal complaint, but she "reiterated her request for an apology from Arscott and training for Arscott on antisemitism." Compl. ¶ 46.

On December 20, 2022, Canaan contacted Rosemeyer to discuss issues that she faced with Professor Theodossis Issaias (discussed further below). Compl. ¶ 64. On December 27, 2022, Rosemeyer responded, "but [(allegedly)] ignored Canaan's reports of discrimination and retaliation and only offered to pass Canaan off to grade appeals or connect her to campus emotional

---

[5] *See also* Danah Abdulla, *A Platform for Third World Solidarity: The Popular Front for the Liberation of Palestine Bulletin*, THE FUNAMBULIST (Feb. 28, 2019), a true and correct copy of which is attached hereto as Exhibit "4"; Aamer Ibraheem, *Emptying the Jawlan, Constructing the Apartheid*, THE FUNAMBULIST (NOV. 3, 2017), a true and correct copy of which is attached hereto as Exhibit "5"; Steven Salaita, *Languages of Colonialism and Resistance in Palestine*, THE FUNAMBULIST (Apr. 8, 2022), a true and correct copy of which is attached hereto as Exhibit "6".

support groups." Compl. ¶ 65. On February 1, 2023, Canaan e-mailed Rosemeyer again, copying Heading-Grant and Casalegno, "asking for an update on Arscott," and "explain[ing] that she was having to miss studio class to avoid Arscott." Compl. ¶ 66. The next day, Casalegno replied "expressing concern, but failing to take any action or to provide any update," though it bears emphasis that Canaan had not filed any complaint against Arscott. *Id.* On March 30, 2023, Rosemeyer responded allegedly stating that "antisemitism training was not available." *Id.*

Alleged Retaliation by Canaan's Studio Professors

Canaan avers that, in the Fall 2022 and Spring 2023 semesters, "after [her professors Issaias and Priyanka Bista] learned that Canaan had reported Arscott's antisemitic actions, they embarked on a campaign of retaliation against Canaan." *Id.* Canaan alleges that Issaias did not take her reports of antisemitism seriously. Compl. ¶¶ 49-50. Instead, "[s]oon after Canaan confided in Issaias about Arscott's antisemitic statements and actions, Issaias invited the class to a party at Arscott's home." Compl. ¶ 50. Continuing, "[w]hen Canaan mentioned how disturbed she was that Issaias would choose Arscott's home as a venue for a class party," Issaias told her that "breaking bread is a process of reconciliation," and that Canaan "needed to stop 'acting like a victim' and that he was 'not there to fight her battles for her.'" *Id.* Canaan also claims that Issaias complained that she was "calling all of us antisemites," and that he "cannot be an advocate for the Jews." *Id.* Issaias allegedly refused Canaan one-on-one attention, was aggressive with her in class, blamed her for other students' problems, gave her a lower grade than a classmate in the same group for a group project, omitted her from a "booklet presenting all of his students' final projects," and gave her a C in his class. Compl. ¶¶ 51-58.

With respect to Bista, Canaan alleges that Arscott "played an integral role in Bista securing a job at CMU." Compl. ¶ 59. Canaan enrolled in Bista's Spring semester 2023 studio, and alleges that "Bista had arranged for Arscott to be present at every studio review, which was set to happen

every other week." *Id*. After Canaan purportedly explained to Bista the antisemitic abuse that she suffered from Arscott, "Bista refused any accommodation, noting that she owed her employment by CMU to Arscott and therefore, she could not raise the issue with Arscott or ask her not to attend." Compl. ¶ 60. Instead, Bista "offered Canaan a 'compromise': Canaan would have her work reviewed by Bista first, and then Canaan could leave studio before Arscott arrived to review her classmates' work." *Id*. Since Canaan "never knew when Arscott would join the class," she suffered anxiety triggered migraine headaches, and she was "forced to give her mid-semester presentation over Zoom instead of in-person, as Arscott was present at all of the in-person presentations." Compl. ¶¶ 60-61. Canaan concludes that "CMU punished [her] and did nothing to Arscott or her circle of friends who further tormented Canaan. CMU never sanctioned, punished, or even investigated Arscott or the others." Compl. ¶ 63.

## III.   <u>LEGAL STANDARDS</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim 'has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hassen v. Gov't of V.I.*, 861 F.3d 108, 115 (3d Cir. 2017) (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014)). In evaluating plausibility, the Court "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Id*. (citation omitted). Not all allegations are entitled to a presumption of truth; only "well-pleaded" ones. *Id*.

In ruling on a Rule 12(b)(6) motion, courts may consider the complaint, exhibits attached to the complaint, matters of public record, and "an[y] undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## IV.   <u>ARGUMENT</u>

### A.   **Canaan fails to state a discrimination claim under Title VI because she does not allege that she was treated differently from similarly-situated, non-Jewish students.**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Canaan claims that CMU discriminated against her in violation of Title VI because she is Jewish. But Canaan fails to state a *prima facie* claim for discrimination because she does not allege that she was treated differently from similarly-situated, non-Jewish students.

The Supreme Court of the United States has not set forth a framework for analyzing claims under Title VI. The Third Circuit has generally followed the Supreme Court's precedent under Title IX when interpreting Title VI because both statutes were enacted using Congress's authority under the Spending Clause. *See L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 n.5 (3d Cir. 2017); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 317 (3d Cir. 2014); *Whitfield v. Notre Dame Middle School*, 412 F. App'x 517, 521 n.2 (3d Cir. 2011); *see also Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 286 (1998) (explaining that Title VI and Title IX "operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds"). As such, the University relies on Title IX jurisprudence as appropriate.

To state a direct discrimination claim, a plaintiff must allege facts showing that: "(1) [s]he is a member of a protected class; (2) [s]he suffered an adverse action at the hands of the defendant in pursuit of h[er] education; (3) [s]he was qualified to continue in the pursuit of h[er] education;

and (4) [s]he was treated differently from similarly situated students who are not members of the protected class." *Ke v. Drexel Univ.*, No. CV 11-6708, 2015 WL 5316492, at *17 (E.D. Pa. Sept. 4, 2015), *aff'd sub nom. Lei Ke v. Drexel Univ.*, 645 F. App'x 161 (3d Cir. 2016).[6] "The fourth prong can be established by showing that similarly situated individuals who were not members of the protected class were more favorably treated than the plaintiff." *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at *10 (W.D. Pa. Mar. 10, 2016). Canaan cannot meet this standard, instead alleging in conclusory fashion only that she "was treated differently from her similarly situated non-Jewish, non-Israeli classmates." Compl. ¶ 102. Canaan does not explain how she was allegedly treated differently from any non-Jewish classmate, or how any similarly situated individual who was not Jewish was more favorably treated than her. Canaan hints at this element when discussing her allegedly unfair treatment in Issaias' class. *See id.* ¶¶ 54-58. But Canaan does not allege that the other students in Issaias' class were non-Jewish and that they were treated more favorably than she was. Since "conclusory allegations, without factual averments in support thereof, are insufficient to survive a motion to dismiss," this is fatal to her claim. *Z.H. v. Penn Hills Sch. Dist.*, No. 12-cv-1696, 2013 WL 300753, at *6 (W.D. Pa. Jan. 25, 2013).

**B.      Canaan fails to state a hostile educational environment claim under Title VI because she was not subject to severe and pervasive harassment and CMU was not deliberately indifferent.**

To state a claim for hostile educational environment, a plaintiff must allege facts that show the University was "deliberately indifferent" to harassment "of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cnty.*

---

[6] CMU assumes, without conceding, that the Complaint satisfies the first three elements of the *prima facie* case, but reserves the right to contest those elements at the appropriate time, if necessary.

*Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Rullo v. Univ. of Pittsburgh*, No. 17-cv-1380, 2020 WL 1472422, at *7 (W.D. Pa. Mar. 26, 2020) (analyzing parallel claim under Title IX and citing *Davis*). The actual knowledge requirement means that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [institution's] behalf has actual knowledge of discrimination . . . ." *Gebser*, 524 U.S. at 290. "[T]he knowledge of the wrongdoer himself is not pertinent to the analysis." *Id.* at 291. And the institution's "own deliberate indifference" must "effectively cause the discrimination." *Davis*, 526 U.S. at 642-43, 645 (quotations omitted). Institutions are not liable so long as they respond to harassment, which is to say, conduct themselves after receiving appropriate notice of the harassment "in a manner that is not clearly unreasonable." *Id.* at 649. "This is not a mere 'reasonableness' standard . . . in an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 648-49. Canaan's claim fails for at least two reasons.

### 1.    Canaan does not allege "severe, pervasive, and objectively offensive" harassment.

*First*, Canaan fails to establish a hostile educational environment because she has not alleged facts that show harassment that was "severe, pervasive, and objectively offensive." It is "rare" for discrimination or harassment "to be sufficiently severe under Title VI and Title IX" to support a claim for hostile educational environment. *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014) (finding reasonable jury could find "cumulative effects" of harassment sufficiently severe where plaintiff subjected to multiple incidents of physical violence requiring police attention and causing family to change school districts); *Zeno v. Pine Plains Central Sch. Dist.*, 702 F.3d 655, 659-62, 667 (2d Cir. 2012) (severity requirement satisfied where the victim endured explicit racial slurs and physical attacks that warranted police attention, causing the victim to graduate early with

12

a limited diploma); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (finding sufficiently severe harassment where the victim's harassers sexually propositioned her, removed her shirt, and stabbed her in the hand, causing her to complete her studies at home); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1248 (10th Cir. 1999) (finding complaint sufficiently alleged severe harassment where victim sexually assaulted for a month, causing hospitalization and rending the victim homebound); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (finding complaint plausibly alleged severe, pervasive, and offensive harassment where dean ridiculed plaintiff every other day during school year, discouraged other students from talking to him, and attempted to convince a female student to accuse him of sexually assaulting her).

In contrast, Canaan alleges a handful of events that she characterizes as antisemitic[7] harassment: (1) Arscott's alleged failure to provide her an extension to attend a vigil for the Tree of Life Synagogue massacre in October 2018 (Compl. ¶ 15); (2) Arscott's remarks during Canaan's final studio review in May 2022 (Compl. ¶ 25); and (3) Arscott's reference to a journal in an e-mail sent to Canaan in November 2022 (Compl. ¶ 38).

First, any claim arising from Arscott's alleged conduct in October 2018 is time-barred under Pennsylvania's two-year limitations period "applicable to personal injury actions," which controls here. *See Doe v. Mercy Catholic Medical Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (citing *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989)).

More important, none of these events are qualitatively similar to the type of conduct found to establish the requisite severity or pervasiveness, as the foregoing authorities illustrate. With respect to the online journal, it bears emphasis that Canaan does *not* allege that Arscott e-mailed

---

[7] It bears emphasis that the legal standards set forth in the foregoing authorities focus on alleged conduct, not labels attached to alleged conduct. Canaan is obliged to allege conduct that constitutes "severe, pervasive, and objectively offensive" harassment.

Canaan the articles referenced in the Complaint. *See* Compl. ¶ 38 (alleging, in part, that "Arscott sent Canaan and Heading-Grant an email with a link to an anti-Jewish, anti-Israel blog called The Funambulist that she had referenced on the Zoom"). Instead, Canaan alleges that Arscott sent Canaan, on a single occasion and in follow-up to a discussion they had earlier the same day, a *link* to the blog generally. This Court may take judicial notice of published articles without converting a motion to dismiss into a motion for summary judgment. *See Mollett v. Leith*, No. 09-cv-1192, 2011 WL 5407359, at *3, *9 n.6 (W.D. Pa. Nov. 8, 2011) (explaining applicable standards and taking judicial notice of two articles published in the Pittsburgh Post–Gazette). As a result, the Court is not bound to accept Canaan's characterizations of the articles that Canaan selected for purposes of her Complaint in the online journal, *see* Compl. ¶ 39 n. 9-10, as content that "falls squarely within the International Holocaust Remembrance Alliance's definition of antisemitism," Compl. ¶ 40, which commentators have observed "conflates political speech with unprotected discrimination" by "includ[ing] protected criticism of Israel and its policies" in the definition of antisemitism.[8] Indeed, Canaan's argument is akin to an argument that she was sent a link to the Washington Post's main page, and that it was offensive because of an op-ed she was able to locate on the site. This cannot stand in for the requisite severity required by *Davis* and its progeny. When considered in its totality, the journal to which Arscott is alleged to have directed Canaan comprises the research, opinions, and viewpoints of numerous architects and scholars, from many different backgrounds, none of which rises to the requisite level of severity required to support Canaan's claim that she was subject to severe and pervasive antisemitic harassment.

---

[8] Letter from ACLU to The Hon. Miguel Cardona, Secretary of Education, U.S. Department of Education, at 1 (Feb. 6, 2024), available at: https://www.aclu.org/wp-content/uploads/2024/02/Reject-Definitions-of-Anti-Semitism-that-Encompass-Protected-Speech.pdf.

This Court may determine as a matter of law whether conduct fails to meet the severe, pervasive, and objectively offensive standard, and it should do so here. *See Page v. City of Pittsburgh*, 114 F. App'x 52, 54 (3d Cir. 2004) (affirming district court's ruling "that there was insufficient evidence, as a matter of law, to establish severe and pervasive discrimination"). When considering Canaan's allegations of antisemitic discrimination, harassment, and retaliation together and in the light most favorable to Canaan, this Court should conclude that these isolated events, which occurred over the course of more than four years at CMU, do not constitute severe, pervasive, and objectively offensive harassment such that Canaan was deprived of the educational opportunities and benefits provided by CMU. *Davis*, 526 U.S. at 633.

In *Doe v. Princeton University*, the Third Circuit concluded that a racial epithet was insufficient to meet the requisite standard. *See* 790 F. App'x 379, 384 (3d Cir. 2019) (finding "one instance of being called a slur, while offensive, is neither severe nor pervasive"). Canaan does not allege that anyone used an ethnic slur; only that she inferred antisemitic intent from Arscott's comments. Other case law is in agreement; allegations of the sort alleged here do not meet the standard for the "rare" case of discrimination that rises to the extraordinary level necessary to demonstrate a hostile educational environment. *Galster*, 768 F.3d at 618; *see also Davis*, 526 U.S. at 650; *Whitfield*, 412 F. App'x at 521 (finding incidents of racial discrimination, including incidents of derogatory remarks and scratching plaintiff, not severe or pervasive); *Lansberry v. Altoona Area School District*, 318 F. Supp. 3d 739, 752-53 (W.D. Pa. July 20, 2018) (finding complaint failed to allege severe, pervasive, and objectively offensive conduct where claim based on sporadic instances of bullying); *C.M. v. Pemberton Twp. High Sch.*, CV No. 16-9456, 2017 WL 384274, at *6 (D.N.J. Jan. 27, 2017) (dismissing Title IX claim because the complaint only alleged "two seemingly isolated instances" of harassment, "not pervasive conduct").

**2.      Canaan does not allege that the University was deliberately indifferent to any alleged harassment.**

*Second*, even if Canaan had alleged sufficiently severe and pervasive conduct, the Court still should dismiss Canaan's hostile educational environment claim because she does not allege facts showing that the University was deliberately indifferent to any alleged harassment. *See Rullo*, 2020 WL 1472422, at *7; *Davis*, 526 U.S. at 648-50. Although Canaan is dissatisfied with the pacing of events after she informally reported Arscott's statements during her final studio review on May of 2022,[9] this Court can and should determine as a matter of law that CMU's response was not "clearly unreasonable." *Davis*, 526 U.S. at 649; Compl. ¶¶ 27-37, 41-47, 64-68 (detailing a series of interactions between Canaan and faculty/administrators related to her reports).

Canaan acknowledges that her concerns were addressed by faculty and CMU's highest administrators, and that those individuals worked with Canaan to respond to those issues. CMU's faculty and administrators met with Canaan on several occasions, arranged a meeting between Canaan, Arscott, and Heading-Grant, arranged a meeting between Canaan and Rosemeyer, arranged class schedules so that Canaan could avoid interacting with Arscott, and otherwise took measures to reconcile her concerns. That Canaan may have been disappointed in the University's alleged response does not render that response "clearly unreasonable."

Nor do the allegations show that CMU's "own deliberate indifference" resulted in further harassment. *Davis*, 526 U.S. at 642-43, 645. Even if Canaan's allegations rose to the requisite level of severe and pervasive misconduct, which they do not, Arscott's remarks in the May 2022 studio review predated any reporting of those remarks, and the next alleged incident occurred six months later when Arscott sent Canaan a link to a blog, which, as shown above, was not independent,

---

[9] Canaan's allegations in this regard are tempered by the fact that Canaan concedes she never filed a formal complaint of harassment, only this lawsuit (Compl. ¶¶ 46, 148).

actionable harassment. Contrary to Canaan's allegations, the University's willingness to facilitate ongoing dialogue was a reasonable response to Canaan's report and evidences that the University was sympathetic to Canaan's concerns. As a result, Canaan has failed to demonstrate that the University's response was deliberately indifferent. *See Davis*, 526 U.S. at 642-43, 645.

Because Canaan's hostile environment claim fails on both the actionable harassment and deliberate indifference prongs of the legal standard, this claim should be dismissed with prejudice.

C.      **Canaan fails to state a retaliation claim under Title VI because she does not allege that the University engaged in a material adverse action.**

"To state a claim for retaliation [under Title VI], a plaintiff must show: (1) that she engaged in protected activity; (2) that she suffered a material adverse action; and (3) that a causal connection existed between the protected activity and the adverse action." *Evesham Twp. Bd. of Educ.*, 710 F. App'x at 551 (internal quotations omitted). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 615 (E.D. Pa. 2014) (quoting *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013)). It is well-established that the federally-funded entity itself must have subjected the plaintiff to an adverse action to establish a claim for retaliation, and that actions by instructors are not, as a matter of law, the actions of the funding recipient. *See Whitfield*, 412 F. App'x at 522 (teacher's offensive comment to student does not constitute adverse action by federally-funded entity).

Canaan alleges that two of her studio instructors – Issaias and Bista (neither of whom are alleged to be, or are, officials or administrators) – "subjected [her] to material adverse actions as a result of her protected activity of reporting discrimination." Compl. ¶¶ 131-36. Canaan claims that Issaias and Bista "embarked on a campaign of retaliation against [her]," after they learned that she

"had reported Arscott's antisemitic actions[.]" Compl. ¶ 48; *see also id.* ¶¶ 48-63. The University disagrees with Canaan's allegations concerning the treatment of Canaan by Issais and Bista, but even accepting them as true, they do not establish material adverse action by the University. Canaan must (but does not) allege that the federally-funded entity, in this case, CMU, undertook a materially adverse action against her. *See Whitfield*, 412 F. App'x at 522. If true (which it is not), there is no question such conduct would be improper; but improper does not equate to actionable, and because allegations of material adverse action by two faculty members do not establish that *the University* undertook any adverse action against Canaan, Canaan's retaliation claim fails.

>    **D.**    **Canaan fails to state a claim for breach of contract because the procedures[10] upon which Canaan relies do not apply.**

Canaan alleges that the University breached two sets of procedures – the Title IX Resource Guide and the Procedures – by "failing to review Canaan's reports of discrimination and follow her wishes about next steps." Compl. ¶¶ 76, 79, 149. In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citation omitted); *Earl v. NVR, Inc.*, 990 F.3d 310, 315 (3d Cir. 2021) (noting that breach of contract claims involve "a specific promise to

---

[10] The Complaint cannot be fairly read to assert that the University engaged in any breach of contract other than purported departures from its Title IX Resource Guide and Procedures for Alleged Violations of the University's Statement of Assurance, but to the extent Canaan purports to assert a contract claim based on anything other than these documents, such a claim necessarily fails because the other documents referenced in the Complaint do not rest on (1) "a **specific** and **identifiable** promise that the school failed to honor," *Mekuns v. Capella Educ. Co.*, No. 15-cv-1542, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015) (emphasis added) (quoting *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011)), *aff'd*, 655 F. App'x 149 (3d Cir. 2016), and/or arise from (2) "general, aspirational" anti-discrimination policies, which do not create "any sort of affirmative, enforceable duty on the part of the University." *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 560 (E.D. Pa. 2016).

do something that a party would not ordinarily have been obligated to do but for the existence of the contract . . ."). Even if her allegations were true, Canaan cannot establish that the University failed to follow its own procedures in a manner that is actionable.

*First*, Canaan does not state a breach of contract claim with respect to the Title IX Resource Guide. Although the Title IX Resource Guide contains a graphic showing how the University responds when it "receives a report of sexual misconduct or other types of discrimination," Exhibit 1 at 2, the Title IX Resource Guide applies only to allegations of "Prohibited Conduct," which is referenced fifteen times in the thirteen-page document, and which is defined by reference to the University's Sexual Misconduct Policy, Exhibit 1 at 7.[11] The Title IX Resource Guide also clarifies in its FAQ section that the Office for Institutional Equity and Title IX "handles allegations of sexual misconduct" and instructs students to contact the Office if they "are not sure whether the incident is sexual misconduct." Exhibit 1 at 11. Accordingly, the procedures in the Title IX Resource Guide by their explicit terms do not apply to the (non-sexual) discrimination alleged.

*Second*, Canaan also does not state a breach of contract claim with respect to the Procedures. *See, e.g.*, Compl. ¶ 76 n. 18; Exhibit 2. The Procedures "set[] forth the procedures for reviewing formal complaints alleging a violation of the university's Statement of Assurance," which "prohibits unlawful discrimination on the basis of … national origin, … religion, creed,

---

[11] The University's Sexual Misconduct Policy defines "Prohibited Conduct" as "the following specifically defined forms of behavior: Sexual Assault, Sexual Exploitation, Sexual Harassment, Stalking, Dating Violence, Domestic Violence, Retaliation, and Violation of Protective Measures." Exhibit 3. "Retaliation," in turn, is defined as "adverse (negative) action taken against a person for making a good faith report of Prohibited Conduct, being alleged to have committed Prohibited Conduct, participating, or refusing to participate, in any proceeding under this Policy." *Sexual Misconduct Policy*, at § IX.8, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/policies/administrative-and-governance/sexual-misconduct/definitions.html#retaliation, a true and correct copy of which is attached hereto as Exhibit "7".

ancestry, belief" and "acts of retaliation for exercising rights protected by the Statement of Assurance." Exhibit 2 at 1. The Procedures "distinguish[] the action of reporting a concern from filing a formal complaint," and explain that "information shared about suspected Discriminatory Conduct does not automatically trigger formal action or an investigation" *Id*. at 2. Only when a formal complaint is filed will "the Office for Institutional Equity and Title IX . . . review the formal complaint" and determine whether the allegations "if true, meet[] the definition of Discriminatory Conduct and [are] within the scope of these procedures," in which case it will commence an investigation. *Id*. at 3. But, as alleged and in fact, Canaan never filed a formal complaint, so the investigation steps under the Procedures were not triggered. *See* Compl. ¶ 46. Although the University strongly disputes Canaan's characterization of her meeting with Rosemeyer, any contract must be interpreted according to its plain terms; the fact that Canaan did not file a complaint under the Procedures is the beginning and the end of the analysis.

  **E.** **Canaan fails to state a claim for intentional infliction of emotional distress because the conduct alleged is not extreme and outrageous and was not alleged to be of the kind and nature that Arscott was hired to perform.**

  To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, a plaintiff must allege facts sufficient to show that a defendant's "conduct was: (1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." *Hitchens v. Cnty. of Montgomery*, CIV.A. 00–4282, 2002 WL 253939, at *10 (E.D. Pa. Feb. 20, 2002).

  Canaan does not state an IIED claim because her allegations fall short of demonstrating "extreme and outrageous" conduct. *See id*. Pennsylvania courts have allowed recovery "for intentional infliction of emotional distress . . . in only very egregious cases." *Hoy v. Angelone*, 691 A.2d 476, 482, *as modified,* 691 A.2d 485 (Pa. Super. Ct. 1997), and *aff'd,* 720 A.2d 745 (Pa. 1998); *see also id.*, 720 A.2d at 754 ("The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society.") (citation omitted). Such cases involve situations "where a reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Hitchens*, 2002 WL 253939, at *10 (quotations omitted). Even sexual harassment, "as a general rule . . . does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Hoy*, 691 A.2d at 483. Thus, Pennsylvania appellate courts have declined to find sufficiently outrageous for an IIED claim sexual harassment that included subjecting the plaintiff "to vile and sexually explicit language, sexual propositions and physical groping." *Id.* at 481. This is true even when "the record fully establishes and supports the existence of a sexually hostile work environment." *Id.* at 483.

As explained above, Canaan's allegations do not establish a hostile educational environment with the requisite severe and pervasive harassment. In the absence of even a hostile environment, Canaan's allegations fall far short of establishing the "extreme and outrageous" conduct necessary to state an IIED claim. *See id.* Additionally, the statements Arscott is alleged to have made, and the University's handling of Canaan's complaints, are qualitatively dissimilar from the types of conduct courts have found sufficient to allege "extreme and outrageous" conduct. *Compare Papieves v. Lawrence*, 263 A.2d 118, 119, 121-22 (Pa. 1970) (concealing child's death, hiding body in garage, and disposing of body in field where partially decomposed body was later found), *with Doe v. Haverford Coll.*, No. 23-cv-299, 2023 WL 5017964, at*9 (E.D. Pa. Aug. 7, 2023) (dismissing and describing "as frivolous" IIED claim based on unfounded accusations of sexual assault). If unfounded accusations of sexual assault are frivolous grounds on which to rest an IIED claim, then there is no question that the offensive remarks Arscott is alleged to have made to Canaan are likewise unable to support a cognizable IIED claim.

But even if Canaan's allegations did meet the severity threshold for an IIED claim, Canaan's claim would still be insufficient because she does not allege facts to establish *respondeat superior* liability as to the University. To hold an employer liable for its employees' tortious conduct, a plaintiff "must rely on vicarious liability … [u]nder the theory of respondeat superior." *Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 364 (E.D. Pa. 2020). "To state a *respondeat superior* claim under Pennsylvania law, a party must allege facts showing that an employee's conduct 'is of a kind and nature that the employee is employed to perform; . . . occurs substantially within the authorized time and space limits; . . . is actuated, at least in part, by a purpose to serve the employer . . . .'" *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 441 (E.D. Pa. 2014) (quoting *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). But Pennsylvania also "recognizes certain exceptions where actions by [an] employee are, as a matter of law, outside the course and scope of his or her employment." *American Handiwork, Inc. v. 84 Lumber Company, L.P.*, 2:21-cv-00028-MJH, 2021 WL 366478, at * 5 (W.D. Pa. Aug. 18, 2021) (citing *Doe 6 v. Pa. State Univ.*, 982 F. Supp. 2d 437, 441 (E.D. Pa. 2013). For example, "where an employee acts out of personal animus, his or her actions are not actuated by an intent of performing the business of the employer.'" *Id*. at *5 (quotations omitted).

Canaan does not allege facts sufficient to establish *respondeat superior* liability as to the University. She alleges in conclusory fashion only that "Arscott was acting within the scope of her employment and/or at the direction and control of CMU" and that "CMU was made aware of and took no action against Arscott, thereby ratifying her conduct." Compl. ¶¶ 160-61. Where Canaan describes alleged antisemitic misconduct, *see* Compl. ¶¶ 15, 25, 37-38, she attributes the behavior to Arscott's personal animus towards her, which, as a matter of law, cannot be said to be "actuated by an intent of performing the business of the employer and it is not done within the scope of

22

employment." *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979). Courts routinely dismiss vicarious liability claims based on similar allegations. *See, e.g.*, *M.J. v. Luzerne Cnty.*, No. 3:17-CV-1443, 2018 WL 1960527, at *11 (M.D. Pa. Apr. 25, 2018) (dismissing IIED claim where complaint alleged no facts explaining how underlying conduct was "of the kind [the employee] was to perform for [her employer] or how [the employee] was actuated by an intent to serve [her employer]"). And finally, as for Canaan's allegation that the University took no action against Arscott, "inaction is an insufficient basis for an intentional infliction of emotional distress claim." *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 557 (W.D. Pa. 2019). For this reason, too, Canaan's IIED claim is deficient and must be dismissed.

### F.   Dismissing the Complaint with prejudice is warranted because amendment would be futile.

Courts may dismiss a complaint with prejudice when "amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). The Court should not permit Canaan an opportunity to amend because no amendment can salvage her claims.

Canaan's discrimination claim fails because she did not plead that similarly situated non-Jewish students were treated more favorably than her. If she could have done so, there is little doubt that she would have done so following the parties' meet and confer under this Court's standing order. She did not. Similarly, Canaan's hostile educational environment claim relies on conduct that is not sufficiently severe, pervasive, and objectively offensive, as a matter of law, to survive dismissal – nor does the University's response to the alleged harassment satisfy the exacting deliberate indifference standard for liability. Amending Canaan's cause of action for retaliation is likewise futile because the alleged actions of Issaias and Bista, even if true, cannot be attributed to the University since Issaias and Bista were merely Canaan's studio professors. In addition, Canaan admits that she never filed a formal complaint, and, as such, she failed to properly

invoke the Procedures and cannot state a breach of contract claim. Canaan cannot state a contract claim under the Title IX Resource Guide because it does not apply to non-sex-based discrimination. Finally, Arscott's alleged antisemitic misconduct does not constitute sufficiently "extreme and outrageous" conduct and was outside the scope of her employment; thus, no factual amendment can salvage Canaan's claim for IIED. Accordingly, permitting amendment would be futile, and the Complaint should be dismissed with prejudice in its entirety.

V.   **CONCLUSION**

For the reasons set forth above, Plaintiff Yael Canaan's Complaint should be dismissed, with prejudice, for failure to state a claim against Defendant Carnegie Mellon University.

Respectfully submitted,

Dated: February 13, 2024

*/s/ John Paul Regan*
John Paul Regan (Pa. I.D. 320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA  15222
Telephone:  (412) 209-2500
E-mail:  JP.Regan@saul.com

Joshua W. B. Richards (Pa. I.D. 204315*)
Patrick F. Nugent (Pa. I.D. 313979*)
*Admission Pending
Saul Ewing LLP
1500 Market Street, 30th Floor
Philadelphia, PA  19102
Telephone:  (215) 972-7737 / (215) 972-7134
E-mail: Joshua.Richards@saul.com
E-mail: Patrick.Nugent@saul.com

*Counsel for Defendant Carnegie Mellon University*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of Courts for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 13, 2024                    */s/ John Paul Regan*