# EXHIBIT 2

# Carnegie Mellon University

# Procedures for Alleged Violations of the Statement of Assurance

**I. Purpose and Scope**

This document sets forth the procedures for reviewing formal complaints alleging a violation of the university's Statement of Assurance.  The Statement of Assurance prohibits unlawful discrimination on the basis of race, color, national origin, sex, handicap or disability, age, sexual orientation, gender identity, religion, creed, ancestry, belief, veteran status, genetic information or any other class protected from discrimination under federal, state or local laws or executive orders.  The Statement of Assurance also prohibits acts of retaliation for exercising rights protected by the Statement of Assurance.  For purposes of this procedure, acts of unlawful discrimination and retaliation under the Statement of Assurance are referred to as Discriminatory Conduct.

These procedures apply to allegations of Discriminatory Conduct committed by or against faculty, staff, students, student organizations and third parties when the conduct occurs:

- In a University Program or Activity; or

- Outside of a University Program or Activity where any of the following apply:
    - The conduct poses a serious threat of harm,
    - The conduct has a continuing adverse effect on, or impedes equal access to University Programs or Activities, or
    - The conduct creates a hostile environment for faculty, staff, students, or third parties affiliated with the university.

The university retains wide discretion to determine whether conduct that occurs outside of a University Program or Activity is within its jurisdiction. In making this determination, including off-campus or online conduct that is not part of a University Program or Activity, the university will consider the severity of the alleged conduct, the risk of ongoing harm, whether both parties are members of the university community, impact on University Program or Activity, and whether off-campus conduct is part of a series of actions that occurred both on and off campus.

Reported behavior which could be a form of Prohibited Conduct under the Interim Sexual Misconduct Policy, including allegations of sexual assault, sexual exploitation, sexual harassment, dating violence, domestic violation, stalking, or violation of protective measures will be handled under that policy.[1]  These procedures do not apply to allegations of retaliation based on protected activity as defined in the Interim Sexual Misconduct Policy.   These procedures do not apply to the appeal of decisions regarding requests for accommodations for individuals with disabilities. [2]

---

[1] Allegations of discrimination on the basis of gender that do not include allegations of Prohibited Conduct under the Interim Sexual Misconduct Policy will be reviewed under these procedures for the Statement of Assurance.
[2] Appeals of disability accommodation decisions should be submitted to the Office of Disability Resources (students) or HR Disability Services (faculty and staff).

Updated 1/1/2024

When the university receives a report of alleged Discriminatory Conduct that could constitute a violation of both the Statement of Assurance and another university policy or policies, the university, in its discretion, will determine which policy or policies and procedures apply and whether action will be taken under multiple policies.  This discretion includes the ability to consolidate the investigation of different incidents or potential policy violations under these (or other) procedures.  The university also has discretion to hear such matters separately or together, whether under this process or another process that the university deems more appropriate under the circumstances.

**II. Reporting Resources**

Carnegie Mellon is committed to the cultivation of a transformative community that (a) attracts and retains diverse, world-class talent; (b) creates a collaborative environment open to the free exchange of ideas, where research, creativity, innovation, and entrepreneurship can flourish; and (c) ensures individuals can achieve their full potential. Towards this end, the university strives to create an environment where all members of the Carnegie Mellon community are aware of options for informing the university about instances of suspected Discriminatory Conduct. This procedure distinguishes the action of reporting a concern from filing a formal complaint. Thus, information shared about suspected Discriminatory Conduct does not automatically trigger formal action or an investigation.  To initiate a formal complaint, a written complaint must be filed as specified in Section III below.

Individuals may contact the offices listed below to report suspected Discriminatory Conduct, learn about possible resources for support and discuss potential options for resolution.

- **Office of Human Resources**
    - AVP and Chief Human Resources Officer – Michelle Piekutowski (mpie@andrew.cmu.edu)
    - Assistant Vice President of Human Resources, People & Organizational Effectiveness – Gloria Gruber (ggruber@andrew.cmu.edu)
    - Staff Ombudsperson – Jennifer Pablonis (jpabloni@andrew.cmu.edu)

- **Office of Community Standards and Integrity**
    - Please call 412-268-2140 or email ocsi@andrew.cmu.edu

- **Office for Institutional Equity and Title IX / Title IX Coordinator**
    - Please call 412-268-7125 or email tix@andrew.cmu.edu

- **Carnegie Mellon Ethics Reporting Hotline (anonymous reporting option)**
    - Please go to cmu.ethicspoint.com  or call 1-844-587-0793.

**III. Filing a Formal Complaint**

A faculty member, staff member, student or visitor to the university who wishes to initiate formal action must submit a formal written complaint of Discriminatory Conduct with the Office for Institutional Equity and Title IX.  In addition, the Office of Human Resources, the Office of Community Standards and Integrity, and/or the

2

Office for Institutional Equity and Title IX have discretion to initiate a formal complaint based on a report received under Section II or other information that comes to the attention of the Office.[3]

After a formal complaint is filed, the Office for Institutional Equity and Title IX will review the formal complaint to determine whether the alleged misconduct, if true, would meet the definition of Discriminatory Conduct in Section VII below and is within the scope of these procedures as set forth in Section I above.  Formal complaints that do not meet the definition of Discriminatory Conduct and/or formal complaints outside the scope of these procedures will be dismissed but, when appropriate, referred for review under another applicable university policy, including the University's Bias protocol, and may merit university response through education, informal mediation, etc.

If the Office for Institutional Equity and Title IX determines that the alleged misconduct in the formal complaint, if true, meets the definition of Discriminatory Conduct and is within the scope of these procedures, the Office for Institutional Equity and Title IX will commence an investigation as set forth below.

**IV. Investigation**

After deciding to commence an investigation, the Office for Institutional Equity and Title IX will appoint an investigator to review, assess and investigate the formal complaint (the "Investigator"). The Investigator may be a staff member in the Office for Institutional Equity and Title IX, a staff member in Human Resources, a staff member in another department at the university, or an external professional.

The Investigator will send the complainant and respondent a written notice of investigation specifying the alleged misconduct. The Investigator will conduct an investigation and prepare a preliminary investigative report that summarizes the relevant evidence gathered during the investigation. The preliminary investigative report will be made available to the complainant and respondent in electronic or hard-copy format.  The complainant and respondent will have at least ten (10) business days to review and respond to the preliminary investigative report. The Investigator will consider any responses submitted by the complainant and respondent and prepare a final investigative report ("Investigative Report").

The Office for Institutional Equity and Title IX will provide the Investigative Report to the appropriate entity as outlined in Section V, who will commence adjudication of the complaint as set forth below.

**V. Adjudication Procedures**

At the conclusion of the investigation, the Office for Institutional Equity and Title IX will review the Investigative Report to determine whether the formal complaint should proceed to adjudication.  The Office for Institutional Equity and Title IX may dismiss formal complaints for the following reasons:

- Where the allegation(s), if true, does not meet the definition of Discriminatory Conduct and/or formal complaints outside the scope of these procedures;

---

[3] In general, the discretion to initiate a formal complaint may be used when the university feels that it is necessary to protect the safety of the community and/or in circumstances where the university is legally obligated to investigate an allegation.

- Where the evidence collected during the investigation is insufficient to support the allegations, such that a reasonable person could not conclude that Discriminatory Conduct occurred.

The decision as to whether dismissal is appropriate in a given case will rest solely with the Office for Institutional Equity and Title IX.  Where appropriate a complaint dismissed by the Office for Institutional Equity and Title IX may be referred for review under another applicable university policy, including the University's bias reporting protocols, and may merit university response through education, informal mediation, etc.

If the Office for Institutional Equity and Title IX decides that a formal complaint will proceed to adjudication, the specific procedures for adjudication are based upon the nature of the respondent's relationship to the university.

- **Where the Respondent is a Student** — the matter will be handled in accordance with the university's Student Community Standards Process, which is set forth in the Community Standards section of The Word.

- **Where the Respondent is a Staff Member**— the matter will be handled in accordance with the procedures set forth in the Staff Handbook, Volume II, Section 10c.

- **Where the Respondent is a Faculty Member** — the Office for Institutional Equity and Title IX will send the Investigative Report to the Provost who will appoint a Hearing Officer to adjudicate the matter. The Hearing Officer will conduct a live hearing using the Hearing Procedures for Faculty Statement of Assurance Cases (see Appendix A below). At the conclusion of the hearing, the Hearing Officer will prepare a written report regarding findings of fact and a determination of responsibility with respect to each allegation. The determination of responsibility will be made using the preponderance of evidence standard.

    The written report of the Hearing Officer will be provided to the Vice Provost for Faculty. If the report of the Hearing Officer includes a determination that the respondent is responsible for any of the allegations, the Vice Provost for Faculty will make a recommendation to the President regarding applicable sanctions and remedies. The report of the Hearing Officer and, if applicable, the recommendation of the Vice Provost for Faculty regarding sanctions will be provided to the complainant, the respondent, and the Office for Institutional Equity and Title IX.  The notification of the decision of the Hearing Officer and any sanctions recommended by the Vice Provost for Faculty will be provided within seven (7) calendar days after the Vice Provost for Faculty renders a decision on recommended sanctions.

    The complainant and respondent may appeal the decision of the Hearing Officer and/or the sanctions recommended to the Provost. An appeal must be submitted in writing to the Office of the Provost within seven (7) calendar days of the notification of the decision of the Hearing Officer to the complainant and respondent. The basis for an appeal will be limited to one or more of the following:

    - Procedural irregularity that affected the outcome of the matter;
    - New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

4

- - The Investigator(s), or Hearing Officer, or Vice Provost for Faculty had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter; and
  - The sanctions recommended by the Provost are disproportionate to the finding of responsibility.

Appeals will be adjudicated by the Provost or the Provost's designee. The Provost or the Provost's designee will issue a written decision describing the result of the appeal and the rationale for the result. The appeal decision will be provided to the complainant, the respondent, and the Office for Institutional Equity and Title IX.

Where the Vice Provost for Faculty recommends sanctions against a faculty member, the President will take no action on the recommended sanctions until either (i) the completion of any appeal filed by any party (ii) the deadline to file an appeal passes without any appeal being filed. If an appeal is filed, the Provost or the Provost's designee will render a decision on the appeal and will issue a written decision describing the result of the appeal and the rationale for the result. The appeal decision will be provided to the complainant, the respondent, and the Office for Institutional Equity and Title IX.

If, following any appeal, the President decides to initiate the procedure for dismissal for cause or for the imposition of another sanction against a faculty respondent, the matter will then follow the process set forth in the subsection "Procedure" of the section of the Appointment and Tenure Policy of Carnegie Mellon University titled, "Dismissal for Cause and Other Sanctions", but will be subject to the "Exceptions" provision of that subsection such that no Ad-Hoc Committee will be required.

- **Where the Respondent has Dual-Status (e.g. more than one status as Faculty, Staff or Student)** — the university has discretion to determine which process to use under Section V depending on the circumstances of the case. However, all complaints where the respondent has faculty status will follow the process for Faculty respondents regardless of any other dual-status.
- **Where the Respondent is a Third Party** — The university's ability to take appropriate corrective action against a third party will be determined by the nature of the third party's relationship to the university.

## VI. Possible Outcomes and Sanctions

Possible outcomes from a violation of the Statement of Assurance non-punitive remedies and punitive sanctions, ranging from educational outcomes to separation from the university.

Below is a non-exhaustive list of the possible remedies and sanctions:

**Possible Remedies**
- A no contact order;
- Academic adjustments or accommodations; and
- Workplace adjustments or accommodations.

5

**Possible Sanctions**
- Educational outcomes including conversation with staff and/or reflective paper or project;
- Mandatory training;
- Written apology;
- Written or verbal warning;
- Mental health and/or substance use assessment and recommended follow up;
- Community service;
- Restrictions/limitations on access to campus programs or activities;
- Restrictions/limitations on access to campus property;
- Removal/ban from university housing;
- Mandated removal from class or change to academic schedule;
- Relocation of office;
- Restriction or ban on attending Carnegie Mellon programs and events;
- Removal/ban from campus;
- Disciplinary probation;
- Disciplinary suspension;
- Expulsion;
- Suspension from employment;
- Termination of employment;
- Suspension of a conferred degree;
- Revocation of a conferred degree; and
- Referral for action under other policies.

## VII. Informal Resolution

At times, individuals may prefer an informal resolution to their reported concern or complaint. In these instances, individuals can discuss available options with the Office for Institutional Equity and Title IX. Either party may request to pursue an informal resolution at any time before a finding of responsibility under Section V.  The Office for Institutional Equity and Title IX has discretion to determine whether the parties will be permitted to pursue an informal resolution.  The informal resolution process is voluntary and relevant parties must consent to participation in informal resolution.

If the parties agree to pursue an informal resolution, the Office for Institutional Equity and Title IX has discretion to determine whether any pending investigation or adjudication process will be paused during the pendency of informal resolution.  The university reserves the right to approve any informal resolution between the parties before closing any pending investigation or adjudication process.

During any informal resolution process, either party has the right to withdraw from the process at any time prior to the conclusion of the process. If either party withdraws from the informal resolution process or if the parties are unable to successfully resolve the matter at the conclusion of the informal resolution process, the matter will proceed to investigation under Section IV or to adjudication under Section V, as appropriate.

## VIII. Requests for Religious Accommodations

6

Notwithstanding anything else in these procedures, requests for religious accommodations for employees will be evaluated under Title VII of the Civil Rights Act, as well as applicable state and local law, not under these procedures.  Requests for religious accommodations related to students will be reviewed under all applicable law, not under these procedures.

## IX. Definitions

**Discriminatory Conduct**

Discriminatory Conduct includes:

- Discriminatory Harassment;
- Disparate Treatment Discrimination;
- Retaliation for exercising rights protected by Statement of Assurance.

Discriminatory Conduct does not include Prohibited Conduct under the Interim Sexual Misconduct Policy. Discriminatory Conduct does not include appeals of decisions regarding requests of accommodations for individuals with disabilities.[4]

**Discriminatory Harassment**

means unwelcome conduct of a verbal, nonverbal, or physical nature that is sufficiently severe or pervasive to create a work or academic environment that a Reasonable Person would consider intimidating, hostile, or abusive on the basis of any Protected Class. A discriminatory harassing environment can be created by pervasive conduct or by a single severe episode.  To be a violation of policy, harassment must be deemed severe, persistent, or pervasive from both a subjective and objective standard.

**Disparate Treatment Discrimination**

means treating an individual or class of individuals differently on the basis of a Protected Class.  To establish Disparate Treatment Discrimination it must be shown that (1) the respondent engaged in a tangible action on the basis of an individual's membership in a Protected Class, (2) the individual was treated differently than other similarly situated individuals who are not members of the same Protected Class and (3) there was no legitimate non-discriminatory reason for the treatment.

Disparate Treatment Discrimination does not include unwelcome conduct of a verbal, nonverbal, or physical nature that is not severe or pervasive under the definition of Discriminatory Harassment.

**Retaliation**

means an adverse (negative) action taken against a person for exercising rights protected by Statement of Assurance, including but not limited to a good faith report of Discriminatory Conduct, participating, or refusing to participate, in any investigation or proceeding in connection with the Statement of Assurance.

Retaliation may include intimidation, threats, coercion, harassment, or discrimination (including charging a respondent under a different university policy instead of this Policy for the purpose of interfering with any

---

[4] Appeals of disability accommodation decisions should be submitted to the Office of Disability Resources (students) or HR Disability Services (faculty and staff).

right or privileged secured by the Statement of Assurance).  Retaliation may also include adverse employment or educational actions that would discourage a [Reasonable Person](#) from exercising their rights under the Statement of Assurance.

**Protected Class**

means any legally-protected characteristic, including race, color, national origin, sex, handicap or disability, age, sexual orientation, gender identity, religion, creed, ancestry, belief, veteran status, genetic information or any other class protected from discrimination under federal, state or local laws or executive orders.

For purposes of this definition:

- The term "race" means the ancestry or physical or cultural characteristics associated with a certain race, such as skin color, hair texture or styles, or certain facial features;
- The term "color" means a person's pigmentation, complexion, or skin shade or tone;
- The term "national origin" means a group of people sharing a common language, culture, ancestry, race, and/or other social characteristics;
- The term "sex" includes sex, gender, marital status, and pregnancy;
- The terms "handicap" and "disability" mean a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment;
- The term "age" generally means individuals who are 40 years of age or older.  Where applicable, the university will also use the definition of "age" in the Age Discrimination Act of 1975;
- The term "sexual orientation" means a person's actual or perceived predisposition or inclination toward a particular type of sexual activity or behavior; heterosexuality, homosexuality, bisexuality, or any other sexual preferences;
- The term "gender identity" means a person's actual or perceived sense of having a particular gender;
- The terms "religion" "creed" and "belief" collectively refer to all aspects of religious observance, religious practice and religious belief, as defined under Title VII of the Civil Rights Act of 1964 and similar federal, state and local religious discrimination laws.
- The term "ancestry" means the common physical, cultural or linguistic characteristics of a person's ancestors;
- The term "veteran" means a person who served in any branch of the U.S. military.
- The term "genetic information" means with respect to any person, information about-- (i) such person's genetic tests, (ii) the genetic tests of family members of such person, and. (iii) the manifestation of a disease or disorder in family members of such person;
- The term "pregnancy" means the state of being pregnant, including being the partner of a pregnant person, experiencing symptoms of pregnancy or any medical condition related to pregnancy or childbirth.

**Reasonable Person**

means a person using average care, intelligence, and judgment in the circumstances at issue.

8

**University Program or Activity**

Conduct takes place in a University Program or Activity when that conduct occurs: (1) in a location, at an event, or in a circumstance where the university exercises substantial control over both the respondent and the context in which the conduct occurs; or (2) in any building owned or controlled by a student organization recognized by the university.

*Examples:* Conduct that occurs on-campus occurs within the University's Programs or Activities. Conduct that occurs off campus in locations or at events with no connection to the university is unlikely to occur in a program or activity of the university.

# Appendix A

## Hearing Procedures for the Adjudication of

## Statement of Assurance Cases Involving Faculty Respondents

This document sets forth the procedures for the Adjudication of Statement of Assurance Cases Involving Faculty Respondents.  These procedures will be initiated when the  and Title IX sends an Investigative Report to the Provost as specified in Section V of the Procedures for Alleged Violations of the Statement of Assurance Violations.

# Contents

1. Definitions & Roles ................................................................................................................. 2
2. Hearing Preparation and Scheduling ...................................................................................... 3
3. Advisors .................................................................................................................................. 4
4. Registration of Witnesses ....................................................................................................... 5
5. Rules of Evidence .................................................................................................................... 5
6. Conduct of the Hearing .......................................................................................................... 6
7. Hearing Officer Deliberations and Determination ................................................................. 7
8. Rules of Decorum ................................................................................................................... 8
9. Appeals ................................................................................................................................... 9

1. **Definitions & Roles**

    a. **Office for Institutional Equity and Title IX** – The Office for Institutional Equity and Title IX is responsible for initiating this hearing process after reviewing the Investigative Report.

    b. **Provost** – The Provost is responsible for appointing a Hearing Officer after receiving an Investigative Report from the Office for Institutional Equity and Title IX. The Provost may also provide or appoint appropriate support staff, including but not limited to a Process Coordinator, to the support the operation of the hearing. If the decision of the Hearing Officer includes a determination that the Respondent is responsible for any of the allegations, the Provost will make a recommendation to the President regarding applicable sanctions and remedies.

    c. **Hearing Officer** – The Hearing Officer is appointed by the Provost. A Hearing Officer may be an employee of Carnegie Mellon or a third party engaged by the university to serve in this role.  The Investigator for the case may not serve as the Hearing Officer. The Hearing Officer is responsible for presiding over the hearing, making findings ofa fact, and making a determination regarding responsibility for each allegation in the Formal Complaint.

    d. **Process Coordinator** – The Process Coordinator serves as the primary administrative coordinator of this process. The Process Coordinator is responsible for scheduling the hearing, providing necessary notices, communications and materials to the parties, and assisting the Hearing Officer in the conduct of the hearing. The Provost (or designee) may appoint additional staff to assist the Process Coordinator, as necessary under the circumstances.

    e. **Formal Complaint** - a written or typed document submitted under section III of the Procedures for Statement of Assurance Violations, which requests that the university initiate a complaint under the Statement of Assurance.

    f. **Investigative Report** – A report prepared at the conclusion of the investigation of the allegations in the Formal Complaint, as specified in section IV of the Procedures for Statement of Assurance Violations

    g. **Complainant** –a person who is reported to have experienced the Discriminatory Conduct alleged in the Formal Complainant.

    h. **Respondent** – an individual who is reported to have engaged in Discriminatory Conduct as alleged in the Formal Complaint.

    i. **Advisor** – An individual who provides support and advice for the Complainant or Respondent. The Complainant and Respondent may have an advisor of their choice, who may be, but is not required to be, an attorney.  Advisors are not permitted to participate in the proceedings or speak on behalf of the Complainant or Respondent.

2

2. **Hearing Preparation and Scheduling**

   a. The Provost will appoint a Hearing Officer who will be responsible for presiding over a live hearing and making findings of fact and determination of responsibility with respect to each allegation in the Formal Complaint.

   b. The logistics of hearing preparation and scheduling will be coordinated by a Process Coordinator designated by the Provost or the Provost's designee.

   c. At least fourteen (14) calendar days in advance of the hearing, the Hearing Officer or Process Coordinator will provide the Complainant, the Respondent, and their respective Advisors with the following:

        i. Written notice of the identity of the Hearing Officer;
       ii. A copy of the final Investigative Report prepared;
      iii. The opportunity to access, upon request, any relevant evidence collected by the university that is not contained in the Investigative Report.

      The Investigative Report and any relevant evidence may be used solely for the purpose of preparing for or use during the hearing. These materials are to be kept private and may be shared only with express permission from the Process Coordinator or Hearing Officer. These records may not be duplicated nor utilized for any other purpose.

   d. After the appointment of a Hearing Officer, the Process Coordinator will schedule separate meetings with the Complainant and the Respondent (with their respective Advisors present, if desired) to review the format and procedures for the hearing.

   e. In advance of the hearing, the Hearing Officer will be provided a copy of the Investigative Report and access to any relevant evidence. The Hearing Officer is expected to keep this information confidential.

   f. The Process Coordinator will coordinate with the Complainant, Respondent and Hearing Officer to schedule a hearing. It is the responsibility of the Process Coordinator to ensure that times set for hearings are reasonable. In turn, both the Complainant and Respondent are be expected to demonstrate good faith efforts in relation to the scheduling of the hearing.

        i. The Process Coordinator will take reasonable efforts to avoid conflicts with the class schedule and/or teaching schedule of the Complainant and/or Respondent when identifying a hearing date and time. When circumstances warrant, class attendance or teaching obligations, except for scheduled examinations, will not be a reasonable excuse for delaying a hearing.

      ii. In the rare circumstance where a party fails to make a good faith effort to cooperate in the scheduling of a hearing, the university (having made reasonable attempts to accommodate the schedule of party) may elect to hold there hearing without the party present.  In the case of a Complainant who does not make a good faith effort to cooperate in the scheduling of the hearing, the Title IX Coordinator has discretion to dismiss the case.

      iii. Either party may request modification of the hearing process as an accommodation for a disability. Requests for accommodation should be submitted to the Process Coordinator at least fourteen (14) days in advance of the hearing.  Requests for such accommodation will be referred to either the Office of Disability Resources (for students) or Human Resources Disability Services (for employees).

      iv. Either party may request that the hearing occur with the Complainant and Respondent located in separate locations, with technology (e.g. video conference) that enables the Hearing Officer and the parties to simultaneously see and hear the party or witnesses answering questions. A request to have the parties participate from separate locations must be submitted at least ten (10) days in advance of the hearing.

  g. The Process Coordinator will notify the Complainant and Respondent of the date and time of the hearing at least fourteen (14) days in advance.

3. **Advisors**

    a. Both the Complainant and Respondent have the right to have the Advisor of their choice present at the hearing and any pre-hearing meetings conducted under these procedures.

    b. In conjunction with the scheduling of the hearing, the Process Coordinator will ask the Complainant and Respondent whether they have identified an Advisor for the hearing. If a party does not have an Advisor, the Process Coordinator will provide the party with a list of individuals who may be available to serve as an advisor.

    c. Both parties are required to disclose whether their Advisor is an attorney.  When the Advisor for one or more of the parties is an attorney, a representative of the University's Office of General Counsel will typically be present at the hearing as legal counsel for the university to advise the Hearing Officer and Process Coordinator.  In the event that one party to a case is accompanied by an attorney without advance notice, a hearing may be postponed at the discretion of the Hearing Officer.

    d. Advisors are not permitted to participate in the proceedings or speak on behalf of the Complainant or Respondent.  Rather, Advisors are limited to providing advice to the party they are assisting.

4

4. **Registration of Witnesses**

    a. Both the Complainant and Respondent have the opportunity to register witnesses to testify at the hearing. Witnesses should be able to provide relevant information related to the alleged violations being reviewed in the hearing, such as direct observation of the incident in question and/or direct interaction with any of the parties before, during or after the incident in question.

    b. Both parties are required to notify the Process Coordinator of their registered witnesses at a date specified by the Process Coordinator that will be at least seven (7) days in advance of the hearing.

    c. The list of registered witnesses may be amended at any time prior to the deadline established by the Process Coordinator to provide notice of registered witnesses.

        i. The Hearing Officer has right to supplement the registered witness list at any time. Both the Complainant and Respondent will be promptly notified by the Process Coordinator of any changes to the registered witness s list.

        ii. In scheduling a hearing, if possible, the Process Coordinator will consider the availability of any registered witnesses. If a witness is not available to testify in person, the Process Coordinator may make arrangements for the witness to testify via video conference.

5. **Rules of Evidence**

    a. Admissible Evidence – Any relevant evidence may be admitted for consideration by the Hearing Officer. For this purpose, "relevant evidence" is any evidence (or a question seeking evidence) that, in the discretion of the Hearing Officer, makes the truth of a material fact more or less probable.

    b. Prior Sexual History / Rape Shield - Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

    c. The Hearing Officer will provide an explanation for any evidence excluded under Section 5a or 5b. The Hearing Officer's decisions on evidence are not subject to further objection or argument at the hearing.

    d. Excepted as noted below regarding oral testimony and rebuttal evidence, all evidence that may be used at the hearing must be made accessible to both the Complainant and the

      Respondent prior to the hearing and available at the hearing. Any new evidence that was not contained in the Investigative Report or otherwise collected during the investigation must be submitted to the Process Coordinator no later than seven (7) days prior to the date of the hearing. The Process Coordinator will review any new evidence with the Office for Institutional Equity and Title IX, which will have discretion to remand the case back to the Investigator for further investigation or to permit the evidence to be considered in the hearing subject to a determination of admissibility by the Hearing Officer under Sections 5a and 5b.

    e. With the exception of (i) oral testimony and (ii) evidence necessary to rebut oral testimony, any new evidence that is presented on the day of the hearing that has not previously been made available to the parties may only be admitted at the discretion of the Hearing Officer.

**6. Conduct of the Hearing**

    a. Hearings conducted pursuant to these procedures will be conducted live. Hearings may be conducted either (i) with all parties physically present in the same geographic location or (ii) with any or all parties, witnesses, and other participants appearing at the live hearing virtually, with technology enabling participants simultaneously to see and hear each other.

    b. All live hearings will be audio recorded and/or transcribed by a court reporter while the hearing is in session. After the Hearing Officer renders a decision, the recording and/or transcript will be available for inspection by the Complainant or Respondent upon written request to the Title IX Coordinator.

    c. While the hearing is in session the parties will be either located in the same room or will participate from separate locations with technology (e.g. video conference) that enables the Hearing Officer and the parties to simultaneously see and hear the party or witnesses answer questions. The parties may be moved to separate locations during breaks in the hearing.

    d. Witnesses may participate either in person or via technology (e.g. video conference) that enables the Hearing Officer and the parties to simultaneously see and hear the witness answer questions.

    e. While the hearing is in session, the Complainant and Respondent have the right to be present either in-person or virtually via technology. The Complainant and Respondent both have the right to remain silent provided that the Hearing Officer may draw a negative inference from the party's decision to refrain from testifying.

    f. At the start of the hearing, the Hearing Officer will provide an introductory statement, which may include a brief summary of these procedures, and the purpose of the hearing.

    g. Opening Statements – Following the introductory statement of the Hearing Officer, the Complainant and Respondent will each be provided ten (10) minutes for an opening statement.

    h.    Direct Examination by the Hearing Officer - The majority of the hearing will consist of questioning by the Hearing Officer of the Complainant, Respondent, and any registered witnesses that the Hearing Officer elects to call. The Hearing Officer has discretion to conduct direct examination of the Complainant and Respondent at any time throughout the hearing.

    i.    Witnesses - The Hearing Officer will have sole discretion to determine whether to call any of the registered witnesses to testify. The Hearing Officer is not required to call all registered witnesses to testify, although any statements by a witness in the record of the hearing remain subject to Section 5.b.ii. Witnesses called by the Hearing Officer will be questioned one at a time. As specified below, cross examination of a witness will typically occur after the completion of direct examination by the Hearing Officer.

    j.    Cross Examination – During the hearing, each party will have the opportunity to propose questions for the Hearing Officer to ask to the other party and to any witnesses. The Hearing Officer will determine whether the proposed question is relevant, under Section 5, before the Hearing Officer asks the question to the party or witness. The Hearing Officer has discretion to refuse to ask any question that the Hearing Officer determines duplicative of prior testimony. The Hearing Officer also has discretion to rephrase proposed questions as the Hearing Officer deems appropriate.

    k.    Evidence – The Hearing Officer will provide the Complainant and Respondent the opportunity to enter evidence into the record of hearing and/or to reference evidence contained in the Investigative Report. Subject to Section 5.b., the Investigative Report and all materials contained therein are presumed to be in the record of the hearing.

    l.    Closing Statements - Following the completion of all testimony by all parties and witnesses, the Complainant and Respondent will each be provided five (5) minutes for a closing statement.

    m.    Following closing statements, the Hearing Officer will conclude the live hearing and the parties will be dismissed. The Hearing Officer will enter deliberations and prepare a written determination as specified in Section 7 of these procedures.

7. **Hearing Officer Deliberations and Determination**

    a.    Hearing Officer Deliberations – Following the conclusion of the hearing, the Hearing Officer will consider all admissible and relevant evidence related to the allegations. The Hearing Officer will make findings of fact and a determination of responsibility with respect to each allegation using the Preponderance of the Evidence standard.

    b.    Preparation of Written Determination – The Hearing Officer will prepare a written determination regarding the findings of fact and the determination regarding responsibilityfor each allegation.

    c. Delivery of Written Determination to the Provost – After completing the written determination, the Hearing Officer will deliver the determination to the Provost.

    d. Recommendation Regarding Sanctions – If the report of the Hearing Officer includes a determination that the Respondent is responsible for any of the allegations, the Provost will make a recommendation to the President regarding applicable sanctions and remedies.

    e. Issuance of Written Determination – The report of the Hearing Officer and, if applicable, the recommendation of the Provost regarding sanctions will be provided to the Complainant, the Respondent, the Title IX Coordinator, and the Office of the President.

## 8. Rules of Decorum

The Complainant, Respondent, Advisors and Witnesses are expected to follow these rules of decorum. An individual who does not follow these rules will be first be warned by the Hearing Officer. Individuals who repeatedly violate these rules may be removed from the hearing and/or subject to separate disciplinary action.

    a. The Complainant, Respondent, and Witnesses are expected to address all questions, answers and remarks to the Hearing Officer and/or Process Coordinator.

    b. Advisors are not permitted to participate in the proceedings or speak on behalf of the Complainant or Respondent.  Rather, Advisors are limited to providing advice to the party they serve.

    c. All parties, Advisors and Witnesses should refrain from interrupting or talking over one another.

    d. The Complainant, Respondent, Advisors, and Witnesses are expected to refrain from the use of profane or vulgar language, unless such language is relevant to the proceeding.

    e. Any participant in the hearing who is not currently involved in direct or cross examination should refrain from making gestures, facial expressions, audible comments, or the like, as manifestations of approval or disapproval during the testimony of witnesses.

    f. Cell phones and tablets should be turned off or in a silent mode. Computers should be used with the audio off.

      g.    No audio or video recording is permitted, other than the recording conducted by the university under Section 7.b.  Photography is prohibited.

## 9. Appeals

The written determination of the Hearing Officer may be appealed as set forth in Section V of the Procedures for Statement of Assurance Violations.