**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YAEL CANAAN,<br><br>                           Plaintiff,<br><br>       vs.<br><br>CARNEGIE MELLON UNIVERSITY,<br><br>                           Defendant. | Civil Division<br><br>Civil Action No.: 23-02107<br><br>**The Honorable W. Scott Hardy**<br><br>**<u>Oral Argument Requested</u>** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
<u>TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

LEGAL STANDARD .................................................................................................................7

ARGUMENT .............................................................................................................................8

    I.  Count I:  Ms. Canaan Has Adequately Pled a Claim For Discrimination ...........................8

        A.  The Complaint Pleads the Elements of a Title VI Discrimination Claim................9

        B.  CMU's Arguments that the Complaint Is Insufficient Are Without
Merit....................................................................................................................10

    II.  Count II:  Ms. Canaan Has Adequately Pled a Claim for Hostile Environment ...............12

        A.  The Complaint Adequately Pleads "Severe" and "Pervasive" Conduct
Sufficient to State a Hostile Environment Claim.....................................................12

        B.  The Complaint Adequately Pleads that CMU Was "Deliberately
Indifferent" to the Discrimination and Harassment of Ms. Canaan......................15

        C.  CMU Misapplies Case Law About Harassment By Students to this
Case Of Harassment By Faculty ..........................................................................16

    III.  Count III: Ms. Canaan Has Adequately Pled a Claim for Retaliation ............................18

    IV.  Count IV: Ms. Canaan Has Adequately Pled Breach of Contract...................................19

        A.  Ms. Canaan Adequately Pleads the Terms of Her Contract with CMU ................19

        B.  Ms. Canaan Adequately Pleads Specific Breaches of Contract Terms..................20

        C.  CMU's Argument that the Guide and Procedures Were Not Breached Is
Unavailing ..........................................................................................................21

    V.  Count V: Ms. Canaan Has Adequately Pled Intentional Infliction of Emotional
Distress.....................................................................................................................23

    VI.  Ms. Canaan Should Be Afforded Leave to Amend any Deficiencies in the
Complaint..................................................................................................................25

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abdullah v. Small Bus. Bank. Dep't of the Bank of Am.*,
2013 WL 1389755 (E.D. Pa. Apr. 5 2013) .................................................................. 8

*Anderson v. Wachovia Mortgage Corp.*,
621 F.3d 261 (3d Cir. 2010) ................................................................................. 11

*Arlotte v. National Liberty Insur. Co.*,
167 A. 295 (Pa. 1933) ......................................................................................... 23

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 10

*Astaraee v. Villanova Univ.*,
509 F. Supp. 3d 265 (E.D. Pa. 2020) .......................................................... 7, 8, 10

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) ................................................................................... 8

*Blunt v. Lower Merion Sch. Dist.*,
826 F. Supp. 2d 749 (E.D. Pa. 2011) .................................................................... 11

*Castleberry v. STI Grp.*,
863 F.3d 259 (3d Cir. 2017) ............................................................................ 3, 13

*Colavecchia v. S. Side Area Sch. Dist.*,
2023 WL 3043777 (W.D. Pa. Apr. 21, 2023) ....................................................... 25

*Com. v. Transamerica Ins. Co.*,
341 A.2d 74 (Pa. 1975) ........................................................................................ 23

*Creamer v. Schwartz*,
2016 WL 2733225 (W.D. Pa. May 11, 2016) ....................................................... 25

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ....................................................................................... 13, 17

*Davis v. Quaker Valley Sch. Dist.*,
2016 WL 912297 (W.D. Pa. March 10, 2016)*, aff'd*, 693 F. App'x 131 (3d Cir.
2017) .................................................................................................................... 11

*DiSalvio v. Lower Merion High Sch. Dist.*,
158 F. Supp. 2d 553 (E.D. Pa. 2001) ............................................................. 23-24

*Doe v. Haverford*,
    2023 WL 5017964 (E.D. Pa. Aug. 7, 2023) ............................................ 24

*Doe v. Princeton Univ.*,
    790 F. App'x 379 (3d Cir. 2019) ...................................................... 13

*Doe v. Rider Univ.*,
    2018 WL 466225 (D.N.J. Jan. 17, 2018) ............................................ 21

*Eshleman v. Patrick Indus.*,
    961 F.3d 242 (3d Cir. 2020)............................................................ 7

*Figueroa v. Point Park Univ.*,
    553 F. Supp. 3d 259 (W. D. Pa. 2021)........................................ 19, 21

*Gebser v. Lago Vista Independent Sch. Dist.*,
    524 U.S 274 (1998)................................................................ 3, 18

*Gjeka v. Del. Cnty. Cmty. College*,
    2013 WL 2257727 (E.D. Pa. May 23, 2013) ...................................... 21

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003)...................................................... 12, 13

*Hayut v. State University of New York*,
    127 F. Supp. 2d 333 (N.D.N.Y. 2000) .......................................... 14, 17

*Heller v. Hammerle*,
    2021 WL 3426807 (W.D. Pa. June 30, 2021) ...................................... 23

*I.G. v. Jefferson Cnty. Sch. Dist.*,
    452 F. Supp. 3d 989 (D. Colo. 2020)............................................ 12, 14

*J.C. v. South Hills Assembly of God*,
    2022 WL 3370623 (W.D. Pa. Aug. 16, 2022) .................................... 9, 12

*K.D. by Nipper v. Harrison Sch. Dist. Two*,
    2018 WL 4467300 (D. Colo. Sept. 18, 2018) ...................................... 15

*Katchur v. Thomas Jefferson Univ.*,
    354 F. Supp. 3d 655 (E.D. Pa. 2019) .............................................. 8, 9

*Ke v. Drexel Univ.*,
    2015 WL 5316492 (E.D. Pa. Sep. 4, 2015) ...................................... 8, 11

*Krebs v. New Kensington-Arnold Sch. Dist.*,
    2016 WL 6820402 (W.D. Pa. Nov. 16, 2016) .................................. 15, 16

*L.L. v. Evesham Township Bd. of Ed.*,
   710 Fed. Appx. 545 (3d Cir. 2017)................................................................ passim

*Long v. Pizza Hut*,
   2003 WL 23019186 (W.D. Pa. Nov. 5, 2003) ................................................ 7-8, 13

*McDaniel v. Dominium Mgmt. Svcs.*,
   2022 WL 1316384 (D. Colo. May 3, 2022)....................................................... 18-19

*N.N. v. N. Burlington Cnty. Reg'l. Sch. Dist.*,
   2023 U.S. Dist. LEXIS 230761 (D.N.J. Dec. 29, 2023).................................... 8, 17

*N.U. v. Mansfield Twp. Sch. Dist.*,
   2022 WL 18024205 (D.N.J. Dec. 30, 2022) ...................................................... 13

*Oliveras v. Saranac Lake Cent. Sch. Dist.*,
   2014 WL 1311811 (N.D.N.Y. Mar. 31, 2014) .................................................. 12-13

*Patel v. St. Vincent Health Ctr.*,
   2015 WL 630260 (W.D. Pa. Feb. 12, 2015) ...................................................... 22

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)............................................................................... 25

*Powell v. St. Joseph's Univ.*,
   2018 WL 994478 (E.D. Pa. Feb. 16, 2018) ...................................................... 20-21

*Revesz ex rel. Revesz v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*,
   798 A.2d 830 (Pa. Commw. Ct. 2002) ............................................................. 24

*Rubio v. Turner Unified Sch. Dist. No. 202*,
   475 F. Supp. 2d 1092 (D. Kan. 2007) ............................................................... 19

*Sauls v. Pierce Cnty. Sch. Dist.*,
   399 F.3d 1279 (11th Cir. 2005) ........................................................................ 17

*Sewell v. Monroe*,
   974 F.3d 577 (5th Cir. 2020) ............................................................................ 16, 17

*Shaare Tefila Congregation v. Cobb*,
   481 U.S. 615 (1987)........................................................................................... 8

*Smith v. RB Distribution, Inc.*,
   515 F. Supp. 3d 311 (E.D. Pa. 2021) ................................................................ 24

*Spitsin v. WGM Transp., Inc.*,
   97 A.3d 774 (Pa. Super. Ct. 2014)................................................................... 25

*Stilley v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*,
　　968 F.Supp. 252 (W.D. Pa. 1996) ........................................................................... 24

*Stosic v. W. Jefferson Hills Sch.*,
　　2022 WL 2657183 (W.D. Pa. Jul. 8, 2022) .......................................... 3, 12, 13, 16

*Swartley v. Hoffner*,
　　734 A.2d 915 (Pa. Super. Ct. 1999) ...................................................................... 20

*T.E. v. Pine Bush Cent. Sch. Dist.*,
　　58 F. Supp. 3d 332 (S.D.N.Y. 2014) .................................................................. 8, 14

*Vance v. Spencer Cnty. Pub. Sch. Dist.*,
　　231 F.3d 253 (6th Cir. 2000) ............................................................................ 15, 16

*Wassef v. NIH*,
　　2017 WL 495795 (E.D. Pa. Feb 6, 2017) ............................................................ 3, 19

*Whitfield v. Notre Dame Middle Sch.*,
　　412 F. App'x. 517 (3d Cir. 2011) ...................................................................... 18, 19

*Williams v. Lenape Bd. of Ed.*,
　　2020 WL 2111221 (D. N.J. May 4, 2020) .............................................................. 11

*Zavada v. E. Stroudsburg Univ.*,
　　2023 WL  (M.D. Pa. Aug. 28, 2023) ............................................................... 12, 15

*Zeno v. Pine Plains Cent. Sch. Dist.*,
　　702 F.3d 655 (2d Cir. 2012) .............................................................................. 12, 16

## Statutes

Rule 12(b)(6) ................................................................................................................. 25

Title VI, 42 U.S.C. § 2000(d) ......................................................................................... 7

## Other Authorities

*A Message from CMU President Farnam Jahanian: Allegation of Antisemitism*,
　　Carnegie Mellon University,
　　https://www.cmu.edu/osher/publications/weekly-essentials/2023/fall/cmu-
　　presidents-message-antisemitism-allegations.html (Dec. 14, 2023) ......................... 1

*Office for Institutional Equity and Title IX Expansion*,
　　Carnegie Mellon University, https://www.cmu.edu/dei-
　　office/communications/2022/11-02.html (Nov. 2, 2022) ......................................... 22

*Office for Institutional Equity and Title IX Report Form*,
    CARNEGIE MELLON UNIVERSITY,
    https://cmu.hracuity.net/webform/index/2e196578-4892-4aab-af10-
    72cc76b5b71f (last visited Mar. 5, 2024) .............................................................................. 22

*Policy Against Retaliation*,
    CARNEGIE MELLON UNIVERSITY,
    https://www.cmu.edu/policies/administrative-and-
    governance/whistleblower.html (last visited Mar. 5, 2024) ..................................... 4, 7, 20, 21

*Procedures for Alleged Violations of the Statement of Assurance*,
    CARNEGIE MELLON UNIVERSITY,
    https://web.archive.org/web/20220903234649/https://www.cmu.edu/policies/f
    orms-and-documents/soa-violations.pdf (last updated Jul. 29, 2022) ............................ passim

*Statement of Assurance*,
    CARNEGIE MELLON UNIVERSITY,
    https://www.cmu.edu/policies/administrative-and-governance/statement-of-
    assurance.html (last visited Mar. 5, 2024) ..................................................................... passim

Plaintiff Yael Canaan respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Complaint filed by Defendant Carnegie Mellon University ("CMU").

## PRELIMINARY STATEMENT

CMU discriminated and retaliated against Ms. Canaan because she is Jewish. By doing so, CMU violated federal and state law and breached its contractual obligation to provide Ms. Canaan a university education free from discrimination. CMU does not dispute the fact that the Complaint delineates a disturbing narrative in which Ms. Canaan was subjected to antisemitic discrimination and retaliation at CMU, nor that the Complaint includes allegations of the administration protecting faculty members as they engaged in the antisemitic discrimination and retaliation. These facts alone, support the sufficiency of Ms. Canaan's claim.

At this motion to dismiss stage, Ms. Canaan is merely required to present a succinct statement of claim for which she is entitled to relief. A complaint is sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. CMU's statement regarding the lawsuit, specifically the statement from President Farnam Jahanian, acknowledges that Ms. Canaan's complaint meets this criterion. The President said, "the complaint is alarming and alleges that the student experienced a series of antisemitic acts and that the university did not pursue her allegations adequately."[1] CMU characterizes the antisemitism as "repugnant" and describes Ms. Canaan's experience as "shock[ing]," "deeply troubling and inappropriate." These acknowledgements provide a substantive basis for the Court to determine that Ms. Canaan has sufficiently stated her claims. Thus, the Motion to Dismiss predicated on her alleged failure to state a claim must be denied.

---

[1] *A Message from CMU President Farnam Jahanian: Allegation of Antisemitism*, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/osher/publications/weekly-essentials/2023/fall/cmu-presidents-message-antisemitism-allegations.html (Dec. 14, 2023).

CMU shamefully argues that its faculty and administration were permitted to engage in anti-Jewish discrimination against Ms. Canaan under the principle of "freedom of expression." There is no case law to support such a preposterous and offensive theory.[2]  And the five "technical" arguments CMU raises to support this theory are baseless as well.

*First*, CMU's argument that the Complaint fails in the absence of facts showing that Ms. Canaan was treated differently from similarly situated, non-Jewish students is wrong as a matter of law and is emblematic of CMU's lack of understanding of and concern for unlawful antisemitic conduct directed toward Jewish students.  As explained below, the Third Circuit has plainly held "comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff's prima facie case."[3]  Allegations of similarly situated students being treated differently is one —*but not the only*— way of establishing the requisite inference of unlawful discrimination.  The dozens of paragraphs detailing Ms. Canaan's mistreatment by CMU professors and management allow only one reasonable inference: that Ms. Canaan was discriminated against because she was Jewish, and other non-Jewish students in Ms. Canaan's classes were not.  The Complaint alleges that only 5.5% of students at CMU were Jewish, Compl. ¶ 13, and that "Canaan was treated differently from her similarly situated non-Jewish, non-Israeli classmates," *id.* ¶ 102.  That is more than enough. Furthermore, CMU admits that Ms. Canaan was treated differently than other students by describing the conduct Ms. Canaan suffered as "repugnant" and "so unlike the Carnegie Mellon that its students, faculty and alumni" supposedly know.  In light of those statements and the Complaint's allegations of disparate treatment, CMU's comparator argument seems disingenuous,

---

[2] CMU's "authority" is a 2017 newspaper op-ed on proposed legislation in South Carolina that is not appropriate to consider on a motion to dismiss.

[3] *L.L. v. Evesham Township Bd. of Ed.*, 710 Fed. Appx. 545, 548 (3d Cir. 2017).

at best.  It is certainly not supported by law.  *See* Argument Section I, *infra*.

*Second*, CMU's argument that a hostile educational environment has not been pled depends on a misstatement of law.  CMU says the pleading standard is "sufficiently severe, pervasive and objectively offensive" harassment.  The actual proof required at trial is "severe *or* pervasive harassment."[4]  The disjunctive approach "means that 'severity' and 'pervasiveness' are alternative possibilities," and the analysis "requires looking at the totality of the circumstances."  Whether a series of events that Ms. Canaan alleges and will prove pervaded her years at CMU qualifies as "severe or pervasive" (they do) is a fact-intensive question courts almost uniformly hold is not appropriate for the pleading stage.  The Court should so hold here.  *See* Argument Section II, *infra*.

*Third*, CMU's assertion that it was just professors (rather than the institution) who retaliated against Ms. Canaan ignores the Complaint's allegations that CMU's administration—indeed, the very senior executives (with "Chief," "Dean" and "Vice Provost" titles) responsible for addressing discrimination and harassment—was aware of the retaliation in real time, did nothing to address it, and swept it under the rug.  When an institution exhibits deliberate indifference to known retaliation by its agents, it is liable for that retaliation.[5]  *See* Argument Section III, *infra*.

*Fourth,* CMU's arguments against Ms. Canaan's breach of contract claim fail.  The contract between CMU and its students is comprised of the written guidelines, policies, and procedures distributed to students over the course of their enrollment, including the four documents identified in the Complaint.  CMU fails to address two of the documents (CMU's

---

[4] *Stosic v. W. Jefferson Hills Sch.*, 2022 WL 2657183, at *5 (W.D. Pa. Jul. 8, 2022); *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

[5] *See Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S 274, 290 (1998); *Wassef v. NIH*, 2017 WL 495795, at * 11 (E.D. Pa. Feb 6, 2017).

Statement of Assurance and Policy Against Retaliation ), an omission that makes it easy to deny the Motion to Dismiss.  CMU instead argues it did not breach the Title IX Resource Guide (the "Guide") or Procedures for Alleged Violations of the Statement of Assurance (the "Procedures") because they only protect sex discrimination.  This ludicrous argument ignores the plain language of the documents requiring CMU to protect its students from sexual misconduct and "other types of discrimination," such as religious and ethnic discrimination.  CMU also argues there was no breach because Ms. Canaan did not file a "formal complaint."  However, CMU's senior executives aggressively discouraged and prevented Ms. Canaan from doing so, and regardless, Ms. Canaan did complain to CMU management on numerous occasions.  *See* Argument Section IV, *infra.*

*Fifth*, CMU admits the allegations in the Complaint are "shocking."  A synonym for "shocking" is "outrageous."  That should be enough to defeat CMU's argument that the pleading of intentional infliction of emotional distress is not "extreme and outrageous" enough.  That Ms. Canaan's professors engaged in such conduct during the course of their instructional and educational duties is sufficient to plead vicarious liability as a matter of law.  *See* Argument Section V, *infra.*  For these reasons, as explained further below, the Motion to Dismiss should be denied.

## BACKGROUND

Ms. Canaan was a Jewish undergraduate student of Israeli descent at CMU's School of Architecture ("SoA") from 2018 until 2023.  Compl. ¶ 2.  While at CMU, Ms. Canaan was the subject of a coordinated campaign of antisemitic abuse and retaliation initiated by Professor Mary-Lou Arscott and actively continued by Professors Theodossis Issaias and Priyanka Bista, and senior management at CMU, including Gina Casalegno, Dean of Students; Erica Cochran Hameen, SoA Director of Diversity, Equity and Inclusion ("DEI"); Wanda Heading-Grant, Chief Diversity Officer and Vice Provost for DEI; and Elizabeth Rosemeyer, Title IX Coordinator and Assistant Vice Provost for DEI.  *Id*. ¶¶ 13, 24, 30-43, 50-69.

4

Specifically, after 11 Jews were massacred while praying at the Tree of Life Synagogue in Pittsburgh, because Ms. Canaan is Jewish, Arscott denied her request for an extension on an assignment so she could attend a vigil. *Id*. ¶¶ 14-15. Then, while presenting her final studio project for the spring 2022 semester, Arscott verbally harassed Ms. Canaan with anti-Jewish comments. *Id*. ¶ 25. As Ms. Canaan explained her *eruv* architecture project, about the boundary that enables Orthodox Jews to carry on the Sabbath, Arscott cut her off to remark that it "looked like the wall Israelis use to barricade Palestinians out of Israel" and proclaimed that Ms. Canaan's time would have been better spent presenting on "what Jews"—like Ms. Canaan—"do to make themselves such a hated group." *Id*.

Ms. Canaan brought this abuse to the attention of various administrators at CMU, including Hameen, Casalegno, and Heading-Grant. Casalegno took Arscott for a "casual walk" to discourage Ms. Canaan filing further complaints. *Id*. ¶ 34. After six months, Casalegno and Heading-Grant brokered a Zoom meeting for Arscott to apologize. *Id*. ¶ 36. But Arscott did not apologize. Instead, after Ms. Canaan told Arscott how hurtful her antisemitic comments were, Arscott only said that she was sorry Ms. Canaan "felt that way." *Id*. ¶ 37.

After the meeting, Arscott continued to harass Ms. Canaan by emailing her a link to a blog with antisemitic content, claiming it provided "insightful … perspective" to prove the justness of her antisemitism. *Id*. ¶ 38. Ms. Canaan again reported to Casalegno and Heading-Grant, and Heading-Grant denied having context (despite being copied on Arscott's email) and said there was nothing she could do. *Id*. ¶ 41-43. Ms. Canaan then had a meeting with Rosemeyer (Title IX Coordinator) who "aggressively discouraged" her from making a formal complaint. *Id.* ¶ 46. Even CMU President Farnham Jahanian was informed "Jews no longer [felt] safe" on campus. *Id*. ¶¶ 16-17. He did not respond, perhaps unsurprisingly, as he had little incentive when Qatar (which

shelters Hamas' leadership whose purpose is to kill all Jewish people) was and is CMU's largest donor. Once again, Ms. Canaan's concerns were rebuffed, ignored and swept under the rug.

Arscott retaliated by enlisting her close friend, Professor Issaias to mistreat Ms. Canaan. *Id*. ¶¶ 49-58. After Ms. Canaan "confided in Issaias" about Arscott's antisemitic treatment, Issaias admonished her to "stop acting like a victim" and stated he would not "fight her battles" and that he "cannot be an advocate for the Jews." *Id*. ¶ 50. Thereafter, Issaias denied Ms. Canaan one-on-one instruction vital to her academic experience, *id*. ¶ 51, berated her in front of classmates, *id*. ¶ 52, walked out of one-on-one meetings, *id*. ¶ 53, gave her a lower grade than other students in her group on a project, *id*. ¶ 54, refused to talk to her, *id*. ¶ 55, refused to publish her work alongside all her other classmates' in a studio publication (a platform that students use to gain employment), *id*. ¶ 57, and then gave her a grade highly inconsistent with her straight A's, *id*. ¶ 58.

Retaliation against Ms. Canaan continued through the actions of studio professor and Arscott protégé, Priyanka Bista. *Id*. ¶ 59. Bista arranged for Arscott to be present at every studio review, scheduled every other week, notwithstanding that Arscott was not a professor for the studio. *Id*. After hearing Arscott would be present to judge her work, Ms. Canaan told Bista that she felt unsafe and uncomfortable around Arscott. *Id*. ¶ 60. Bista did nothing to stop Arscott's superfluous visits, and explained she was beholden to Arscott and that if Ms. Canaan wanted to avoid her, she could present first and leave for the remaining portion of the four-hour class. *Id*. This "solution" left Ms. Canaan wracked with anxiety, as Arscott's appearances in Bista's studio were random, and the forced absence from class materially impaired her educational experience. *Id*. Ms. Canaan informed Rosemeyer, Heading-Grant and Casalegno that she was being forced to miss large portions of Bista's studio class because of Arscott. *Id*. ¶ 66. They took no action. *Id*.

CMU's conduct violates statutory and contractual obligations to protect Jewish students

from discrimination.  CMU took on these duties to Jewish students upon receipt of federal money and making a promise to comply with the antidiscrimination principles of Title VI, 42 U.S.C. § 2000(d).  CMU also took on these duties through CMU's Statement of Assurance to Jewish students like Ms. Canaan that CMU "does not discriminate in . . . administration of its programs or activities on the basis of race, color, national origin, sex, handicap or disability, age, sexual orientation, gender identity, religion, creed, ancestry, belief, veteran status, or genetic information." Compl. ¶ 76.  The Procedures contain the Office for Institutional Equity and Title IX's promise to implement the Statement of Assurance by policing discrimination and responding to complaints.  *Id.* ¶ 83.  CMU also promises to prevent and remedy retaliatory conduct by faculty towards students in its Policy Against Retaliation.  *Id.* ¶ 77.  Additionally, the Guide promises that the administration will "review and document" reports of discrimination, investigate reports of discrimination, and provide numerous "supportive measures" to reporters of discrimination.  *Id.* ¶ 79.  CMU breached its statutory and contractual obligations to Ms. Canaan in this case.

The pattern of intentional abuse, retaliation and unanswered complaints colored a significant portion of Ms. Canaan's time at CMU, and materially injured her physically, emotionally, educationally and professionally.  *Id.* ¶¶ 74-75.  Ms. Canaan developed severe and constant migraines as a result of anxiety, *id.* ¶ 60, suffered depression, *id.* ¶ 153, and abandoned her career in architecture entirely as a result of these events, *id.* ¶ 75.

## LEGAL STANDARD

Ms. Canaan's allegations must be accepted as true, and this Court must draw all reasonable inferences in her favor.  *Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 271 (E.D. Pa. 2020). Further, "[a]t the motion to dismiss stage … all that is required is a short and plain statement of the claim showing the pleader is entitled to relief." *Eshleman v. Patrick Indus.*, 961 F.3d 242, 247 (3d Cir. 2020).  "[I]t is well-settled that a complaint is sufficient if it adequately puts the defendant

on notice of the essential elements of a cause of action." *Long v. Pizza Hut*, 2003 WL 23019186, at *3 (W.D. Pa. Nov. 5, 2003).  Under this standard, the Motion to Dismiss must be denied.

## **ARGUMENT**

**I.      Count I:  Ms. Canaan Has Adequately Pled a Claim For Discrimination**

"The two elements for establishing a cause of action [for discrimination] pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engag[ed] in discrimination is receiving federal financial assistance." *Abdullah v. Small Bus. Bank. Dep't of the Bank of Am.*, 2013 WL 1389755, at *2 (E.D. Pa. Apr. 5 2013).  Discrimination against a Jew meets the first element.  *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) (holding that civil rights laws that prohibit discrimination on the basis of race protect Jews); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 354-55 (S.D.N.Y. 2014) (citing cases).  Alleging that CMU receives federal funding meets the second.  *See* Compl. ¶ 13; *see also N.N. v. N. Burlington Cnty. Reg'l. Sch. Dist.*, 2023 U.S. Dist. LEXIS 230761, at * 14, n.5 (D.N.J. Dec. 29, 2023).

Intentional discrimination "may be proven by direct or circumstantial evidence." *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014); *Astaraee*, 509 F. Supp. 3d at 270-71.  Direct evidence is "overt or explicit evidence which directly reflects discriminatory bias," and includes allegations of comments made by another person to the plaintiff.  *Ke v. Drexel Univ.*, 2015 WL 5316492, at * 12 (E.D. Pa. Sep. 4, 2015).  Generally, the comments should "relate to [a] decisional process in order to establish that the adverse decision was made because of the plaintiff's [protected status]."  *Id.* at *16; *see also Astaraee*, 509 F. Supp. 3d at 270.  Circumstantial evidence may also be sufficient to support a claim of discrimination.  *Katchur*, 354 F. Supp. 3d at 665.  Pleading discrimination through circumstantial evidence requires alleging that: (i) Ms. Canaan is a member of a protected class; (ii) she suffered an adverse action by CMU in pursuit of education;

(iii) she was qualified to continue her education and; (iv) the circumstances of the adverse action give rise to an inference of unlawful discrimination. *See J.C. v. South Hills Assembly of God*, 2022 WL 3370623, at *3 (W.D. Pa. Aug. 16, 2022) (setting out the "*McDonell Douglas*" factors).

The burden for establishing a *prima facie* case of discrimination under Title VI is "not onerous." *Evesham*, 710 Fed. App'x. at 549. And at the pleading stage, Ms. Canaan need not "meet the prima facie standard to survive dismissal," but must simply make "sufficient factual allegations to raise a reasonable expectation that discovery will reveal the [] elements" of her claims. *Katchur*, 354 F. Supp. 3d at 666. The Complaint clears this low bar.

### A.     The Complaint Pleads the Elements of a Title VI Discrimination Claim

The Complaint alleges the following facts that plainly constitute both direct and circumstantial evidence sufficient to state a claim for intentional discrimination by CMU against Ms. Canaan because she is a Jew of Israeli descent:

- Arscott was Ms. Canaan's professor. Arscott told Ms. Canaan in class to explain "what Jews do to make themselves such a hated group." Compl. ¶¶ 22-25. Arscott refused to apologize and thereafter sent Ms. Canaan a blog that champions the killing of Jews as "insightful … context" to justify her harassment of Ms. Canaan as a Jew. *Id.* ¶¶ 38-39.

- Issaias, also Ms. Canaan's professor, learned Ms. Canaan complained and was Jewish, and stated he would not "advocate for the Jews," denied Ms. Canaan critical one-on-one sessions, berated her in front of other students, gave her a lower grade than other non-Jewish students in her group for the same project, refused to publish her work in a class publication, and gave her a startlingly low grade compared to her record. *Id.* ¶¶ 50-58.

- Bista, also Ms. Canaan's professor, had Arscott visit her studio despite Ms. Canaan's expression that she felt unsafe. *Id.* ¶¶ 59-60. When Ms. Canaan requested Arscott be excluded for fear of further antisemitism, Bista denied her because she was Jewish and Bista owed Arscott for her hiring. *Id.* Bista asked Ms. Canaan, the tuition-paying student, to miss class time rather than ask Arscott not to attend a class she had no role in. *Id.*

- CMU senior executives, including Hameen (DEI Director), Casalegno (Dean of Students), Heading-Grant (Chief Diversity Officer) and Rosemeyer (Title IX Coordinator) ignored Ms. Canaan's complaints because she is Jewish, *id.* ¶¶ 30-36, 41-47, 64-69, declined requests to implement a program combating harassment of Jewish students who reported being "unsafe," *id.* ¶¶ 16-17, 33, 46, 68, and discouraged Ms. Canaan from filing a formal complaint of anti-Jewish discrimination, *id.* ¶ 46.

9

**B.**     **CMU's Arguments that the Complaint Is Insufficient Are Without Merit**

CMU's brief does not contest that Ms. Canaan has failed to plead direct evidence of discrimination against CMU.  It simply cannot do so based on the factual record above.  Instead, CMU's brief exclusively focuses on whether Ms. Canaan's pleading of circumstantial evidence of discrimination is sufficient under the *McDonnell Douglas* factors.  The *McDonnell Douglas* factors, however, are irrelevant where direct evidence of discrimination is pled.  *See Astaraee*, 50 F. Supp. 3d at 270 (analyzing Title VI claims under direct and circumstantial evidence frameworks separately).

Nonetheless, the facts pled in the complaint satisfy the pleading standard for circumstantial evidence as well.  Taking all well-pled facts as true and construing them in the light most favorable to Ms. Canaan, the Complaint alleges disparate treatment from Ms. Canaan's non-Jewish classmates, including: being singled out as a Jewish student and being subject to abuse from Arscott, Compl. ¶ 25, for which she never apologized and continued, *id.* ¶¶ 41-42, Issaias refusing to treat Ms. Canaan the same as her other classmates after he found out she was Jewish, *id.* ¶¶ 51, 54, 57, 58 (exclusion from one-on-one meetings, exclusion from class project booklet, worse grade on group project than non-Jewish group members) and Bista forcing Ms. Canaan to miss large amounts of class that her non-Jewish peers did not need to miss, simply to avoid being subjected to her abuser, Arscott, on a weekly basis,  *id.* ¶ 60.

Furthermore, CMU's suggestion that Ms. Canaan has not adequately pled that her classmates were not Jewish is wrong.  The Complaint states that only 5.5% of students at CMU were Jewish, *id*. ¶ 13, and that "Canaan was treated differently from her similarly situated non-Jewish, non-Israeli classmates," *id.* ¶ 102.  When read in context of the specific factual allegations above, the only reasonable inference is that other similarly-situated students in Ms. Canaan's classes were not also Jewish.  *See  Aschroft v. Iqbal*, 556 U.S. 662, 686 (2009) (statements are to

be read in reference to "factual context."). CMU's suggestion that the Complaint should expressly state that her non-Jewish classmates were not subject to anti-Jewish bias campaigns seems disingenuous, at best.

Even if Ms. Canaan did not make the specific comparative allegations CMU wants, the Complaint should not be dismissed. The Third Circuit has plainly held that "comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff's prima facie case". *Evesham*, 710 Fed. Appx. at 548;[6] *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011) (same). [7] A plaintiff may *either* point to comparators (similarly situated students who were treated differently) *or* show "some additional evidence [] that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261 (3d Cir. 2010); *see also Evesham*, 710 Fed. App'x. at 548-49 (applying standard to Title VI context); *Williams v. Lenape Bd. of Ed.*, 2020 WL 2111221, at *12 (D. N.J. May 4, 2020) (same). Even *Davis v. Quaker Valley*, relied upon by CMU, states that comparator allegations are *only one way* of establishing the "inference of unlawful discrimination." *Davis v. Quaker Valley Sch. Dist.*, 2016 WL 912297, at *11 (W.D. Pa. March 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).

The facts alleged in the Complaint, including Arscott's verbal abuse and continued harassment of Ms. Canaan, Issaias's antisemitic remarks followed by his retaliation in class, Ms.

---

[6] CMU cites liberally to *Evesham* it its brief, but ignores the clear statement of the law that comparator evidence is not necessary to state a claim of Title VI discrimination.

[7] *Ke* and *Quaker Valley* do not require that Ms. Canaan plead "comparable students" were treated differently. Both were on summary judgment where plaintiffs chose to use comparator evidence adduced during discovery. *Ke*, 2015 WL 53126492, at *21-22; *Quaker Valley*, 2016 WL 912297, at *12. There is no support for a rule that comparator evidence is required at the pleading stage.

Canaan's forced exclusion from Bista's class, and CMU's continued disregard and stonewalling, show a causal connection between Ms. Canaan being a Jew and her discriminatory treatment. *See, e.g.*, *Evesham*, 710 Fed. App'x. at 548-49 (teacher reacting favorably to fellow student calling plaintiff the n-word raised inference of discrimination on the pleadings); *J.C.*, 2022 WL 3370623, at *4 (school's lack of response to racialized verbal abuse by fellow students supports inference).

Ms. Canaan has plainly pled facts sufficient to support a claim of discrimination under Title VI, and therefore Count I should not be dismissed.

## II.     Count II:  Ms. Canaan Has Adequately Pled a Claim for Hostile Environment

To state a hostile environment claim, Ms. Canaan must plead facts showing (1) she was subjected to "severe *or* pervasive harassment" based on her status as a Jew of Israeli descent; and that CMU (2) had "actual knowledge" of the harassment; (3) "exercised substantial control";[8] and (4) was "deliberately indifferent" to such known harassment. *Stosic*, 2022 WL 2657183, at *5 (emphasis in original) (citing *Evesham*, 710 F. App'x at 549); *Zavada v. E. Stroudsburg Univ.*, 2023 WL 5532809, at *3 (M.D. Pa. Aug. 28, 2023).

### A.     The Complaint Adequately Pleads "Severe" and "Pervasive" Conduct Sufficient to State a Hostile Environment Claim

Discriminatory harassment creates a hostile educational environment where it "depriv[es] [the student] of the benefits and educational opportunities available at the school." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003); *accord Stosic,* 2022 WL 2657183, at *5; *Oliveras*

---

[8] There is no dispute that the Complaint satisfies the second and third prongs.  Ms. Canaan's harassment was perpetrated by teachers, on campus and within school hours.  Compl. ¶¶ 25, 48-55.  CMU exercised "substantial control" for purposes of Title VI liability.  *Zeno v. Pine Plains Cent. Sch. Dist.,*, 702 F.3d 655, 665 (2d Cir. 2012) ("substantial control" when "harassment [] occurs during school hours and on school grounds").  CMU had "actual knowledge" of Ms. Canaan's harassment because she reported it to several school administrators.  Compl. ¶¶ 22-34, 41-47, 64-68; *I.G. v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 1001 (D. Colo. 2020) ("actual knowledge" pled when "discrimination was repeatedly reported to school[.]").

*v. Saranac Lake Cent. Sch. Dist.*, 2014 WL 1311811, at *14 (N.D.N.Y. Mar. 31, 2014) ("Educational benefits include an academic environment free from racial hostility."). A professor can deprive a student of educational benefits by "simply creating a disparately hostile educational environment relative to [the student's] peers." *Hayut*, 352 F.3d at 750.

Under the "correct standard" for pleading hostile environment, the alleged conduct must be "severe *or* pervasive." *Castleberry*, 863 F.3d at 264 (in Title VII context, clarifying that severity is "context-specific" and "one [isolated] instance can suffice to state a claim"); *see also Evesham*, 710 F. App'x at 549 (Title VI); *Stosic*, 2022 WL 2657183, at *5 (emphasizing *Castleberry* and recognizing "courts have held that even a single instance … can create a [] hostile environment"); *N.U. v. Mansfield Twp. Sch. Dist.*, 2022 WL 18024205, at *8 (D.N.J. Dec. 30, 2022) (same).[9]

Determining whether conduct is sufficiently "severe" or "pervasive" is a "necessarily fact-intensive" inquiry that "requires looking at the totality of the circumstances." *Castleberry*, 863 F.3d at 264; *Long*, 2003 WL 23019186, at *4. Therefore, it is not appropriate for resolution at the pleading stage. *Id.; see also Hayut*, 352 F.3d at 745 ("Making a 'hostility' determination in the educational context … is fact-specific and … best left for trial."). Consequently, courts "have uniformly refused to dismiss hostile [] environment claims … based on the alleged failure to show sufficiently 'severe or pervasive' conduct." *Long*, 2003 WL 23019186, at *4 (citing cases).

The Complaint alleges that CMU, through the direct conduct of its professors and administrators, engaged in a campaign of harassment against Ms. Canaan as a Jew of Israeli

---

[9] CMU cites to *Doe v. Princeton Univ.* to argue that "one instance" of a "racial epithet" cannot meet the standard. 790 F. App'x 379, 384 (3d Cir. 2019). That case should not guide here. In *Doe v. Princeton*, the alleged hostile environment was other students "yelling out a gay slur to [plaintiff] and calling him a liar." *Id.* at 383. The court summarily held that this one instance did not satisfy the standard articulated in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652-53 (1999) for Title IX liability in the context of *student harassment,* which does not apply here (*see* Section II.C, *infra*). *Id.* at 384.

descent, which included making multiple antisemitic comments to her in class, and which resulted in her forced absence from class, exclusion from important educational and career opportunities, and seeking mental health services.  Accordingly, the Complaint sufficiently pleads discriminatory conduct that was both "severe" *and* "pervasive" such that it deprived Ms. Canaan of her educational benefits.

The case law strongly supports Ms. Canaan.  In *I.G. v. Jefferson County,* the court denied dismissal of a Jewish student's Title VI hostile environment claim, finding allegations that students "giving Nazi salutes, saying 'Heil Hitler,' wearing swastikas and referencing gas chambers" that caused plaintiff to drop their class and suffer academically, sufficiently pled a claim.  452 F. Supp. 3d at 1002.  Similarly, in *T.E. v. Pine Bush* (on summary judgment), the court found student harassment of Jewish students that included "anti-Semitic slurs" and "jokes" that led to their "emotional[] distress[]" and seeking mental health services, could establish Title VI liability.  58 F. Supp. 3d at 357-58.  The harassment suffered by Ms. Canaan is on all fours with these cases, but because Ms. Canaan's harassers were her *professors*, their conduct need not even rise to the same level to be actionable (Section II.C, *supra*).  In *Hayut,* the court refused to dismiss allegations that plaintiff's professor called her "Monica" and made Monica Lewinsky jokes in class, and as a result she was "overcome with shame and humiliation" and suffered academically.  127 F. Supp. 2d 333, 335-36 (N.D.N.Y. 2000).  The court found it fair to consider "the legitimate inferences which might be drawn" from the statements, and because made by a professor "who, at the time, had a strong influence or control over plaintiff's life and future," the court held such conduct could violate Title VI because it "altered" the "conditions of her education [] for the worse."  *Id.* at 335, 337 (citations and internal quotes omitted).

**B.    The Complaint Adequately Pleads that CMU Was "Deliberately Indifferent" to the Discrimination and Harassment of Ms. Canaan**

To plead CMU's liability for its hostile educational environment, Ms. Canaan must allege that (1) her harassment was known by "an appropriate person who had authority to take corrective measures" and (2) CMU's response "amounted to deliberate indifference." *Krebs v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6820402, at *3 (W.D. Pa. Nov. 16, 2016). The Complaint easily meets this standard.

School administrators are deliberately indifferent "where the school's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.* at *11. In determining whether a response is "clearly unreasonable," courts may consider "the time it took the district to respond to complaints, the level of response, the effort expended to respond to the allegations, and the efficacy of the response." *Zavada*, 2023 WL 5532809, at *4. Deliberate indifference "can also be phrased as an 'intentional choice to sit by and do nothing.'" *K.D. by Nipper v. Harrison Sch. Dist. Two*, 2018 WL 4467300, at *6 (D. Colo. Sept. 18, 2018). And where a school knows that "its efforts to remediate are ineffective, and it continues to use those same methods to no avail," the school "has failed to act reasonably in light of the known circumstances." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (citing cases).

The Complaint sufficiently pleads that CMU's response to Ms. Canaan's harassment was unreasonable under the circumstances where Ms. Canaan has alleged:

- Ms. Canaan and other Jewish students told Jahanian and Casalegno they "no longer feel safe," and CMU refused to implement programs to combat antisemitism. Compl. ¶¶ 16-17.

- Ms. Canaan reported Arscott's in-class antisemitic comments to Casalegno, Hameen, and Heading-Grant, and there was no response for six months. *Id.* ¶¶ 27-31, 37.

- CMU coordinated only a "casual walk" with Arscott and a meeting with Arscott and Ms. Canaan, after which Arscott did not apologize or cease her harassment. *Id.* ¶¶ 33-39.

15

- Ms. Canaan reported Arscott's continued harassment to Casalegno and Heading-Grant, who replied there was "nothing [they] could do." *Id.* ¶¶ 41-43.

- Ms. Canaan reported the harassment to Rosemeyer who "aggressively discouraged" Ms. Canaan from filing a formal complaint. *Id.* ¶¶ 44-46.

- Ms. Canaan reported Issaias's antisemitic comments and in-class retaliation to Rosemeyer, who after one week referred Ms. Canaan to grade appeals. *Id.* ¶¶ 64-65.

- Ms. Canaan approached Rosemeyer, Heading-Grant and Casalegno for a solution to Arscott's random attendance in Bista's studio, and CMU did not respond. *Id.* ¶¶ 67-69.

These allegations plainly meet the applicable standard.[10]

CMU summarily asserts that it "took measures to reconcile [Ms. Canaan's] concerns" that were not "clearly unreasonable" because they did not lead to "further harassment." The Motion to Dismiss is devoid of anything to support this argument and rests upon the reduction of Ms. Canaan's allegations to two instances with Arscott that CMU baselessly asserts are isolated and unrelated events while ignoring the rest of the Complaint. *Id.* at 16-17. Reading the Complaint in a light most favorable to Ms. Canaan and taking CMU's statements at face value, CMU's failure to take *any* concrete action amounts to deliberate indifference. *Id.* at 17.

### C. CMU Misapplies Case Law About Harassment By Students to this Case Of Harassment By Faculty

The cases cited by CMU are inapposite and unpersuasive because they invoke the standard for *student-on-student* harassment. Harassment by peers "is less likely to satisfy" the requirements

---

[10] This Court found "deliberate indifference" was adequately pled where alleged that the student "held multiple meetings and conferences with school officials, who allegedly failed to take further steps to prevent harassment," *Krebs*, 2016 WL 6820402, at *4, and where the complaint "point[ed] to specific instances of the [school] failing to take prompt and immediate corrective action[.]" *Stosic*, 2022 WL 2657183, at *5. The weight of other authority supports this view. *See, e.g., Vance*, 231 F.3d at 261; *Zeno*, 702 F.3d at 668-71 (affirming finding of deliberate indifference where school implemented "half-hearted measures"); *Sewell v. Monroe*, 974 F.3d 577, 586 (5th Cir. 2020) (dismissal denied where complaint alleged school "did nothing" after it "promised to 'talk with' [teacher]").

of a Title VI claim "than is teacher-student harassment." *Davis*, 526 U.S. at 652-53.  This is a case of teacher-student harassment.

In *Davis v. Monroe County*, the Supreme Court established that, "[i]n the context of *student-on-student harassment*, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies victims the equal access to education that Title IX is designed to protect." *Id.* at 652 (emphasis added).  By contrast, the Supreme Court explained, discriminatory conduct is more likely to impact education when perpetrated *by a teacher*:

> The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity.  Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.

*Id.* at 653.  Other courts acknowledge *Davis v. Monroe* does not apply to (and distinguishes) teacher harassment.  *See, e.g., Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) (in case of "teacher-on-student harassment," plaintiff "need not establish misconduct was 'so severe, pervasive, and objectively offensive'"); *N. Burlington Cnty.*, 2023 U.S. LEXIS 230761, at *13 n. 5 ("Because Plaintiff's claims are based on teacher-student discrimination … *Davis* is inapplicable.").  CMU's reliance on cases involving peer harassment have no application to this case of professors and administrators harassing a student.

CMU's one case involving teacher harassment and a Rule 12 motion is *Sewell*, in which the Fifth Circuit affirmed denying dismissal because allegations of "intense verbal abuse that comes from an authority figure" and which "persists for most of the school year," stated a claim for hostile educational environment.  974 F.3d at 585; *accord Hayut*, 127 F. Supp. 2d at 337 (denied dismissal of claim based on professor's offensive comments).  The same result should obtain here.

17

### III.    Count III: Ms. Canaan Has Adequately Pled a Claim for Retaliation

To establish a claim for retaliation under Title VI, Ms. Canaan must show "(1) she was engaging in a protected activity; (2) the funded entity subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link between the adverse action and the protected activity." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x. 517, 522 (3d Cir. 2011). Ms. Canaan has adequately pled facts supporting each element of the claim:

- *Protected Activity*. Ms. Canaan engaged in protected activity by, on numerous occasions, bringing antisemitic discrimination and harassment to the attention of CMU administrators and employees. Compl. ¶¶ 22-34, 41-47, 64-68.

- *Adverse Action*. Ms. Canaan was subject to adverse actions at the hands of Issaias and Bista. *Id.* ¶¶ 48-58 (Issaias's retaliatory campaign), ¶¶ 59-63 (Bista's exclusion of Ms. Canaan in favor of Arscott).

- *Causal Link*. Issaias's retaliation was accompanied by plain statements linking Ms. Canaan's protected activity to the retaliation, i.e. "you are calling all of us antisemites" and "I can't be an advocate for the Jews." *Id.* ¶ 50. Bista, who told Ms. Canaan she owed her employment to Arscott, excluded Ms. Canaan after Ms. Canaan explained that she feared Arscott because of her past antisemitic abuse. *Id.* ¶ 60.

CMU argues that since the alleged retaliation was committed by Ms. Canaan's professors, CMU cannot be held liable for retaliation it was aware of and intentionally allowed to continue. CMU is wrong. CMU's senior executives responsible for addressing discrimination and harassment were aware of the retaliation in real time, did nothing to address it, and swept it under the rug. Compl. ¶¶ 64-69. When an institution exhibits deliberate indifference to known retaliation by its agents, it is liable for that retaliation. *See Gebser*, 524 U.S at 290 (1998).

While *respondent superior* generally does not lead to institutional Title VI liability, where an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures" has "actual knowledge" of the discrimination and "fails adequately to respond," the institution is liable. *Id.* at 290 (acts may be imputed to institution when appropriate person has actual knowledge of and opportunity to remediate discrimination); *see also McDaniel*

*v. Dominium Mgmt. Svcs.*, 2022 WL 1316384, at *11 (D. Colo. May 3, 2022) (extending *Gebser* to Title VI); *Wassef*, 2017 WL 495795, at * 11 (refusing to dismiss Title VI retaliation claims where administrators had actual knowledge and did not remedy); *Rubio v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1100 (D. Kan. 2007) (refusing to dismiss Title VI retaliation claim when administrator had knowledge of retaliation and authority to correct and acted with deliberate indifference).

CMU ignores this ample case law and relies on a one-sentence holding from *Whitfield*, which stands for the unremarkable proposition that where there is no evidence any appropriate persons with decision-making authority were aware of the retaliation, the institution cannot be liable.  The Complaint clearly alleges Ms. Canaan promptly made responsible administrators aware of retaliation, and they did nothing to remedy it.  *E.g.,* Compl. ¶¶ 41-43 (Heading-Grant tells Ms. Canaan there is nothing she can do), ¶¶ 44-46, 64-69 (Rosemeyer discourages Ms. Canaan from filing a formal complaint).

## IV.     Count IV: Ms. Canaan Has Adequately Pled Breach of Contract

In Pennsylvania, "the relationship between a private educational institution and an enrolled student is contractual in nature."  *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 266 (W. D. Pa. 2021).  The Complaint pleads the requisite elements: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages."  *Id*.  This Court should look to Ms. Canaan's well-pleaded allegations and disregard CMU's attempts to transform the entirety of their contractual obligations into isolated, unenforceable, and meaningless promises. The Complaint adequately pleads a claim for breach of contract.

### A.     Ms. Canaan Adequately Pleads the Terms of Her Contract with CMU

A contract between a university and its students "is comprised of the written guidelines, policies, and procedures . . . distributed to the student over the course of their enrollment in the

institution."  *Id.* at 268 (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)).  Ms.

Canaan has pled her contract was made up of four policies: the Statement of Assurance, Policy

Against Retaliation, Guide, and Procedures—all of which are part of the "guidelines, policies, and

procedures" that are disseminated to students through CMU's website.  *See* Compl. ¶¶ 76, 77, 79,

81, 83 (including the specific terms of each policy that CMU breached).

### B.    Ms. Canaan Adequately Pleads Specific Breaches of Contract Terms

Second, Plaintiff has adequately plead the specific actions and inactions by CMU that

constitute its breach of each of the following terms:

- CMU's Statement of Assurance prevents CMU from discriminating against a student in its "administration of its programs or activities" on numerous bases, including national origin, religion, and ancestry. Compl ¶ 77.  CMU breached by discriminating against Ms. Canaan because she is a Jew.  *See, e.g., id.* ¶¶ 22-25 (Arscott discrimination), ¶¶ 46-47, 64-68 (CMU lack of response), ¶¶ 48-58 (Issaias discrimination), ¶¶ 59-63 (Bista discrimination).

- The Procedures contain CMU's promise to review and investigate reports of discrimination and outlines the Title IX Office's review process. *Id.* ¶ 83.  CMU breached through its lack of investigation or attempt to remedy Ms. Canaan's reports of discrimination. *See, e.g., id.* ¶¶ 46-47, 64-68.

- CMU's Policy Against Retaliation prohibits faculty from retaliating against a student who reports discrimination and requires CMU to take "appropriate disciplinary action" against individuals who violate this policy. *Id.* ¶ 77.  This was breached by Issaias's and Bista's retaliatory conduct as well as CMU's failure to review and remedy Ms. Canaan's reports of retaliation. *See, e.g., id.* ¶¶ 48-58, ¶¶ 59-68.

- The Guide requires CMU to review reports of discrimination and provide supportive measures and options on how to proceed. *Id.* ¶¶ 79, 81.  CMU breached by its failure to take Ms. Canaan's reports seriously when she complained of discrimination, and instead "aggressively discouraged" her from filing a formal complaint, and to provide her with supportive measures. *See, e.g., id.* ¶¶ 46, 80, 82.

Ms. Canaan's numerous, specific allegations of breach in the Complaint are more than

sufficient to state a claim at the pleading stage.  Courts have routinely found allegations that a

university failed to "adhere to the requirements of its policies" as sufficient to allege breach of

contract.  *Powell v. St. Joseph's Univ.*, 2018 WL 994478, at *5 (E.D. Pa. Feb. 16, 2018)

(university's alleged failure to launch an investigation as required was sufficient to allege breach of contract); *Gjeka v. Del. Cnty. Cmty. College*, 2013 WL 2257727, at \*13 (E.D. Pa. May 23, 2013) (allegations that student was harassed by professor and school failed to "provid[e] a learning environment free from discrimination" sufficient to state a claim for breach); *Doe v. Rider Univ.*, 2018 WL 466225, at \*13-14 (D.N.J. Jan. 17, 2018) (allegations that university failed to conduct an investigation in compliance with its policies were sufficient to allege breach of contract).[11]

### C.    CMU's Argument that the Guide and Procedures Were Not Breached Is Unavailing

CMU advances arguments against Ms. Canaan's breach of contract claim based on the incorrect contention that CMU did not breach the Guide or Procedures.  CMU does not address either the Statement of Assurance or Policy Against Retaliation, nor the various allegations that it breached these policies.  Thus, CMU effectively concedes that Ms. Canaan has adequately pled her breach of contract claim.  *See* Compl. ¶145; *see also Figueroa*, 553 F. Supp. 3d. at 268 ("Because the multi-faceted contractual relationship between a university and its students is generally not documented within a single integrated express writing, it is comprised of — and the courts look to — the many different representations provided to the students.").  Ms. Canaan has pled a breach of the terms in published policies that explicitly provide CMU's obligations to prevent and remedy discrimination and retaliation, which is sufficient to plead breach of contract.

CMU also shockingly argues that its actions could not breach the Guide because the antidiscrimination obligations thereunder apply only to sex discrimination, leaving CMU free to discriminate against Jewish people.  The Guide requires CMU to respond to "a report of sexual

---

[11] As to the third element, Ms. Canaan has adequately pled damages that are the direct and proximate result of CMU's breaches, including damages for physical and mental personal injury, costs and expenses for medical care and treatment, deprivation of educational opportunities, loss of tuition paid, and loss of career earnings.  Compl. ¶¶ 154-55.  CMU has not contested this.

misconduct *or other types of discrimination*" (CMU Br. Ex. 1 at 2) (emphasis added).  At this stage, the Court must interpret "other types of discrimination," to include anti-Jewish discrimination.  It would be illogical to construe the Guide as only pertaining to sexual misconduct in light of other materials that make clear the Title IX Office addresses all forms of discrimination.  For example, the Office for Institutional Equity and Title IX Report Form includes "Discriminatory Conduct," which includes "experiencing discrimination . . . on the basis of race, color, national origin, sex, . . . religion."[12]

With respect to the Procedures, CMU claims its obligations were not triggered because Ms. Canaan failed to file a "formal" complaint.  CMU's reading of the Procedures is untenable.  In addition to guaranteeing that all "formal" reports will be reviewed by the Title IX Office, the Procedures require the Title IX Office to review reports of discrimination "that could constitute a violation of both the Statement of Assurance and another university policy or policies" and determine "which policy or policies and procedures apply and whether action will be taken under multiple policies." (CMU Br. Ex. 2 at 3).  A "formal complaint" is not defined in the Procedures and only requires a written complaint filed with the Office for Institutional Equity and Title IX. *Id.*  Whether Ms. Canaan's actions and written correspondence, as alleged in the Complaint, amount to a formal complaint is an issue of fact.  *See Patel v. St. Vincent Health Ctr.*, 2015 WL 630260, at *19-20 (W.D. Pa. Feb. 12, 2015) (denying summary judgment because whether employee submitted a "written demand" to trigger investigation was issue of material fact).

---

[12] *Office for Institutional Equity and Title IX Report Form*, CARNEGIE MELLON UNIVERSITY, https://cmu.hracuity.net/webform/index/2e196578-4892-4aab-af10-72cc76b5b71f  (last visited Mar. 5, 2024).  Additionally, a digitally published update from the Office on November 2, 2022 provides that the Office changed its name to "more accurately reflect[] its expanded mission, purpose and services as it now receives reports on discrimination beyond those that fall solely under Title IX."  *Office for Institutional Equity and Title IX Expansion*, CARNEGIE MELLON UNIVERSITY, https://www.cmu.edu/dei-office/communications/2022/11-02.html (Nov. 2, 2022).

Furthermore, CMU cannot rely on any alleged failure to file a "formal complaint" because the Complaint alleges Ms. Canaan was "aggressively discouraged [by the Title IX Coordinator and Assistant Vice Provost for DEI] from filing a formal complaint." Compl. ¶ 46. "[I]t is a well settled rule of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability . . . where he himself has caused that failure." *Com. v. Transamerica Ins. Co.*, 341 A.2d 74, 77 (Pa. 1975) (citing *Arlotte v. National Liberty Insur. Co.*, 167 A. 295, 296 (Pa. 1933)). CMU's breach is not excused because its actions were the reason that Ms. Canaan did not file a formal complaint.

**V.     Count V: Ms. Canaan Has Adequately Pled Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress requires allegations of "extreme and outrageous" conduct that caused plaintiff severe emotional distress, "and that the defendant acted with the intent to cause that distress or with knowledge that such distress was substantially certain to occur." *Heller v. Hammerle*, 2021 WL 3426807, at *10 (W.D. Pa. June 30, 2021).

The actions of CMU's professors and senior executives toward Ms. Canaan were "extreme and outrageous" and caused her physical and mental ailments. Indeed, CMU's brief described the allegations as "shock[ing]" and "not trivial."[13] CMU professors in positions of power over Ms. Canaan colluded to attack her as an ethnic and religious minority and continued despite her reports to CMU. Compl. ¶¶ 25, 38-40, 48, 74. This, along with CMU's knowledge thereof and refusal to stop is enough to show, at the pleading stage, its conduct was "extreme and outrageous" and was intended or substantially certain to cause Ms. Canaan distress. *See DiSalvio v. Lower Merion High*

---

[13] "Shocking" is synonymous with "outrageous" and "extremely offensive." *Shocking*, Merriam-Webster's Dictionary (New ed. 2022).

*Sch. Dist.*, 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001) (teacher harassment often meets "extreme and outrageous" standard "in light of [] age and relative power.").

CMU is wrong that Ms. Canaan's allegations are qualitatively dissimilar from those courts have deemed "extreme and outrageous" conduct.  For instance, like the student in *Stilley v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 968 F.Supp. 252, 257 (W.D. Pa. 1996) (summary judgment), Ms. Canaan was subjected to abuse over an extensive period and suffered academic punishment for decrying Arscott's antisemitism.  Further, this prejudice and retaliation marred nearly the entirety of Ms. Canaan's tenure at CMU.  Persistent and ongoing abuse like that suffered by Ms. Canaan satisfies the pleading standard.  *See Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 318 (E.D. Pa. 2021) ("Pennsylvania courts have stressed that continuing malicious actions are more likely to be deemed extreme and outrageous.") (internal quotation marks omitted).

CMU's attempt to analogize Ms. Canaan's suffering to the "frivolous" claims asserted in *Doe v. Haverford* is baseless.  In *Haverford*, a student athlete was ejected from his sports team after teammates objected to his alleged pattern of misogyny and a rumor he committed sexual assault.  2023 WL 5017964 at *2 (E.D. Pa. Aug. 7, 2023).  Ms. Canaan alleges that *faculty* engaged in a pattern of outrageous antisemitic abuse, and she was denied the ability to engage in educational opportunities she paid for resulting significant physical ailments, a far more significant harm.  *See Revesz ex rel. Revesz v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 798 A.2d 830, 837 (Pa. Commw. Ct. 2002) ("[T]he loss of an opportunity to play interscholastic athletics … does not constitute irreparable harm").

CMU's contention that Arscott's and Issaias's actions are not subject to *respondeat superior* because they were not acting within the scope of their employment flies in the face of the facts pled and obvious reality.  Arscott made remarks while providing feedback on Ms. Canaan's

in-class presentation.  Compl. ¶ 25.  Issaias's comments and retaliation were entirely in the context of—and extremely harmful to—Ms. Canaan's position as his student.  *Id.* ¶¶ 48-58.  Employee conduct is within the scope of liability if: "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer."  *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 778 (Pa. Super. Ct. 2014).  Far more attenuated instances of workers' torts have survived dismissal.  *See, e.g., Colavecchia v. S. Side Area Sch. Dist.*, 2023 WL 3043777, at *3 (W.D. Pa. Apr. 21, 2023) (hostile work environment claim proceeded under *respondeat superior* where harassment of teacher by school safety officer was reported, and no corrective action was taken).

For these reasons, Ms. Canaan's claim for intentional infliction of emotional distress should be sustained against the Motion to Dismiss.

## VI.   Ms. Canaan Should Be Afforded Leave to Amend any Deficiencies in the Complaint

Should the Court find a deficiency in the pleading, leave to amend should be granted. Where a "civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment even if not requested."  *Creamer v. Schwartz*, 2016 WL 2733225, at *5 (W.D. Pa. May 11, 2016).  CMU offers no basis for prejudice in this case.  In the sole case CMU relies on, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008), the Third Circuit remanded the case to the district court to permit further amendment.

## **CONCLUSION**

For the foregoing reasons, Ms. Canaan respectfully requests that the Court deny

Defendant CMU's Motion to Dismiss in its entirety.


Dated: March 5, 2024

Respectfully Submitted,

SIMPSON THACHER & BARTLETT LLP


*/s/ Bryce L. Friedman*
Bryce L. Friedman
Jamie J. Fell
Zachary J. Weiner
Alexander C. Rabinowitz
Albert J. Tagliaferri
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Email: bfriedman@stblaw.com
jamie.fell@stblaw.com
zachary.weiner@stblaw.com
alexander.rabinowitz@stblaw.com
albert.tagliaferri@stblaw.com


THE LAWFARE PROJECT


*/s/ Ziporah Reich*
Ziporah Reich
633 Third Avenue, 21st Floor
New York, NY 10017
Tel: (212) 339-6995
Email: Ziporah@theLawfareProject.org


*Attorneys for Plaintiff Yael Canaan*

26