**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAEL CANAAN, | ) | Civil Action No. 2:23-cv-02107-WSH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARNEGIE MELLON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

Joshua W. B. Richards (Pa. I.D. 204315)*       John Paul Regan (Pa. I.D. 320664)
Patrick F. Nugent (Pa. I.D. 313979)*            Saul Ewing LLP
*Pro Hac Vice*                                  One PPG Place, Suite 3010
Saul Ewing LLP                                  Pittsburgh, PA 15222
1500 Market Street, 38th Floor                  Telephone: (412) 209-2500
Philadelphia, PA 19102                          E-mail: JP.Regan@saul.com
Telephone: (215) 972-7737 / -7134
E-mail: Joshua.Richards@saul.com
E-mail: Patrick.Nugent@saul.com

*Counsel for Defendant Carnegie Mellon University*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT .................................................................................................. 1

        A.      Canaan's Title VI discrimination claim fails because her allegations do not
                show that she was discriminated against because of her race or national
                origin ..................................................................................................... 1

        B.      Canaan fails to state a Title VI hostile educational environment claim
                because she relies on the wrong legal standard and does not allege facts
                showing that the University was deliberately indifferent ....................................... 3

                1.      Under standards established by the United States Supreme Court,
                        Canaan must allege misconduct that is "severe, pervasive, and
                        objectively offensive" and authority drawing on Title VII is
                        inapposite ..................................................................................... 3

                2.      Canaan fails to allege "severe, pervasive, and objectively offensive"
                        discrimination ............................................................................... 6

                3.      Canaan mischaracterizes the University's response to her
                        complaints in arguing deliberate indifference............................................ 7

        C.      Canaan fails to state a Title VI retaliation claim because she
                mischaracterizes the allegations in support of her claim and does not allege
                that the University took a material adverse action................................................. 9

        D.      Canaan's breach of contract claim fails because the Statement of Assurance
                and Policy Against Retaliation are not contractually-enforceable, the Title
                IX Resource Guide applies only to sexual misconduct, and Canaan did not
                invoke the Procedures by failing to file a formal complaint................................ 10

        E.      Canaan's intentional infliction of emotional distress claim fails because the
                conduct she alleges is not "extreme and outrageous" and is not alleged to
                have been motivated by a purpose to serve the University.................................. 13

        F.      The Court should dismiss the Complaint with prejudice because amendment
                would be futile and Canaan has twice declined to amend her Complaint ........... 14

III.    CONCLUSION............................................................................................. 15

## **TABLE OF AUTHORITIES**

FEDERAL CASES

*Anderson v. Wachovia Mortg. Corp.*,
   621 F.3d 261 (3d Cir. 2010)........................................................................................2

*Bardelli v. Allied Servs. Inst. of Rehab. Med.*,
   No. CIV 3:14-0691, 2016 WL 5723724 (M.D. Pa. Sept. 30, 2016)...........................11

*Bridges ex rel. D.B. v. Scranton Sch. Dist.*,
   644 F. App'x 172 (3d Cir. 2016) .................................................................................6

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742 (1998)..............................................................................................11, 12

*Castleberry v. STI Group*,
   863 F.3d 259 (3d Cir. 2017)........................................................................................5

*Chancellor v. Pottsgrove Sch. Dist.*,
   529 F. Supp. 2d 571 (E.D. Pa. 2008) .........................................................................6

*Creamer v. Schwartz*,
   No. 2:16-cv-201, 2016 WL 2733225 (W.D. Pa. May 11, 2016) ...............................14

*David v. Neumann Univ.*,
   187 F. Supp. 3d 554 (E.D. Pa. 2016) .......................................................................11

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999)......................................................................................... passim

*DiSalvio v. Lower Merion High Sch. Dist.*,
   158 F. Supp. 2d 553 (E.D. Pa. 2001) .......................................................................13

*Doe v. Galster*,
   768 F.3d 611 (7th Cir. 2014) ..................................................................................4, 7

*Doe v. Haverford College*,
   No. 23-cv-299, 2023 WL 5017964 (E.D. Pa. Aug. 7 2023) .....................................13

*Doe v. Mercy Catholic Med. Ctr.*,
   850 F.3d 545 (3d Cir. 2017).......................................................................................4

*Doe v. Princeton Univ.*,
   790 F. App'x 379 (3d Cir. 2019) ...............................................................................6

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998).........................................................................3, 9

*Hayut v. State Univ. of New York*,
   352 F.3d 733 (2d Cir. 2003).................................................................7

*Katchur v. Thomas Jefferson Univ.*,
   354 F. Supp. 3d 655 (E.D. Pa. 2019) ...................................................9

*Ke v. Drexel Univ.*,
   NO. 11-6708, 2015 WL 5316492 (E.D. Pa. Sep. 4, 2015) .....................1

*Kim v. Villanova Univ.*,
   2021 WL 4243442 (E.D. Pa. Sept. 16, 2021) .......................................11

*Krebs v. New Kensington-Arnold Sch. Dist.*,
   NO. CV 16-610, 2016 WL 6820402 (W.D. Pa. Nov. 17, 2016) ...........4, 5

*Lansberry v. Altoona Area Sch. Dist.*,
   318 F. Supp. 3d 739 (W.D. Pa. 2018)...................................................6

*McClain v. Citizen's Bank, N.A.*,
   57 F. Supp. 3d 438 (E.D. Pa. 2014) .....................................................14

*Mekuns v. Capella Educ. Co.*,
   No. 15-cv-1542, 2015 WL 7075825 (E.D. Pa. Nov. 13, 2015) ............11

*Meritor Savings Bank v. Vinson*,
   477 U.S. 57 (1986)...............................................................................5

*Miller v. Thomas Jefferson Univ. Hosp.*,
   908 F. Supp. 2d 639 (E.D. Pa. 2012) ...................................................11

*Moeck v. Pleasant Valley Sch. Dist.*,
   179 F. Supp. 3d 442 (M.D. Pa. 2016) ..................................................6

*Price ex rel. O.P. v. Scranton Sch. Dist.*,
   No. CIV. A. 11-095, 2012 WL 37090 (M.D. Pa. Jan. 6 2012)..............4, 5

*Rossley v. Drake Univ.*,
   342 F. Supp. 3d 904 (S.D. Iowa 2018) .................................................11, 12

*Smith v. RB Distribution, Inc.*,
   515 F. Supp. 3d 311 (E.D. Pa. 2021) ...................................................13

*Stilley v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*,
  968 F. Supp. 252 (W.D. Pa. 1996) ........................................................................13

*Stosic v. W. Jefferson Hills Sch. Dist.*,
  No. 21-CV-1072, 2022 WL 2657183 (W.D. Pa. July 8, 2022) *amended and superseded*,
  2022WL 2733817 (W.D. Pa. July 11, 2022) ........................................................4, 5

*T.E. v. Pine Bush Cent. Sch. Dist.*,
  58 F. Supp. 3d 332 (S.D.N.Y. 2014)......................................................................7

*Whitfield v. Notre Dame Middle Sch.*,
  412 F. App'x 517 (3d Cir. 2011) .........................................................................10

*Z.H. ex rel. Berish v. Penn Hills Sch. Dist.*,
  No. 12-cv-1696, 2013 WL 300753 (W.D. Pa. Jan. 25, 2013) ...................................2

**STATE CASES**

*Commonwealth v. Transamerica Insurance Company*,
  341 A.2d 74 (Pa. 1975) .......................................................................................12

*Hoy v. Angelone*,
  691 A.2d 476 (Pa. Super. Ct. 1997), *as modified*, 691 A.2d 485 (Pa. Super. Ct. 1997)..........14

**FEDERAL STATUTES AND RULES**

42 U.S.C. § 1981 ..................................................................................................5

Fed R. Civ. P. 12 ..................................................................................................2

## I.   <u>INTRODUCTION</u>[1]

Like her Complaint, Canaan's opposition to the University's Motion to Dismiss elevates adjectives over substance. She lambasts the University for raising "ludicrous" arguments that test the Complaint's actual factual allegations against well-established legal standards. (Doc. 29 at 11.) She accuses the University of "shamefully" referencing principles of "freedom of expression" – a "theory" she denounces as "preposterous and offensive," even though the University did not actually assert such a defense. (*Id.* at 9.) And again conflating what is actionable with what is offensive, she weaponizes the University's condemnation of discrimination and antisemitism in all its forms as an admission of liability. (*Id.* at 8). On a motion to dismiss, the Court evaluates Canaan's allegations under the governing legal standards in asking the basic question: do Canaan's allegations, as pleaded, and if accepted as true as the Court is required to do at this stage, satisfy the required elements of each claim she asserts against the University? The answer is that they do not, and so the Court should grant the University's motion to dismiss the Complaint in its entirety.

## II.   <u>ARGUMENT</u>

### A.   **Canaan's Title VI discrimination claim fails because her allegations do not show that she was discriminated against because of her race or national origin.**

Canaan could have attempted to state a discrimination claim through direct evidence, but she did not. As Canaan acknowledges, a discrimination claim that relies on direct evidence typically must "relate to [a] decisional process in order to establish that the adverse action was made because of the plaintiff's [protected status]." *Ke v. Drexel Univ.*, No. 11–6708, 2015 WL 5316492, at *16 (E.D. Pa. Sep. 4, 2015) *aff'd*, 645 F. App'x 161 (3d Cir 2016); Doc. 29 at 15. The

---

[1] The University uses in this Reply the same acronyms and abbreviations that it used in its Memorandum supporting the Moton to Dismiss (Doc. 20).

Complaint contains no allegations pertaining to a "decisional process," and Canaan does not argue otherwise in her opposition.

That leaves a direct discrimination claim founded on circumstantial evidence. And whether through the identification of comparators – similarly situated, non-Jewish students – or other evidence, Canaan must allege facts, which, if true, would plausibly establish an inference of discrimination. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010). Canaan has not identified any comparator, so she must instead allege facts founded on other circumstantial evidence of discrimination. Canaan alleges that Issaias, one of her studio professors, met with her less frequently than he met with other students, assigned her a lower grade than another student on a group project, and excluded her work from a booklet of the studio's projects. (Compl. ¶¶ 54-57.) But she does not allege with whom Issaias met more frequently or if any of those students were Jewish. What if Issaias met with ten students more frequently but three of them were Jewish; would an inference of discrimination be warranted? Similar unknowns abound with the other allegations of differential treatment, which is why courts require more under these circumstances.

All Canaan alleges is that 5.5% of the University's undergraduate students are Jewish.[2] But this allegation does not permit the inference she seeks. Suppose the undergraduate student population was 51% Jewish. Would that defeat her claim? Of course not. The converse is also true: the fact that a small percentage of students are alleged to be Jewish does not circumstantially prove her claim either. The student body composition says nothing about whether any alleged instance

---

[2] Canaan's boilerplate averment that she "was treated differently from her similarly situated non-Jewish, non-Israeli classmates" is a conclusion that the Court does not credit in evaluating a motion under Rule 12(b)(6). Compl., ¶¶ 13, 102; *Z.H. ex rel. Berish v. Penn Hills Sch. Dist.*, No. 12-cv-1696, 2013 WL 300753, at *6 (W.D. Pa. Jan. 25, 2013).

of adverse action is attributable to racial discrimination. The Complaint's well-pleaded allegations do not establish this critical link, so Canaan's direct discrimination claim must be dismissed.

> **B.   Canaan fails to state a Title VI hostile educational environment claim because she relies on the wrong legal standard and does not allege facts showing that the University was deliberately indifferent.**

Canaan sets forth the wrong standard ("severe *or* pervasive") for a hostile educational environment claim and wrongly argues that the actual standard ("severe, pervasive, and objectively offensive") does not apply to faculty-on-student discrimination claims. *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Under the proper standard articulated in the Supreme Court's *Davis* decision and subsequently explained by then-Judge Alito, the Complaint fails to allege any alleged harassment that meets the appropriate standard of severity to be actionable.

> **1.   Under standards established by the United States Supreme Court, Canaan must allege misconduct that is "severe, pervasive, and objectively offensive" and authority drawing on Title VII is inapposite.**

To understand why Canaan's argument that a less-exacting "severe or pervasive" standard applies to her allegations of a hostile environment is wrong, it is critical to trace the source of rules informing Title VII's prohibition on race-based discrimination and contrast them with Title VI. "When Congress attaches conditions to the award of federal funds under its spending power, U.S. Const., Art. I, § 8, cl. 1, as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). "Our central concern in that regard is with ensuring that the receiving entity of federal funds [has] notice that it will be liable for a monetary award." *Id.* (quotations omitted).

That concern is not present when Congress enacts legislation under non-spending power. While recipients of federal funding could choose not to accept the funding and conditions attached

to it, statutes enacted under other constitutional authority do not operate that way; they offer no such choice. That is why Title VII cases do not inform the Court's Title VI analysis; Title VII was not enacted under Congress's spending power. *See Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 553 (3d Cir. 2017) ("Title VII is rooted in the Commerce Clause and § 5 of the Fourteenth Amendment, not the Spending Clause."). And that is also why the less exacting "severe or pervasive" standard cannot be reconciled with the case law explaining that the operative legal standard sets a very high bar that is "rare[ly]" satisfied. *See Doe v. Galster*, 768 F.3d 611, 618-19 (7th Cir. 2014); Doc. 20 at 19-20 (collecting cases). Canaan does not address this conflict.

In advocating for a "severe or pervasive" standard for alleging discrimination, Canaan relies on non-precedential case law rooted in inapplicable Title VII jurisprudence. (Doc. 29 at 19-20 (citing *Stosic v. W. Jefferson Hills Sch. Dist.*, No. 21-CV-1072, 2022 WL 2657183 (W.D. Pa. July 8, 2022) *amended and superseded*, 2022 WL 2733817 (W.D. Pa. July 11, 2022); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (noting "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case").) *Stosic* relies on non-binding district court decisions for the same principle. *See Stosic*, 2022 WL 2733817 at *5 (citing *Krebs v. New Kensington-Arnold Sch. Dist.*, No. CV 16-610, 2016 WL 6820402, at *3 (W.D. Pa. Nov. 17, 2016) and *Price ex rel. O.P. v. Scranton Sch. Dist.*, No. CIV. A. 11-095, 2012 WL 37090, at *5 (M.D. Pa. Jan. 6 2012)).

These cases contradict United States Supreme Court precedent. The authority upon which *Krebs* and *Price* rely, *Saxe v. State College Area School District*, discussed the concept of "severe or pervasive" harassment as "originat[ing] in a series of Title VII cases involving sexual harassment in the workplace." 240 F.3d 200, 205 (3d Cir. 2001). After observing that the "severe

4

or pervasive" standard arose in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), another Title VII hostile work environment case that pre-dates *Davis*, then-Judge Alito clarified that the "Supreme Court has extended an analogous cause of action to students under Title IX." *Saxe*, 240 F.3d at 205. Importantly, then-Judge Alito noted that "[o]riginally, such [Title IX] claims were limited to cases involving harassment of a student by a teacher or other agent of the school." *Id*. (citation omitted). "However, in 1999, in [*Davis*], the Court held that Title IX *also* permits a plaintiff to recover damages from a federally funded educational institution for certain cases of student-on-student sexual harassment." *Id*. (emphasis added). In discussing this evolution, then Judge-Alito explained that, "[t]o recover in such a case, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." *Id*. at 205-06 (citing *Davis* 526 U.S. at 651). Accordingly, *Saxe* recognized that the appropriate standard to apply in all Title IX cases, and subsequently to Title VI cases, is whether alleged discrimination was "severe, pervasive, and objectively offensive," *not* "severe or pervasive," as Canaan argues. *Id*. In short, *Stosic*, *Price*, and *Krebs* simply got it wrong.[3]

It makes no difference that Canaan was allegedly subject to discrimination by faculty and not by another student. That distinction does not relieve Canaan from supporting her claims with well-pleaded facts showing that she was subject to "severe, pervasive, *and* objectively offensive" misconduct. *Davis*, 526 U.S. at 650) (emphasis added). The "severe, pervasive, and objectively offensive" standard applies to faculty-on-student discrimination, just as it does to student-on-

---

[3] Canaan's reliance on *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017) is similarly misplaced because *Castleberry* involved a hostile work environment claim under 42 U.S.C. § 1981, and thus it does not mention *Davis*, 526 U.S. 629.

student discrimination. *See Saxe*, 240 F.3d at 205 (explaining that Title IX applies to faculty-on-student discrimination inasmuch as the Supreme Court held in *Davis* that Title IX "*also* … permits a plaintiff to recover … for certain cases of student-on-student sexual harassment") (citing *Davis*, 526 U.S. at 651) (emphasis added). The Court need only consult the many cases applying *Davis* to faculty-on-student discrimination in this Circuit. *See, e.g.*, *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016) (Title VI); *Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 445-46 (M.D. Pa. 2016) (Title IX); *Chancellor v. Pottsgrove Sch. Dist.*, 529 F. Supp. 2d 571, 573 (E.D. Pa. 2008) (Title IX).

## 2. Canaan fails to allege "severe, pervasive, and objectively offensive" discrimination.

The handful of events that Canaan characterizes as antisemitic fall far short of establishing that she suffered "severe, pervasive, and objectively offensive" discrimination or even "severe or pervasive" discrimination. And, because a motion to dismiss tests the sufficiency of Canaan's well-pleaded allegations, the Court can and should determine as a matter of law that Canaan's averments do not meet this threshold. *See* Doc. 20 at IV.B.1; *Doe v. Princeton Univ.*, 790 F. App'x 379, 384-85 (3d Cir. 2019) (affirming grant of motion to dismiss); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 752-53 (W.D. Pa. 2018) (granting motion to dismiss).

The non-precedential cases Canaan cites do not salvage her claims. In *I.G. by & through Grunspan v. Jefferson County School District*, the plaintiff alleged conduct categorically more severe, pervasive, and objectively offensive than the discrete and few separate events described by Canaan, including defacement of the plaintiff's father's car and school property with swastikas, derogatory jokes and remarks about the plaintiff's Jewish heritage, and that "[f]rom September through the remainder of 2016, students at the School 'were giving Nazi salutes and verbally stating 'Heil Hitler' as they walked through the halls during class breaks.'" *See* 452 F. Supp. 3d

989, 995 (D. Colo. 2020) (citation omitted); *see also T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 339-50 (S.D.N.Y. 2014) (describing alleged antisemitic conduct occurring over the course of years, including physical and verbal threats, school property vandalized with swastikas, and constant harassment such as the use of derogatory terms, derogatory name calling, and derogatory jokes about the plaintiff's Jewish heritage); *Hayut v. State Univ. of New York*, 352 F.3d 733, 737-42 (2d Cir. 2003) (describing alleged sexual harassment occurring at least once per class period throughout a semester, even in the plaintiff's absence, wherein a faculty member referred to the plaintiff as "Monica," due to her resemblance to Monica Lewinsky, and made lewd comments in reference to plaintiff and the sex scandal involving President Clinton).

In contrast, Canaan alleges both fewer and markedly less severe events: (1) a time-barred incident involving Arscott's alleged failure to provide her an extension in October 2018 (Compl. ¶ 15); (2) Arscott's remarks during Canaan's final studio review in May 2022 (Compl. ¶ 25); and (3) Arscott's reference to a journal in an e-mail sent to Canaan in November 2022 (which contained only a link to the journal, not to particular content) (Compl. ¶ 38). Where Canaan alleges three considerably more minor events spread over four years, the plaintiffs in *I.G.*, *Pine Bush*, and *Hayut* alleged ongoing regular harassment over months or years. It cannot both be correct that Canaan's allegations here are sufficiently "severe, pervasive, and objectively offensive," **and** that meeting that standard is "rare" as courts have explained. *See* Doc. 20 at 19-20; *Galster*, 768 F.3d at 618. Nor do any of the events Canaan alleges demonstrate the requisite severity, even under the inapplicable disjunctive standard. Canaan's allegations do not meet *either* of these standards.

### 3. Canaan mischaracterizes the University's response to her complaints in arguing deliberate indifference.

Finally, Canaan argues that the University was deliberately indifferent to her allegations of antisemitic misconduct because it "fail[ed] to take *any* concrete action . . . ." (Doc. 29 at 21). The

first problem with this construction is that Canaan again seeks to substitute her preferred standard for the governing one; "concrete action" is not the yardstick for evaluating whether a response is "clearly unreasonable." *Davis*, 526 U.S. at 649 (federal funding "recipient[s] must merely respond to known … harassment in a manner that is not clearly unreasonable. This is not a mere 'reasonableness' standard … there is no reason why courts, on a motion to dismiss … could not identify a response as not 'clearly unreasonable' as a matter of law").

The second problem is that Canaan's characterization of her own allegations does not hold:

- On May 19, 2021, after Canaan e-mailed the University about an alleged antisemitic incident, the University hosted a Zoom meeting "for students to express their feelings . . . ." Canaan alleges that "no action was taken," but, notably, Canaan does not allege that she *requested* that any action be taken. (Compl. ¶ 17.)

- After Canaan recounted Arscott's alleged May 5, 2022 in-class comments to Casalegno, Cochran Hameen, and Heading-Grant, Cochran Hameen spoke to Canaan over the telephone, Casalegno contacted Canaan on May 14, 2022, Heading-Grant met with Canaan on May 18, 2022, Casalegno met with Canaan on June 13, 2022, Casalegno spoke with Arscott about the incident, Casalegno updated Canaan about her conversations with Arscott on July 28, 2022 and August 18, 2022, and Heading-Grant and Arscott met with Canaan on November 2, 2022, to discuss Canaan's allegations. (Compl. ¶¶ 22, 29, 31-37.)

- After Canaan communicated Arscott's alleged "continued harassment" to Casalegno and Heading-Grant, Heading-Grant responded and referred Canaan to CMU's Office for Institutional Equality and Title IX, Rosemeyer met with Canaan about her allegations on November 21, 2022, Rosemeyer responded to Canaan's concerns about Issaias on December 27, 2022, Casalegno responded to Canaan's concerns on February 2, 2023, and Rosemeyer contacted her on March 30, 2023. (Compl. ¶¶ 38, 42-44, 64-68.) Notably, when Canaan complained about her grade in Issaias' class, Rosemeyer referred her to grade appeals, a reasonable response to Canaan's request.

- Contrary to the statements made in her Brief, as alleged, Canaan did not approach Rosemeyer, Heading-Grant, and Casalegno "for a solution to

8

Arscott's random attendance in Bista's studio," thus the University had no opportunity to respond to her concerns. *See* Doc. 29 at 23.[4]

Canaan does more than ask this Court to "[read] the Complaint the light most favorable to [her]," *see* Doc. 29 at 23; she asks this Court to substitute her *post hoc* characterizations for the facts she actually alleges. Even at the pleading stage, Canaan's Complaint "must contain sufficient factual allegations to raise a reasonable expectation that discovery will reveal the ... elements" of her claims. *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019). Taking the facts alleged as true, the University's response to Canaan's complaints was not "clearly unreasonable" as a matter of law. As a result, Canaan's hostile environment claim must be dismissed for this reason, too.

**C.    Canaan fails to state a Title VI retaliation claim because she mischaracterizes the allegations in support of her claim and does not allege that the University took a material adverse action.**

Canaan's argument that the University may be found liable for Issaias' and Bista's alleged retaliation fails because it misstates the law and mischaracterizes the Complaint's actual allegations. In *Gebser* (the case upon which Canaan primarily relies), the Supreme Court "expressly rejected the use of agency principles in the Title IX context, noting the textual differences between Title IX and Title VII." *Davis*, 526 U.S. at 643 (citing *Gebser*, 524 U.S. at 283). It observed "[i]f a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment." *Davis*, 526 U.S. at 644 (internal brackets and quotations omitted). Continuing, "[t]hat is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or

---

[4] Similarly, Canaan alleges that Rosemeyer told her "antisemitism training was not available," *see* Compl. ¶ 68, but she does not allege that the University was not developing antisemitism training in 2022-23 because it was, and Canaan was invited to participate in developing that training.

vulnerable to it." *Id*. at 645 (internal brackets and quotations omitted). Accordingly, Canaan must allege that the federally-funded entity itself subjected Canaan to an adverse action to establish a claim for retaliation. She did not do so. *See* Doc. 20 at IV.C; *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011).

The Complaint thinly alleges only that Issaias and Bista, two of her studio instructors, retaliated against Canaan – not that Arscott retaliated against her. (Compl. ¶¶ 48-63, 131-36.) The Complaint alleges that Canaan complained to Rosemeyer about Issaias on December 20, 2022, but only *after* his course had concluded; the Complaint does not allege that Canaan ever reported to administrators any retaliation by Bista. (Compl. ¶ 64.) The timing defeats Canaan's retaliation claim because it would be impossible for Rosemeyer to "cause [Canaan] to undergo harassment or make [her] vulnerable to it" when the harassment had already concluded by the time Canaan reported it to Rosemeyer. *Davis*, 526 U.S. at 645.

Canaan also alleges that she met with Rosemeyer on November 21, 2022, while Issaias' class was in progress, but she alleges that Arscott (not Issaias) was the subject of that meeting. (Compl. ¶¶ 44-46.) Canaan likewise argues that she made Heading-Grant "aware of retaliation" (Doc. 29 at 26), but that is not true. Canaan's report to Heading-Grant focused solely on Arscott and the blog. (Compl. ¶¶ 41-43.) Even setting all that aside, the facts alleged show the University responded in a manner that was not "clearly unreasonable." (Doc. 20 at IV.B.2.)

**D.    Canaan's breach of contract claim fails because the Statement of Assurance and Policy Against Retaliation are not contractually-enforceable, the Title IX Resource Guide applies only to sexual misconduct, and Canaan did not invoke the Procedures by failing to file a formal complaint.**

The University did not fail to address the Statement of Assurance and Policy Against Retaliation, as Canaan incorrectly argues. (*See* Doc. 20 at 25, n.10.) Instead, and as the University explained, those documents do not create contractual obligations. (*Id.*) They contain brief, general

statements of anti-discriminatory and anti-retaliatory policy that do not set forth specific, identifiable promises that are capable of being measured and enforced in contract. (*Id.*)[5]

As for the Title IX Resource Guide, Canaan points to a single reference to "other types of discrimination" (Doc. 29 at 29) when the Guide otherwise makes absolutely clear that it applies only to sexual misconduct (Doc. 20 at 26). That makes sense because Title IX prohibits discrimination on the basis of sex. Canaan would have the Court believe that the Title IX Resource Guide is the only policy that protects students from discrimination, "leaving CMU free to discriminate against Jewish people" (Doc. 29 at 28), but of course that is both disingenuous and untrue. After all, Canaan is pursuing a claim under the Procedures, which apply to a much broader range of discriminatory conduct.

Canaan, however, did not invoke the Procedures because she decided not to file a formal complaint; the Complaint admits as much. (Compl. ¶¶ 46, 148.) That defeats any claim for breach of contract based on the Procedures. *See Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 910 n.1 (S.D. Iowa 2018) (complaint must invoke sexual misconduct policy for policy's procedures to apply), *aff'd*, 979 F.3d 1184 (8th Cir. 2020); *cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,

---

[5] *See Mekuns v. Capella Educ. Co.*, No. 15-cv-1542, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015) ("[A]llegations must relate to a specific and identifiable promise that the school failed to honor.") (quoting *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011)), *aff'd*, 655 F. App'x 149 (3d Cir. 2016); *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 560 (E.D. Pa. 2016) ("general, aspirational" anti-discrimination policies do not create "any sort of affirmative, enforceable duty on the part of the University"); *Kim v. Villanova Univ.*, No. CV 21-1879, 2021 WL 4243442, at *4 (E.D. Pa. Sept. 16, 2021) (anti-discrimination policies "are not definite enough to be enforced" in contract when they do not guarantee "a right to specific types of investigation, support, or sanctions") (quotations omitted); *Bardelli v. Allied Servs. Inst. of Rehab. Med.*, No. CIV 3:14-0691, 2016 WL 5723724, at *13 (M.D. Pa. Sept. 30, 2016) (explaining that a "school's anti-discrimination policy alone is insufficient to constitute an enforceable contract per se between the school and [student] since, like all other contracts, the terms of the agreement must be sufficiently definite to be enforced") (citation omitted); *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012) (a complaint "must point to specific undertakings in the [alleged contract] that were not provided"), *aff'd*, 565 F. App'x 88 (3d Cir. 2014).

765 (1998) (plaintiff's failure to use a complaint procedure a bar to liability). Now, Canaan argues that her reports could constitute a "formal complaint" because she argues, in a concerning departure from candor, that the Procedures do not define that term. But that too is wrong; the Procedures define a "formal complaint" as "a written or typed document submitted under section III of the Procedures for Statement of Assurance Violations, which requests that the university initiate a complaint under the Statement of Assurance." (Doc. 20-3 at 12.) The Complaint does not allege that Canaan followed this procedure for filing a formal complaint.

Relying on *Commonwealth v. Transamerica Insurance Company*, 341 A.2d 74 (Pa. 1975), Canaan ultimately argues that the University was required to follow the Procedures, even though she failed to invoke them, because the University caused her to forego filing a formal complaint. (Doc. 29 at 30.) *Transamerica* reversed summary judgment for an insurer when the insurer conveyed to its insured that a policy's time limitation provision for filing suit would not be enforced, which caused the insured not to file suit within the limitation period. *Id.* at 77-78. The insured's reliance on the insurer's communication was dispositive. *See id.* No reliance is alleged here. The Complaint does not allege that the University led Canaan to believe it would proceed under the Procedures without her needing to file a formal complaint. To the contrary, the University has a formal complaint process *precisely because* it wants to understand when a community member wishes to invoke a formal process, and when they merely wish to report and hear about resources. *Transamerica* does not save Canaan's breach of contract claim because the University did not promise performance while assuring Canaan she need not fulfill her obligations under the Procedures. *See also Rossley*, 342 F. Supp. 3d at 910 n.1; *cf. Ellerth*, 524 U.S. at 765.

**E.     Canaan's intentional infliction of emotional distress claim fails because the conduct she alleges is not "extreme and outrageous" and is not alleged to have been motivated by a purpose to serve the University.**

The conduct alleged in the cases Canaan cites to support her IIED claim bears no resemblance to the conduct Canaan alleges here. *See DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 555-56 (E.D. Pa. 2001) (assistant football coach rubbed student's thigh, patted student's buttocks, brushed his hand against student's breast, and followed student into ladies restroom); *Stilley v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, 968 F. Supp. 252, 257, 260 (W.D. Pa. 1996) (professor made sexual comments and touched student inappropriately); *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 320 (E.D. Pa. 2021) (co-worker made a number of lewd remarks to plaintiff about her genitals and his arousal, attempted to "grab her vagina," engaged in "physical groping," and "offered her money in exchange for sexual favors").[6]

Canaan's attempts to distinguish the University's authorities are similarly unavailing. Canaan aims at only one of the authorities cited in the University's brief – *Doe v. Haverford College*, No. 23-cv-299, 2023 WL 5017964 (E.D. Pa. Aug. 7 2023) – and argues that the key difference between her allegations and the allegations in *Haverford* is that she alleges faculty engaged in the conduct underlying her IIED claim, whereas the conduct of the plaintiff-student's teammates (*i.e.*, fellow students) was at issue in *Haverford*. There are two problems with that, though: *first*, showing her allegations are more serious than a case in which the IIED claim was held to be "frivolous" is a low bar. *Haverford*, 2023 WL 5017964, at *9. *Second*, her characterization, again, is not actually true; the *Haverford* plaintiff's IIED claim also rested on the alleged conduct of his coach. *See id.* at *9. At bottom, though, it does not actually matter because

---

[6] Canaan cannot shortcut the legal standards for pleading "extreme and outrageous" conduct for an IIED claim by inventing a false equivalency between the University's brief characterizing some of her allegations as "shock[ing]" and "not trivial" and the legal standards. (Doc. 29 at 30.)

it is the nature of the alleged conduct, not the identity of the perpetrator, that matters for purposes of establishing whether conduct is "extreme and outrageous." IIED claims are reserved for the *most* severe cases, and no characterization of Canaan's allegations places them in that category. *See Hoy v. Angelone*, 691 A.2d 476, 482, *as modified,* 691 A.2d 485 (Pa. Super. Ct. 1997), and *aff'd,* 720 A.2d 745 (Pa. 1998).

The analysis need not proceed further, but even if the conduct Canaan alleges were "extreme and outrageous," her IIED claim would still fail because she cannot establish *respondeat superior* liability as to the University. Canaan offers no substantive response to the dispositive defect in her Complaint: it does not (nor could it) allege facts showing that the conduct at issue was motivated "by a purpose to serve the employer" (i.e., the University), rather than by personal animus, which is a necessary component of pleading conduct within the scope of employment. *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 441 (E.D. Pa. 2014) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)); *see also* Doc. 20 at 29-30. In sum, Canaan's allegations are a poor fit for an IIED claim, and her claim must be dismissed.

### F.    The Court should dismiss the Complaint with prejudice because amendment would be futile and Canaan has twice declined to amend her Complaint.

Canaan argues that the court "***must*** permit a curative amendment" (Doc. 29 at 32) (emphasis added), but she omits the critical qualifier in the authority she cites: "unless such an amendment would be inequitable or futile." *Creamer v. Schwartz*, No. 2:16-cv-201, 2016 WL 2733225, at *5 (W.D. Pa. May 11, 2016). Here, it would be both. Canaan argues that she must be permitted to amend because the University "offers no basis for prejudice" (Doc. 29 at 31), but the standard is disjunctive. Canaan offers no rebuttal to the University's argument that amendment would be futile if the University's arguments on the law are right. (Doc. 20 at 30-31.)

She also offers no argument for why allowing her to amend would be equitable. Canaan has now had two opportunities to amend but has declined to do so: *first*, when the parties conferred pursuant to this Court's practices and procedures in advance of the University's filing this motion; and *second*, when choosing whether to amend or oppose the University's motion after reviewing it. During the parties' meet-and-confer, the University's counsel presented to Canaan's counsel the specific grounds on which the University would seek dismissal, as well as the leading supporting authorities.

The University very much doubts that the Court's practices require a meet-and-confer as a purely academic exercise. It likewise doubts they are intended to be treated in that way by parties; if Canaan believed additional facts could bolster her claims, she could have amended before the University's motion, and certainly after reviewing the University's motion once it was filed. But she did not, and she has now required the expense of significant resources by the University briefing this motion and by the Court in deciding it. A futile amendment would require another round of briefing, consuming University and Court resources in a process that was twice available to Canaan before this point.

Canaan is represented in this matter by no fewer than seven attorneys, six of whom hail from one of the most prestigious law firms in the nation; she does not lack for world-class legal advice. She has twice chosen not to amend, despite being twice apprised of the Complaint's defects. Her election not to do so underscores that amendment would be futile.

## III.   <u>CONCLUSION</u>

The Court should dismiss Canaan's Complaint with prejudice and in its entirety.

Respectfully submitted,

Dated: March 12, 2024

*/s/ John Paul Regan*
John Paul Regan (Pa. I.D. 320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Telephone: (412) 209-2500
E-mail: JP.Regan@saul.com

Joshua W. B. Richards (Pa. I.D. 204315*)
Patrick F. Nugent (Pa. I.D. 313979*)
*Pro Hac Vice*
Saul Ewing LLP
1500 Market Street, 30th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7737 / (215) 972-7134
E-mail: Joshua.Richards@saul.com
E-mail: Patrick.Nugent@saul.com

*Counsel for Defendant Carnegie Mellon University*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Courts for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 12, 2024                    */s/ John Paul Regan* _____