IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAEL CANAAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:23-cv-02107-WSH |
| v. ) | |
| ) | |
| CARNEGIE MELLON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff Yael Canaan respectfully submits this memorandum of law in support of her motion for leave to file an amended complaint to add additional factual allegations and a claim for violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. C.S. §§ 5703, 5725 (Count VI), and to re-plead her claim of intentional infliction of emotional distress ("IIED") (Count V), based on new information Plaintiff has obtained during discovery. A copy of the proposed amended complaint is attached as Exhibit A. A redline comparing the original complaint to the amended complaint is attached as Exhibit B.

**PRELIMINARY STATEMENT**

Canaan seeks redress for shocking acts of antisemitism she suffered as a student at Defendant Carnegie Mellon University ("CMU"), and remediation of its hostile campus environment that discriminates unlawfully against Jewish students. Discovery in this lawsuit has now revealed that CMU's Chief Diversity Officer—ostensibly a sympathetic ear tasked with creating a safe and inclusive environment—surreptitiously recorded a private and sensitive meeting between Canaan and Professor Arscott, who had told Canaan that her final project in studio class should have explored "what Jews have done to make themselves such a hated

group," among other things. This astonishing and hostile breach of trust (which is a felony in Pennsylvania) was committed by the Chief Diversity Officer in her role as a "facilitator" of meetings related to bias and discrimination. Her purpose in recording the meeting without Canaan's consent was to serve CMU by collecting "evidence" regarding purported violations of federal discrimination laws that CMU could leverage against Canaan in the event of subsequent dispute—which CMU has now indeed attempted to do in this lawsuit. When the Chief Diversity Officer was asked under oath if she had a pattern or practice of recording student meetings conducted in the scope of her duties without consent, she availed herself of her Fifth Amendment rights.

Discovery has also revealed that the Chief Diversity Officer's criminal recording of Canaan was committed against a backdrop of numerous antisemitic incidents during the same timeframe at CMU, all of which CMU was aware of, but for which there is no record of any disciplinary or remedial response. These incidents included another of Canaan's professors asking his class to admire the architecture of the Auschwitz concentration camp, a swastika found in a library book, a Jewish instructor being greeted with "Heil Hitler" by another professor in front of students, a professor telling his class that "antisemitism has not existed in America since WW2" shortly after the Tree of Life Synagogue massacre, students reporting being too scared to wear Star of David necklaces on campus, a student being forced to leave CMU's Qatar campus and relinquish a scholarship due to antisemitic threats and harassment by classmates, a faculty member being berated and ridiculed by the Assistant Dean for DEI (with the Chief Diversity Officer's blessing) after the faculty member asked for the inclusion of Jewish holidays in a DEI initiative, and an "ice breaker" activity provided to resident assistants for use with incoming students employing an antisemitic trope—"I'm Jewish but I'm not good with money."

In the same timeframe this flagrant and unchecked antisemitism was happening to Canaan and others at CMU, and despite the recent terrorist murder of eleven Jews at the Tree of Life Synagogue in Pittsburgh, CMU administrators were canceling and postponing training and programming on campus regarding antisemitism (*i.e.*, the hatred of Jewish people), claiming such events were "Zionist dog whistle[s]" that would "alienate" and "marginalize" Palestinian and Muslim students. And when Canaan finally met with CMU's Title IX Coordinator after being given the runaround by the Chief Diversity Officer and the Dean of Students *for six months*, the Title IX Coordinator pressured Canaan not to file a formal complaint, telling her that it was not going to work out for Canaan, that it was going to take forever, and that at the end of the day, everyone would resent Canaan for involving them, including her friends and classmates. As a result, Canaan left the meeting convinced by the Title IX Coordinator that a formal complaint was the "worst thing" she could do.

Once CMU administrators convinced Canaan not to file a formal complaint, CMU disclaimed any responsibility to remedy the antisemitism and retaliation she had reported, to discipline Professor Arscott for her antisemitic and hostile remarks to Canaan, or to stop Canaan's other professors from excluding Canaan—not Professor Arscott—from Canaan's studio classes and related events as the only "strategy" to address Canaan's extreme discomfort around Arscott.

In view of these additional facts adduced during discovery, Plaintiff now seeks leave to conform the pleadings to the evidence and file the annexed amended complaint adding claims and allegations regarding Defendant's intentional and/or reckless, extreme and outrageous conduct (including criminal conduct) which caused Canaan physical and emotional injuries, including chronic and debilitating migraines, and severe emotional distress and disturbance,

3

depression, isolationism, and anxiety. Specifically, Plaintiff seeks leave to add a claim alleging violations of WESCA § 5703, through the civil right of action provided in WESCA § 5725 and to re-plead her IIED claim. *See Danieli Corp. v. SMS Grp., Inc.*, 2022 WL 5247424, at *2 (W.D. Pa. Aug. 18, 2022) ("[C]ourts within this district grant leave to file amended pleadings to conform to the evidence revealed during discovery[.]").

Rule 15(a)(2) provides a liberal standard for motions to amend and therefore courts "should freely give leave when justice so requires." *See Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019). Here, justice requires granting Plaintiff leave to amend because (i) Plaintiff has not demonstrated undue delay, bad faith or a dilatory motive, as Plaintiff was only made aware of the information supporting her amendments during discovery; (ii) Defendant will not be prejudiced by Plaintiff's proposed amendments because they will not require additional or extended discovery; and (iii) Plaintiff's amendments are not futile.

## RELEVANT PROCEDURAL BACKGROUND

On December 13, 2023, Canaan, a former CMU student, filed the instant lawsuit against CMU alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and claims for breach of contract and IIED. *See* Compl. (Dkt. No. 1). CMU then moved to dismiss Canaan's complaint. *See* Dkt. No. 19. On December 17, 2024, the Court denied CMU's motion to dismiss on all counts, with the exception of Plaintiff's IIED claim, which was dismissed without prejudice because the Court did not "find an averment in Ms. Canaan's Complaint that would allow it to infer that the alleged extreme and outrageous conduct she endured— predominantly by Professor Arscott—was 'actuated, at least in part, by a purpose to serve'" CMU. *See* Mem. Op. (Dkt. No. 40) at 43. The Court entered an initial case management order providing March 1, 2025 as the deadline for motions to amend pleadings. *See* Dkt. No. 53.

The parties subsequently began discovery, during which Plaintiff confirmed the rife antisemitism on CMU's campus. On September 19, 2025, during her deposition, Plaintiff learned of CMU's illegal recording of her private meeting on November 2, 2022 with CMU's Chief Diversity Officer, Wanda Heading-Grant and Professor Arscott. Without warning, an audio-recording of this private meeting, in which Plaintiff had endeavored to confront Professor Arscott with how her antisemitic conduct had severely impacted Plaintiff, was marked as an exhibit and played on the record. Plaintiff was shocked to learn of the recording, which she had not consented to. Plaintiff subsequently conducted additional discovery regarding CMU's illegal recording, in addition to ongoing discovery regarding the allegations her of original complaint. As a result, Plaintiff determined that CMU's conduct states an additional claim for violations of the WESCA and grounds to re-plead her IIED claim. Plaintiff has not previously sought to amend her complaint.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave, which leave should be "freely given" when justice so requires. "[R]equests to amend generally should be 'freely given' in the absence of (1) undue delay, bad faith or dilatory motives, (2) futility, or (3) prejudice to the other party[.]" *Geness v. Cox*, 902 F.3d 344, 359-60 (3d Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, the Third Circuit has articulated that "leave to amend *must* generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (emphasis added). The "burden is generally on the non-moving party to demonstrate why leave to amend should not be granted." *Harrison v. Health Network Lab'ys Ltd. P'ship*, 2017 WL 952286, at *2 (E.D. Pa. Mar. 10, 2017). To amend a complaint after a scheduling order's

5

deadline, Rule 16(b)(4) requires "good cause" which "focuses on the diligence of the party[.]" *White v. Bush*, 2021 WL 2255981, at *5 (E.D. Pa. June 3, 2021).

### II. Plaintiff Has Proposed Amendments Based on Her Discovery of New Information; and Has Not Engaged in Undue Delay, Bad Faith or Dilatory Motive

Plaintiff's proposed amendments are based on facts recently uncovered in discovery. Plaintiff first learned the extent of CMU's outrageous and criminal conduct in September 2025, and has diligently engaged in additional discovery since then to investigate any potential claims. Courts routinely find that there is no undue delay or dilatory motive where a motion to amend is "premised on newly discovered evidence." *See, e.g.*, *Elliott v. Williams*, 2021 WL 12326773, at *1 (E.D. Pa. Nov. 30, 2021); *Albright v. Concurrent Techs. Corp.*, 2023 WL 5548810, at *3 (W.D. Pa. Aug. 29, 2023) (granting motion to amend based on "facts adduced during discovery" and collecting cases). There is also "good cause" to amend under Rule 16(b)(4) when new facts are adduced during discovery. *White*, 2021 WL 2255981, at *5. Because Plaintiff has diligently pursued the amendments following her recent discovery and investigation of the facts upon which they are based, there is no equitable reason to deny her motion for undue delay, bad faith, or dilatory motive.

### III. Plaintiff's Proposed Amendments Will Not Prejudice Defendant

The filing of an amended complaint at this time will not unduly prejudice CMU. Establishing undue prejudice to avoid amendment requires an opposing party to "demonstrate that its ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990). Prejudice is not found where Plaintiff's "proposed amended complaint is based upon facts and circumstances which do not differ significantly from those underlying the [] original allegations," and "[t]he evidence required to meet these new allegations is substantially similar to that which was originally required." *Id.*

6

Here, there is no prejudice to CMU because the claims arise out of the same conduct alleged in the initial complaint. The amended complaint primarily conforms to the evidence adduced during discovery. The discovery period has provided the parties with an opportunity to address the factual basis for the amended allegations and claims, and Plaintiff does not anticipate that additional discovery will be needed to address the new claims.

**IV.     Plaintiff's Two New Causes Of Action Are Not "Futile"**

Courts in the Third Circuit "place a heavy burden on opponents who wish to declare a proposed amendment futile." *Romero v. Allstate Ins. Co.,* 2010 WL 2996963, at *4 (E.D. Pa. July 28, 2010). In determining whether amending the complaint would be futile, a court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Futility under this standard "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Great W. Mining & Mineral Co. v. Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). For leave to amend to be denied on the basis of futility, the proposed amendments must be "clearly" futile. *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001). Here, Plaintiff's proposed amended complaint states viable claims, supported by plausible, well-pled facts ascertained in discovery.

**A.  Violations of the Pennsylvania WESCA, 18 Pa. C.S. §§ 5703, 5725 (Count VI)**

Plaintiff's claims under WESCA's civil cause of action are not futile. "The WESCA offers a private civil cause of action to '[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [the statute]' against 'any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication.'" *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (quoting 18 Pa. C.S. § 5725(a)). Here, Plaintiff has stated a prima facie case under WESCA § 5725(a), through a violation of § 5703. Section 5703 provides that "a person is guilty of a felony of the

7

third degree if he "internationally intercepts . . . any wire, electronic or oral communication."[1] Plaintiff has alleged that CMU's Chief Diversity Officer, Wanda Heading-Grant intentionally used an electronic device to record a November 2, 2022 meeting between Plaintiff, Professor Arscott and herself, without Plaintiff's consent or knowledge. Ex. A ¶ 47. Plaintiff specifically alleges that during the meeting each participant was in a private space in Pennsylvania, that Plaintiff expected the meeting to be confidential, and that Plaintiff was not aware of the recording until after this litigation commenced. *Id.* ¶ 48.

Plaintiff has also plead facts showing that CMU is liable for the violations through its agent, Heading-Grant, who, engaging in conduct of the kind and nature CMU hired her to perform, recorded the November 2, 2022 meeting with a purpose to serve CMU in evading repercussions for violations of federal discrimination laws. *Id.* ¶¶ 49-51; *see Care v. Reading Hosp. & Med. Ctr.*, 2004 WL 728532, at *13 (E.D. Pa. Mar. 31, 2004) (permitting amended complaint alleging wiretapping violations against defendant "based upon the alleged acts of [defendant's] employees, under the theory of respondeat superior.").

Plaintiff's WESCA claim is timely. The two-year statute of limitations applicable to Plaintiff's claim did not begin running until her discovery of the recording of the November 2, 2022 meeting on September 19, 2025. *See* 18 Pa. C.S. § 5747(e); Ex. A ¶ 51.

### B. Intentional Infliction of Emotional Distress (Count V)

With respect to IIED, Plaintiff's amendments are not futile, because her new allegations adequately plead the claim, including by addressing the deficiency previously identified by the Court. To state a claim for IIED, Plaintiff must allege that CMU recklessly and/or intentionally

---

[1] WESCA § 5703(2)-(3) also prohibits the intentional disclosure or use of "the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through . . . interception[.]"

engaged in "extreme and outrageous conduct" "going beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See* Mem. Op. (Dkt. No. 40) at 41. In support of her IIED claim, Plaintiff's initial complaint plead that Professor Arscott intentionally and outrageously discriminated against her, and that CMU was aware of Arscott's conduct and took no action, thereby ratifying her conduct. This Court did not rule that such conduct was not "extreme and outrageous . . . going beyond all bounds of decency," but determined the allegations were insufficient to show that the conduct was "actuated, at least in part, by a purpose to serve" CMU. *Id.* at 42.

Plaintiff's amended complaint now includes additional allegations, adduced from discovery, that demonstrate the full extent of CMU's extreme and outrageous conduct. It also adequately pleads how CMU's agents engaged in that conduct with a purpose to serve CMU—that purpose being to assist CMU in avoiding accountability for incidents of antisemitism on its campus, and avoiding liability for violations of federal discrimination laws.

Specifically, the additional extreme and outrageous conduct alleged includes CMU's reckless indifference to multiple heinous acts of antisemitism creating a hostile campus environment, Ex. A ¶ 24; the intentional and/or reckless cancellation of antisemitism programming Canaan had been asked to assist with, despite a clear and present need for it, *id.* ¶ 85; the insidious assurances provided to Plaintiff by administrators tasked with supporting students facing discrimination who were in fact recording her without consent and intentionally and/or recklessly delaying her and steering her away from filing a formal complaint, *id.* ¶¶ 34-60; the Title IX Coordinator insistently dissuading Plaintiff from filing a formal complaint, *id.* ¶¶ 61-64; the subsequent exclusion of Plaintiff from class activities as the only Jewish student in her studio classes, *id.* ¶¶ 67-73; and hostile, flagrant retaliation from her professors, *id.* ¶¶ 65-75.

9

The amended allegations include that Plaintiff was the victim of a felony CMU committed against her. Specifically, Plaintiff's private conversation with Professor Arscott regarding the extreme impact of her hateful, antisemitic comments were recorded contrary to Pennsylvania law. *Id.* ¶¶ 47-53. This conduct, including the shocking antisemitic comments, hostile, intentional and reckless indifference to antisemitism and an utter disregard for the safety and wellbeing of Jewish students on campus, is extreme and outrageous, beyond all bounds of decency, as required under the IIED standard. Indeed, if responding to a report of antisemitism by committing a felony at the expense of a Jewish student that CMU's Chief Diversity Officer was hired to protect does not meet the IIED standard, it is unclear what would.

Plaintiff's amended complaint, as well as the factual record in this lawsuit, now also adequately allege that the purpose of the above conduct was to serve CMU in evading its responsibilities under its own policies and under federal discrimination laws. *Id.* ¶¶ 47, 49, 63-64. CMU's faculty and administrators engaged in the above conduct through the performance of tasks of the kind and nature CMU hired them to perform (such as responding to student complaints, facilitating meetings, determining whether to conduct anti-discrimination programming, and advising students of CMU's formal complaint procedures). *Id.* ¶¶ 34-47, 61-64, 81-88. CMU ratified this conduct. That CMU did in fact seek to use the felony recording of Plaintiff for the exact alleged purpose of avoiding liability in this lawsuit only underscores that CMU was served by the Chief Diversity Officer's actions, as intended. *Id.* ¶ 51. As such, Plaintiff's amended complaint adequately pleads an IIED claim against CMU and is not futile.

## CONCLUSION

For the foregoing reasons, Plaintiff Yael Canaan respectfully requests this Court grant her leave to file the Amended Complaint annexed as Exhibit A to her motion.

Dated: November 10, 2025

          Respectfully submitted,

          SIMPSON THACHER & BARTLETT LLP

          */s/ Bryce L. Friedman*
          Bryce L. Friedman (NY I.D. 2904035)
          Sarah Phillips (NY I.D. 4788121)
          Simpson Thacher & Bartlett LLP
          425 Lexington Avenue
          New York, NY 10017-3903
          Telephone: (212) 455-2235
          E-mail: bfriedman@stblaw.com
          E-mail: sarah.phillips@stblaw.com

          THE LAWFARE PROJECT
          Ziporah Reich (NY I.D. 3979630)
          The Lawfare Project
          633 Third Avenue, 21st Floor
          New York, NY 10017
          Telephone: (212) 339-6995

          *Counsel for Plaintiff Yael Canaan*