IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAEL CANAAN, ) | Civil Action No. 2:23-cv-02107-WSH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARNEGIE MELLON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE AN AMENDED COMPLAINT**

Defendant Carnegie Mellon University (the "University") submits this Response in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint ("Motion to Amend") (Doc. No. 103), stating as follows:

**I.   INTRODUCTION**

Plaintiff's proposed amendments focus primarily on a recording of the November 2, 2022 meeting among Plaintiff, Professor Mary-Lou Arscott, and Dr. Wanda Heading-Grant. Plaintiff seeks to amend her complaint to add a new cause of action against the University for purportedly violating the Pennsylvania Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act") and to re-plead her claim for intentional infliction of emotional distress ("IIED"). The Court should deny Plaintiff's Motion to Amend because, even accepting the proposed amended allegations as true (which the University denies), Plaintiff cannot satisfy the standards for allowing leave to amend. In each instance, amendment would be futile, particularly here at the end of fact discovery and on the heels of summary judgment.

With respect to her purported Wiretap Act claim, the component of the claim focused on discovery conduct – *i.e.*, the production of the recording and playing of a snippet during Plaintiff's

deposition – is separately not appropriate because that component does not form part of the same case or controversy as the underlying allegations and claims. The judicial privilege also provides absolute immunity for this type of discovery conduct in the litigation setting.

Additionally, Plaintiff is not clear about whether she seeks to take further discovery in support of her proposed amendments to the complaint. In one instance, Plaintiff states that "Defendant will not be prejudiced by Plaintiff's proposed amendments because they will not require additional or extended discovery." (Doc. 104, Brief at 4.) Yet, in another instance, Plaintiff states that she "does not anticipate that additional discovery will be needed to address the new claims." (Doc. 104, Brief at 7.)

In light of the lack of clarity surrounding Plaintiff's intentions, the University also opposes the Motion to Amend to the extent that Plaintiff seeks leave to take additional discovery. At this late stage, the time for pursuing new discovery has long since passed. The deadline for fact discovery was recently extended for the purpose of completing specific discovery outlined in the parties' Joint Motion to Further Extend Deadlines in Initial Case Management Order. (*See* Doc. No. 98 at 3, ¶ 6.) As relevant to this motion, the parties requested additional time "for related briefing" only – not to conduct additional discovery on any amendments Plaintiff would choose to pursue in her motion. (*Id.* at 2, ¶ 4(c).) Any such additional discovery Plaintiff may otherwise choose to pursue would be dilatory, unduly delayed, and prejudicial since Plaintiff has had the recording of the November 2, 2022 meeting since August 1, 2025 but waited until filing her Motion to Amend on November 10, 2025 to gesture at the possibility of leaving the door open to additional, unspecified discovery.

For these reasons, and the reasons set forth below, Plaintiff's Motion to Amend should be denied.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    ARGUMENT

### A.    Plaintiff Should Be Denied Leave to Assert a Claim for Violation of the Wiretap Act

Plaintiff's proposed claim for violation of the Wiretap Act contains two components: (1) the making of the recording on November 2, 2022; and (2) discovery conduct related to the recording. Amendment should not be permitted as to either component.

#### 1.    Plaintiff's Purported Claim Against the University Related to the Making of the Recording on November 2, 2022 Is Futile Because Plaintiff Cannot Establish *Respondeat Superior* Liability

Pennsylvania law recognizes that "while certain actions of willful misconduct by an employee may occur in the *course* of employment, they still fall outside the *scope* of that employment." *See Doe 6 v. Pennsylvania State Univ.*, 982 F. Supp. 2d 437, 442 (E.D. Pa. 2013). Accordingly, under Pennsylvania law, employers are rarely liable under a theory of *respondeat superior* for "outrageous" conduct of their employees. *See id.* at 441-42. That is precisely the type of conduct that Plaintiff seeks to allege here in connection with the making of the recording – referring to the making of the recording as "outrageous" more than half a dozen times in Plaintiff's

brief and proposed amended complaint.[1] (*See generally* Doc. 104, Brief.) While employers may nevertheless be subject to liability under a *respondeat superior* theory if they direct an employee to engage in the conduct at issue, no such evidence exists here. For this reason, Plaintiff's reliance on *Care v. Reading Hosp. & Med. Ctr.*, 2004 WL 728532 (E.D. Pa. Mar. 31, 2004) – the sole authority she cites in seeking leave to introduce her Wiretap Act claim – is misplaced. In *Care*, the complaint attached an employee's statement to the police in which the employee stated that he was instructed to make a recording by his superior and did so out of concern for his own job. 2004 WL 728532, at *10; *cf. Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487, 494-96 (M.D. Pa. 2019) (ruling that employer not liable by operation of *respondeat superior* where employee misused technology without the employer's knowledge). No such allegations are offered here; only conclusory statements (incapable of surviving a motion to dismiss) that the recording was made at the direction of the University, notwithstanding that Dr. Heading-Grant, who was represented by separate counsel at her deposition, invoked her Fifth Amendment rights in response to questioning about the recording. Since receiving the recording on August 1, 2025, Plaintiff has deposed eleven University witnesses, yet Plaintiff provides no evidence from any of those depositions that anyone instructed Dr. Heading-Grant to make the recording.

> 2. **Plaintiff's Purported Claim Against the University Related to Discovery Conduct Is Not a Proper Claim in This Action Because It Does Not Form Part of the Same Case or Controversy as the Title VI Claims Over Which This Court Has Original Jurisdiction and Amendment Would Be Futile**

The Court may exercise supplemental jurisdiction over claims outside of its original jurisdiction if they "are so related to claims in the action within such original jurisdiction that they

---

[1] Plaintiff also purports to assert an IIED claim, which likewise requires "outrageous" conduct. *See Hitchens v. Cnty. of Montgomery*, No. CIV.A. 00-4282, 2002 WL 253939, at *10 (E.D. Pa. Feb. 20, 2002) (citing *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)).

form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy under Article III when they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Plaintiff states that the claims she seeks to introduce "arise out of the same conduct alleged in the initial complaint" (Doc. 104, Brief at 7), but that is not true with respect to the component of her proposed Wiretap Act claim involving discovery conduct. That conduct involves the University's purported disclosure of the recording in response to Plaintiff's discovery requests and playing a snippet of the recording during Plaintiff's deposition before Plaintiff testified that she did not expect the November 2, 2022 meeting to be recorded. This component of Plaintiff's purported Wiretap Act claim pertains exclusively to the conduct of discovery in this matter and has nothing at all to do with the events alleged in the complaint. Accordingly, the Court should decline to exercise supplemental jurisdiction over this component of Plaintiff's purported claim. *See, e.g.*, *Certain Underwriters at Lloyd's, London & Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 & No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 579 (5th Cir. 2006) (holding that district court abused its discretion in exercising supplemental jurisdiction over state-law counterclaim arising from purported discovery misconduct).

Amendment with respect to this component of Plaintiff's purported Wiretap Act claim would also be futile. Plaintiff has not identified a single case in which producing a recording that is responsive to a valid discovery request was held to violate the Wiretap Act. Nor is the University aware of any such authority.

As for the playing of a brief snippet of the recording at Plaintiff's deposition, no facts of record established the prerequisites of a potential Wiretap Act violation at that time. Plaintiff was

provided the recording on August 1, 2025 – 49 days before her deposition – and her deposition was the first in the case. During that extended period of time, Plaintiff's counsel never advised the University that Plaintiff had not consented to the recording. After Plaintiff testified that she did not have any expectation that the November 2, 2022 meeting would be kept confidential, and after first being advised that a brief snippet of the recording would be played and affirmatively responding, "Okay," Plaintiff then heard a brief snippet of the recording. *See* Excerpts from Deposition of Plaintiff, attached hereto as Exhibit 1.[2] After hearing the snippet, Plaintiff testified that she was not expecting the meeting to be recorded. *See id.* The recording has not been disclosed or used by the University in any fashion since Plaintiff gave that testimony, though it appears that Plaintiff has used the recording since then; otherwise, she would not be able to represent to the Court what she alleges about the recording in her proposed amended complaint. (*See* Doc. 104-2 at ¶ 48.)

Furthermore, apart from the absence of factual predicates supporting a Wiretap Act violation through the production of the recording and playing of a snippet at Plaintiff's deposition, the judicial privilege provides absolute immunity for this type of discovery conduct in the litigation setting. The judicial privilege "entitles a person 'to absolute immunity for communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.'" *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 340 (E.D. Pa. 2021) (quoting *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004)). The judicial privilege covers counsel's communications in furtherance of their client's interests and is interpreted broadly to advance the

---

[2] In an abundance of caution, portions of the deposition excerpts are redacted so as not to risk disclosing or using, either directly or indirectly, the contents of the recording or testimony derived therefrom.

privilege's policy objectives. *Id.* (citing *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015)). These objectives include "allow[ing] participants in judicial proceedings to speak freely without fear of civil liability." *Schanne*, 121 A.3d at 947. The judicial privilege therefore protects from liability the disclosure of purportedly illegally made recordings during litigation proceedings. *See, e.g.*, *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994) (holding same under Illinois' similar wiretapping statute). In *Scheib v. Grant*, the United States Court of Appeals for the Seventh Circuit examined the purpose of the judicial privilege within the context of wiretapping laws and determined that "the truth-seeking process of a judicial proceeding will be most securely advanced if attorneys do not fear civil or criminal liability as the consequence of misjudging the legality of disclosing particular information." *Id.* Accordingly, the judicial privilege would apply to the discovery-conduct aspects of Plaintiff's purported Wiretap Act claim and renders amendment futile.[3]

### B. Plaintiff Should Be Denied Leave to Re-Plead Her IIED Claim Because Re-Pleading Would Be Futile

Plaintiff seeks to re-plead her IIED claim by adding further detail, additional purported acts of antisemitism on the University's campus, and the recording of the November 2, 2022 meeting. "The level of **outrageousness** required to support a[n IIED] claim is extraordinarily high." *Doe v. Haverford Coll.*, No. CV 23-299, 2023 WL 5017964, at *9 (E.D. Pa. Aug. 7, 2023) (emphasis added); *c.f.*, *supra* Section III.A.1. (discussing the futility of *respondeat superior* liability where outrageous conduct is alleged). According to the Supreme Court of Pennsylvania:

---

[3] The Wiretap Act does not waive the judicial privilege. *See Winig v. Off. of Dist. Att'y of Philadelphia*, 293 A.3d 1253, at *6 (Pa. Commw. Ct.), *reargument denied* (Apr. 20, 2023), *appeal granted in part*, 308 A.3d 774 (Pa. 2023) (holding that "[w]hile sovereign immunity is expressly and specifically waived in" the Wiretap Act, the Act "remains silent as to the waiver of any other form of immunity," including the judicial privilege, which is therefore preserved because Pennsylvania courts "must construe exceptions to immunity strictly" and immunity may be "waived only where waiver is expressly stated by the General Assembly").

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. ***Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal***, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' ***or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort***.

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (cleaned up and citations omitted) (emphasis added).

Re-pleading of Plaintiff's IIED claim is futile because the allegations that Plaintiff seeks to introduce in support of her claim fall well short of this standard. If Plaintiff's argument were correct, all Title VI claims, which require "*deliberate* indifference," would support an IIED claim, as would nearly any case involving intentional torts or alleged criminal conduct. But that is not standard.

To illustrate, in *Doe v. Haverford College*, the plaintiff brought an IIED claim premised on purportedly unfounded allegations that he committed sexual assault – a serious accusation of a heinous crime. 2023 WL 5017964, at *1. The plaintiff alleged that the rumor of his purported sexual assault spread throughout the campus community and even more widely as a result of social media posts accusing him of sexual assault and calling for harassment of plaintiff. *Id.* at *3. The plaintiff further alleged that he was dismissed from his athletics team, physically assaulted at a campus social event, and that his mental health and academic performance suffered significantly. *Id*. at *4. Yet, under Pennsylvania law's exacting standards for stating an IIED claim, the court not only dismissed plaintiff's claim, but found that the claim could "only be described as frivolous." *Id.* at *9. So too here.

## IV. CONCLUSION

For the reasons set forth above, Defendant Carnegie Mellon University respectfully requests that the Court deny Plaintiff's Motion to Amend.

Respectfully submitted,

Dated: November 17, 2025

*/s/ John Paul Regan*
Joshua W. B. Richards (Pa. I.D. 204315)
Patrick F. Nugent (Pa. I.D. 313979)
Saul Ewing LLP
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
Telephone: (215) 972-7737 / (215) 972-7134
E-mail: Joshua.Richards@saul.com
E-mail: Patrick.Nugent@saul.com

John Paul Regan (Pa. I.D. 320664)
Saul Ewing LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Telephone: (412) 209-2500
E-mail: JP.Regan@saul.com

*Counsel for Defendant Carnegie Mellon University*

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of Courts for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 17, 2025                                   */s/ John Paul Regan*