IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAEL CANAAN, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 2:23-cv-02107-WSH |
| CARNEGIE MELLON UNIVERSITY, | ) |
|       Defendant. | ) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff Yael Canaan respectfully submits this reply brief in further support of her motion for leave to amend her complaint to add a claim for violations of WESCA[1] (Count VI) and to re-plead her IIED claim (Count V).

**I.   Plaintiff's Proposed Amendments Are Not Futile**

Because CMU has failed to meet its "heavy burden" to articulate a basis upon which Plaintiff's amended claims are "*clearly* futile, then denial of leave to amend is improper." *Synthes Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (emphasis in original).

**A.   Plaintiff's WESCA Claim Properly Alleges CMU's *Respondeat Superior* Liability**

Plaintiff's WESCA claim against CMU for the November 2nd felony recording made by its employee Dr. Heading-Grant is not futile. Canaan alleges that Dr. Heading-Grant made the recording in the scope of her employment, with the purpose of serving CMU by collecting "evidence" regarding purported violations of Title VI that CMU could attempt to use against Canaan in a subsequent dispute. *See* Ex. A to Mot. to Amend ("Am. Compl.") at ¶ 49. Plaintiff

---

[1] 18 Pa. C.S. §§ 5703; 5725. Capitalized terms are defined as in Plaintiff's Motion to Amend.

also alleges CMU ratified this conduct by seeking to use the recording for the precise purpose contemplated by Dr. Heading-Grant. *Id.* ¶ 51. This is more than sufficient to allege CMU's liability for its servant's actions, especially given that *respondeat superior* is primarily a question of fact for a jury. *See Williams v. Rene*, 72 F.3d 1096, 1101 (3d Cir. 1995) (reversing judgment because "the *respondeat superior* question should have been submitted to the jury").

CMU responds that it cannot be liable for any employee action it did not specifically instruct. This is plainly wrong. "Liability based on *respondeat superior* arises solely on the basis of the existence of an employer-employee relationship, regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). No allegations of an explicit instruction by CMU to record Canaan are necessary to state its vicarious liability, and "liability of the employer may extend even to intentional or criminal acts committed by the servant." *Fitzgerald v. McCutcheon*, 270 Pa. Super. 102, 106 (1979).

While CMU also argues that employers cannot be vicariously liable for an employee's "outrageous" conduct, the cases it cites relate to sexual assault, which is "motivated by purely personal reasons" and, unlike Heading-Grant's recording, "certainly not actuated by any purpose of serving" the employer. *Doe 6 v. Penn. State Univ.*, 982 F. Supp. 2d 437, 443 (E.D. Pa. 2013).[2] Here, Canaan has alleged that Heading-Grant's actions were both outrageous *and* performed in service to CMU, as part of the campaign of hostility Canaan faced after reporting antisemitism. As such, the claim is not *clearly* futile as required to deny leave to amend.

**B. Plaintiff Adequately Pleads CMU's Direct Liability For WESCA Violations**

Plaintiff's WESCA claim against CMU also includes the instances in which CMU subsequently disclosed and used the November 2nd recording, including in this lawsuit, in an

---

[2] In fact, the *Doe 6* court noted that even "sexual abuse does not *always* fall outside an employee's scope of employment." 982 F. Supp. 2d at 443 (emphasis in original).

effort to undermine Canaan's reports of antisemitism.  These instances are not "discovery misconduct" unrelated to Canaan's substantive claims—CMU's use of the recording is part and parcel of its extreme and outrageous discrimination and retaliation against Canaan, which is the very basis of this case.  As such, the Court "shall have" supplemental jurisdiction over this portion of Canaan's WESCA claim under 28 U.S.C. § 1367(a).  CMU does not even discuss the discretionary grounds to decline supplemental jurisdiction in § 1367(c), which are inapplicable.  CMU's reliance on *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006) is misplaced, because it is not a Rule 15 decision and involved a federal court retaining jurisdiction over unrelated state law claims after all federal claims had been dismissed.

      CMU's invocation of the judicial privilege, and its reliance on *Scheib v. Grant*, 22 F.3d 149 (7th Cir. 1994) also misses the mark.  The "judicial privilege" immunizes *attorneys* from defamation claims regarding certain litigation-related statements.  This is not a defamation case, and Plaintiff's claims are against CMU, not its counsel.  While *Scheib* found that the judicial privilege granted immunity to claims against *attorneys* for violations of Illinois' wiretapping statute, other courts have noted *Scheib* does *not* hold "that the attorney litigation privilege would extend to a non-attorney party" like CMU here.  *See Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2021 WL 1209296, at *9 (N.D. Ill. Mar. 31, 2021) (citing Fifth Amendment to deny motion to compel non-attorney defendant to produce illegally wiretapped conversations).  Further, many courts do not recognize a judicial privilege for attorneys who violate wiretap laws in litigation where the statute—like WESCA—applies to "*any* person" with no attorney exception.[3]  *See, e.g.*, *Marsh v. Curran*, 362 F. Supp. 3d 320, 327 (E.D. Va. 2019) (no judicial

---

[3] Because judicial privilege does not apply to non-attorney litigants, CMU's unsupported conjecture regarding whether WESCA waives judicial privilege is irrelevant.

privilege where "none of the provided [wiretap statute] exceptions include use by an attorney in a manner intimately associated with ongoing judicial proceedings."); *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir. 1992) ("There is nothing in the [Federal Wiretap Act] which affords attorneys special treatment.").

Indeed, recognizing a judicial privilege here would "violate the clear purpose underlying the wiretapping statutes" because "[u]se and disclosure of unlawfully obtained private information harms an individual's privacy even when [it] occurs in a manner intimately associated with judicial proceedings." *Marsh*, 362 F. Supp. 3d at 328; *see also Nix v. O'Malley*, 160 F.3d 343, 353 (6th Cir. 1998) ("[z]ealous defense of a client does not permit law-breaking" under wiretap statute). For these reasons, no judicial privilege shields CMU from liability.

### C. Plaintiff Adequately Re-Pleads Her IIED Claim

Canaan's amended IIED claim alleges extreme and outrageous conduct by CMU that goes beyond Title VI's bounds into the realm of atrocious and utterly intolerable acts, including criminal ones: After reporting her professor for shocking antisemitism, CMU's Chief Diversity Officer surreptitiously recorded Canaan in hopes of obtaining "evidence" to assist CMU in undermining her claims. Canaan was then subjected to hostile retaliation and exclusion, making her educational experience intolerable. CMU was aware of Canaan's treatment, but did nothing to stop it, just as it did nothing to stop numerous other contemporaneous antisemitic acts on campus, including swastikas in library books, severe antisemitic harassment forcing a student to withdraw, and professors praising Auschwitz and greeting others with "Heil Hitler." Instead, influenced by billions in Qatari funding, CMU canceled planned antisemitism trainings, even despite the recent antisemitic murder of eleven Jews at a synagogue just minutes from campus.

Numerous courts have found that similarly serious Title VII allegations combining harassment with insidious retaliation adequately state a claim for IIED. *See, e.g.*, *Bowersox v.*

4

*P.H. Glatfelter Co.*, 677 F. Supp. 307, 311-12 (M.D. Pa. 1988) (a supervisor "subject[ing] his female employee to highly offensive speech and conduct . . . and then, as a result of her negative reaction to that conduct, mak[ing] the employee's job impossible to perform could . . . lead an average member of the community to exclaim, "Outrageous!""); *Eubanks v. Wegmans Food Mkts., Inc.*, 2006 WL 2504099, at *3 (M.D. Pa. Aug. 28, 2006) ("justice dictates [plaintiff] be given the opportunity to flesh out this [IIED] claim" involving "repeated racially derogatory remarks" and retaliation); *Clinkscales v. Children's Hosp. of Phila.*, 2007 WL 3355604, at *5 (E.D. Pa. Nov. 9, 2007) (sustaining IIED claim where "human resources officials were aware of the alleged [race-based] hostile work environment but failed to remedy the problem"). The case law confirms Canaan meets the IIED pleading standard, especially because her claim also involves felony conduct. CMU's citation to *Doe v. Haverford College*, 2023 WL 5017964 (E.D. Pa. Aug. 7, 2023) fails to illustrate futility. In that case, a student was allegedly removed from an athletic team based on a rumor, and his Title IX and retaliation claims were dismissed. Canaan's allegations and CMU's conduct are exponentially more serious, as outlined above.

## II.     Plaintiff's Proposed Amendments Are Timely And Will Not Prejudice Defendant

Plaintiff makes clear in her motion that she has no intention of seeking additional discovery regarding her amended claims; thus CMU has no claim of prejudice. Further, Plaintiff has not been dilatory, as she was only made aware of the information supporting her amendments during discovery. *See Danieli Corp. v. SMS Grp.*, 2022 WL 5247424, at *2 (W.D. Pa. Aug. 18, 2022) ("[C]ourts within this district grant leave to file amended pleadings to conform to the evidence revealed during discovery[.]"). Because CMU has failed to show futility, prejudice or undue delay, this Court should freely grant Plaintiff leave to amend in accord with Rule 15's liberal standard.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Yael Canaan respectfully requests that this Court grant her leave to file the Amended Complaint.

Dated: November 24, 2025

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

*/s/ Bryce L. Friedman*
Bryce L. Friedman (NY I.D. 2904035)
Sarah Phillips (NY I.D. 4788121)
425 Lexington Avenue
New York, NY 10017-3903
Telephone: (212) 455-2235
E-mail: bfriedman@stblaw.com
E-mail: sarah.phillips@stblaw.com

THE LAWFARE PROJECT
Ziporah Reich (NY I.D. 3979630)
633 Third Avenue, 21st Floor
New York, NY 10017
Telephone: (212) 339-6995

*Counsel for Plaintiff Yael Canaan*