IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAEL CANAAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-2107 |
| | ) |
| CARNEGIE MELLON UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Plaintiff Yael Canaan's Motion for Leave to File Amended Complaint. (Docket Nos. 103, 104, 116, 119). Defendant Carnegie Mellon University ("CMU") opposes Canaan's motion. (Docket No. 112, 113, 118, 121). For the reasons set forth below, Canaan's Motion will be GRANTED.

I.  BACKGROUND

Canaan's Complaint alleges that CMU harbors a culture of antisemitism, that certain of its professors and administrators intentionally discriminated against her and harassed her because she is Jewish and of Israeli descent, and that they were deliberately indifferent to her concerns about such discriminatory mistreatment and retaliated against her. Canaan initially asserted claims against CMU for discrimination, harassment, and retaliation in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, along with claims for breach of its own policies and intentional infliction of emotional distress ("IIED"). (Docket No. 1).

CMU moved to dismiss Canaan's Complaint in its entirety. (Docket No. 19). The Court mostly denied CMU's motion, except for the IIED claim and a portion of the claim alleging the breach of certain policies. *See* Mem. Op. (Docket No. 40), *Canaan v Carnegie Mellon University*,

1

760 F. Supp. 3d 306 (W.D. Pa. 2024). In doing so, the Court dismissed Canaan's IIED claim without prejudice because her Complaint lacked factual averments that would permit an inference for establishing *respondeat superior* liability "that the alleged extreme and outrageous conduct she endured – predominantly by Professor Arscott – was 'actuated, at least in party, by a purpose to serve the employer.'" 760 F. Supp 3d at 338 (citing *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 441 (E.D. Pa. 2014)).

After ruling on CMU's motion, the Court issued its Initial Case Management Order establishing March 1, 2025, as the deadline for filing motions to amend pleadings. (Docket No. 53). The parties thereafter commenced extensive discovery, including the production of documents and the taking of approximately 25 depositions. While the parties never sought to alter or extend the deadline for amending the pleadings, they did file, and the Court granted, two Joint Motions to Further Extend Deadlines in Initial Case Management Order, thereby extending the deadline for completion of discovery, first from July 30, 2025, to October 31, 2025, and then through December 19, 2025. (Docket Nos. 82, 83, 98, 102).

Canaan asserts that the discovery conducted thus far adduced new evidence confirming her allegations of unlawful antisemitism. Importantly here, Canaan contends that such discovery also revealed that CMU's Chief Diversity Officer, Wanda Heading-Grant, surreptitiously recorded a private and sensitive meeting with her and Professor Arscott held on November 2, 2022, while Heading-Grant was performing her role as CMU's "facilitator" of such meetings related to bias and discrimination. Canaan further contends that Heading-Grant secretly recorded their meeting to serve CMU by collecting evidence to "leverage" against her, and that Heading-Grant's recording was done without her knowledge or consent and thus constitutes a felony under Pennsylvania law. (Docket No. 104-2, ¶¶ 2, 43, 45, 47-51, 53, 180-190). Then, Heading-Grant

asserted her Fifth Amendment rights when Canaan's counsel asked her if she did so or if she had a pattern or practice of recording student meetings, without their consent, in the scope of her duties. (Docket No. 104-2, ¶ 53). From the parties' briefing, it appears that CMU produced the recording on August 1, 2025, and used it when taking Canaan's deposition on September 19, 2025. (Docket Nos. 104, at 5; 112, at 2).

Canaan now moves[1] to amend her Complaint to add additional factual allegations, to replead her previously dismissed IIED claim, and to add a new claim for a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa. C. S. §§ 5703, 5725. Canaan attaches her proposed Amended Complaint to her motion. (Docket Nos. 104-1, 104-2). CMU opposes Canaan's motion, contending that such amended claims would be futile, "particularly here at the end of fact discovery and on the heels of summary judgment." (Docket No. 113, at 1).

II.     APPLICABLE STANDARDS

Federal Rule of Civil Procedure 15 permits a party to "amend its pleading once as a matter of course" within 21 days after serving it or within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent" or with leave of court. Fed. R. Civ. P. 15(a)(2). Additionally, "Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019).

---

[1] The Court held an informal telephonic status conference on November 3, 2025, during which it granted Canaan leave to file a motion for leave to amend her Complaint by November 10, 2025. (Docket No. 92).

3

Notwithstanding this liberal standard, "[d]enial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *See also United States ex rel. Schumann v. AstraZeneca Pharms. LP*, 769 F.3d 837, 849 (3d Cir. 2014)); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004). Rule 15(a)(2) places the burden to make such a showing on the party opposing the amendment, and the "'touchstone of the rule is a showing of a prejudice' to the opposing party." *White v. Bush*, Civil Action No. 20-2059-KSM, 2021 WL 2255981, at *4 (E.D. Pa. June 3, 2021) (citing *Price v. Trans Union,* LLC, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010)).

Additionally, Federal Rule of Civil Procedure 16(b) authorizes the Court to enter pretrial scheduling orders setting deadlines for the completion of discovery, the amendment of pleadings, and the joinder of parties, and those deadlines may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b); *Price*, 737 F. Supp. 2d at 279. Once the deadline in the scheduling order has passed, "the party seeking the amendment is effectively asking the court not only for leave to amend its pleading, but also the scheduling order," which means that the "party's request now implicates the effective administration of justice." *Id.* Accordingly, the party must show "good cause in order to procure the court's consent." *Id.*; *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020) (affirming district court's denial of motion to amend because "Rule 16(b)(4) applies once a scheduling-order deadline has passed [without a showing of] good cause"); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the

4

scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading."). "Good cause" under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order. See Fed. R. Civ. P. 16, Advisory Committee Note (1983) ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"); *Chancellor*, 501 F.Supp.2d at 701 (citing cases applying the "good cause" standard to a motion for leave to amend the pleadings after a scheduling order deadline has passed); *Albright v. Concurrent Technologies Corp.*, Civil Action No. 3:21-cv-112, 2023 WL 5548810, at * 3 (W.D. Pa. Aug. 29, 2023). Thus, "if the party was not diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to file a motion to amend its pleading." *Chancellor*, 501 F.Supp.2d at 701 .

A decision on Canaan's motion is committed to the sound discretion of the district court. *See United States ex rel. Thomas v. Siemens AG*, 593 F. App'x 139, 144 (3d Cir. 2014); *Eastern Mins. & Chems Co. v. Mahan*, 225 F.3d 330, 339-40 (3d Cir. 2000).

III.    DISCUSSION

A.  Good Cause[2]

Canaan seeks to amend her Complaint principally based on newly discovered evidence that Heading-Grant surreptitiously recorded a meeting with her and Professor Arscott that was held on November 2, 2022. CMU produced this recording to Canaan on August 1, 2025[3]. The Court notes

---

[2] CMU has not addressed and therefore does not expressly challenge whether Canaan has good cause pursuant to Fed. R. Civ. P. 16(b) to modify the deadline to amend pleadings set forth in Court's Initial Case Management Order.

[3] Canaan asserts that she was "shocked to learn of the recording" when counsel for CMU marked it as an exhibit and played it on the record at her deposition on September 19, 2025. (Docket No. 104, at 5). However, CMU asserts that it produced the recording more than a month earlier on August 1, 2025. (Docket No. 113, at 2). In her Reply, Canaan does not dispute receiving the recording on August 1, 2025. (Docket No. 116). There is nothing in the record to explain why Canaan would be "shocked to learn of the recording" on September 19th when it was produced to her counsel more than a month beforehand on August 1st. Upon realizing that the recording may have been generated in violation of the Wiretap Act, counsel requested a status conference with the Court. On September

that Canaan's original Complaint contains a specific, detailed allegation regarding this meeting, yet CMU did not produce or otherwise disclose the existence of the recording until nearly eight months after the parties held their Rule 26(f) conference on January 23, 2025. (Docket No. 48, at 2). Presumably, CMU withheld this recording from its Rule 26(a)(1) initial disclosures because it anticipated using it solely for impeachment, and there is no indication in the record whether the recording was otherwise responsive to Canaan's discovery requests and potentially producible sooner. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii). Nonetheless, Canaan's counsel asked Heading-Grant about the recording when taking her deposition on October 15, 2025, to which Heading-Grant declined to answer, invoking her privilege against self-incrimination pursuant to the Fifth Amendment.[4] (Docket No. 100-7, at 4-10). Canaan filed her Motion for Leave to File an Amended Complaint less than a month later.

Importantly, Canaan propounded questions at Heading-Grant's deposition designed to develop a foundational record for the source, authenticity, and context of the recording and of Heading-Grant's purpose(s) for making such recording. Doing so demonstrates diligence and to seek amendment based upon the recording without doing so may have been improvident. Moreover, CMU identifies no meaningful prejudice that would be caused by Canaan's proposed amendments, particularly now that Canaan has confirmed that she is not seeking additional discovery regarding her proposed IIED and Wiretap Act claims. (Docket No. 116, at 5). Based upon this record, the Court concludes that Canaan acted diligently and there is good cause in this

---

30, 2025, the Court issued an Order (Docket No. 89) scheduling that status conference for October 6, 2025. (Docket Nos. 90, 91).

[4]    The privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only at trial, but during the discovery process as well. Unlike the rule in criminal cases, however, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection. *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994) (J. Weis) (internal citation omitted).

specific instance to modify the Court's deadline for amending pleadings pursuant to Fed. R. Civ. P. 16(b).

    B. Futility

The Court also evaluates Canaan's request to add IIED and Wiretap Act claims pursuant to Fed. R. Civ. P. 15. CMU contends that both proposed claims would be futile. The Court disagrees. Futility in this context "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Great W. Mining & Mineral Co. v. Rothchild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). In determining futility, the Court applies the same standard of legal sufficiency that applies under Rule 12(b)(6). *Shane v. Fauver*, 213 F. 3d 113, 115 (3d Cir. 2000). Accordingly, this Court must accept all factual allegations contained in the proposed Amended Complaint as true, it must construe those factual allegations in the light most favorable to Canaan, and it "must determine whether, under any reasonable reading of the complaint, [Canaan] may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Such pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). In the Court's estimation, Canaan's proposed IIED and Wiretap Act claims are supported by plausible, well-pled factual averments and therefore are not futile.

      (i)      Wiretap Act

Pennsylvania's Wiretap Act "offers a private civil cause of action[5] to '[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of the [statute]' against 'any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication.' In other words, it prohibits intercepting communications while allowing someone whose communications have been intercepted to sue the offender." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (quoting 18 Pa. C.S. § 5725(a)). Here, Canaan alleges that Heading-Grant intentionally used an electronic device to record their private meeting with Professor Arscott on November 2, 2022, without her knowledge or consent. (Docket No. 104-2, ¶¶ 47-48). Nonetheless, CMU contends that the Wiretap Act claim is futile because Canaan's proposed amendments pertaining to Heading-Grant's conduct are devoid of factual averments that CMU directed Heading-Grant to record the meeting and thus fails to establish *respondeat superior* liability.

Pennsylvania law recognizes the theory of *respondeat superior* or vicarious liability, under which "an employer is liable for torts of its employees 'which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.'" *Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487, 492-93 (M.D. Pa. 2019) (citing *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 377 (E.D. Pa. 2018)); *see also Fitzgerald v. McCutheon*, 410 A.2d 1270, 1271 (Pa. Super. 1979). "The conduct of an

---

[5] The Wiretap Act also makes it a felony in the third degree if a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa. C.S. § 5703(1). It is also a felony in the third degree to intentionally disclose or endeavor to disclose the contents of such "wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication. 18 Pa. C.S. § 5703(2). It is likewise a felony in the third degree to intentionally use or endeavor to use the contents of any such "wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through" such interception. 18 Pa. C.S. § 5703(3).

employee is considered 'within the scope of employment' for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; [and] (3) it is actuated, at least in part, by a purpose to serve the employer." *Bissett*, 401 F. Supp. 3d at 492-93 (citing *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 461-62 (M.D. Pa. 2007)); *See also McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 441 (E.D. Pa. 2014); *Fitzgerald*, 410 A.2d at 1272 (citing the Restatement (Second) of Agency, §228)). "If the facts fail to support a reasonable inference that the employee was acting in furtherance of his employer's business, the servant's conduct falls outside the scope of his employment as a matter of law." *Bissett*, 401 F. Supp. 3d at 492-93 (citing *Shaup*, 2004 WL 1837030, at *2). Based upon the foregoing recitation of extant Pennsylvania law, Canaan may plead a plausible Wiretap Act claim even if her proposed Amended Complaint lacks averments that CMU expressly directed Heading-Grant to secretly record the meeting.

  Canaan's proposed Amended Complaint avers that Heading-Grant intentionally recorded their private meeting surreptitiously without Canaan's knowledge or consent, that as CMU's Chief Diversity Officer, she was the senior administrator responsible for supporting students and protecting them from discrimination, that she interacted with Professor Arscott and other DEI-related administrators regarding Canaan's complaints, and that she took responsibility for arranging and then facilitating this specific meeting with Canaan and Professor Arscott. (Docket No. 104-2, ¶¶ 2, 47-53, 175, 177, 178, 180-190). Given Heading-Grant's job title and the many averments in the proposed Amended Complaint pertaining to her duties, responsibilities, and conduct in relation to Canaan and the faculty and professors alleged to have participated in her discrimination, harassment, and retaliation, it is reasonable to infer that she holds high level responsibility within CMU for protecting students from discrimination so that CMU complies with

9

applicable nondiscrimination laws and related policies. It is also reasonable to infer that Heading-Grant is responsible for addressing and remediating students' concerns such as the complaints of antisemitism lodged by Canaan, and for facilitating meetings between students and professors to explore redress for alleged discriminatory mistreatment, as she did with Canaan and Professor Arscott on November 2, 2022. (*Id.*) Heading-Grant's actual work conduct, both generally and on November 2, 2002, falls squarely within the kind and nature of duties she is employed to perform on CMU's behalf. (*Id.*) Also, Heading-Grant arranged and facilitated the meeting at issue on campus and during work time. (*Id.*) Heading-Grant is also alleged to have recorded the meeting to preserve evidence "in an effort to help [CMU] avoid the consequences of" violating federal discrimination laws, such as for future use against Canaan, as came to fruition when CMU's counsel used it[6], presumably for impeachment purposes, when taking Canaan's deposition. (*Id.*) Canaan also avers that Heading-Grant declined to answer questions under oath during her deposition about whether she surreptitiously recorded this specific meeting or whether she had a pattern and practice of recording such meetings generally, thus generating adverse inferences that she, in fact, did those things in the regular course and scope of her duties as CMU's Chief Diversity Officer and Vice Provost for DEI. (*Id.*) These averments and the reasonable inferences drawn therefrom, including adverse inferences that may be drawn from Heading-Grant invoking her right

---

[6] CMU also contends that Canaan's Wiretap Act claim is futile because it relates to "discovery conduct" that does not form part of the same case or controversy sufficient to fall within this Court's supplemental subject matter jurisdiction and because CMU is entitled to judicial immunity from liability for producing the recording in discovery and playing a "snippet" of it at Canaan's deposition. (Docket No. 113, at 4-7). The Court disagrees at least insofar as supplemental jurisdiction and futility are concerned. First, Heading Grant's involvement with the meeting held on November 2, 2022, has always been of part of this case and allegations about it were detailed in Canaan's initial Complaint. (Docket No. 1, ¶ 37). Heading-Grant's participation in that meeting is plainly relevant to Canaan's Title VI claims and shares a common nucleus of operative facts with her Wiretap Act and IIED claims, which are based in large part upon newly discovered evidence that Heading-Grant surreptitiously recorded that meeting. Moreover, for the reasons set forth elsewhere in this Memorandum Opinion, Canaan sufficiently pleads Wiretap Act and IIED claims even if the Court were to disregard her averments that CMU and its counsel "disclosed and used the contents of the recording" pursuant to CMU's discovery obligations. (Docket No. 104-2, ¶ 186).

against self-incrimination under the Fifth Amendment, plainly support a plausible *respondeat superior* claim against CMU under the Wiretap Act. That claim is not futile as pled.

        (ii)      Intentional Infliction of Emotional Distress

While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, *see Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000), "the Pennsylvania Superior Court has recognized the cause of action and has held that, 'in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'" *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). A plaintiff who pursues an IIED claim must establish that the defendant's conduct was: "(1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." *Hitchens v. Cnty. of Montgomery*, No. 00-4282, 2002 WL 253939, at *10 (E.D. Pa. Feb. 20, 2002) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)).

To be actionable, the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Id*. (citations omitted). The conduct "must be such that 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!'" *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015) (quoting *Strickland v. Univ. of Scranton*, 700

A.2d 979, 987 (Pa. Super. Ct. 1997)) (internal quotations removed). Such claims are difficult to establish but not impossible. *See e.g.*, *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

It is for the Court "to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Swisher*, 868 A.2d at 1231 (quoting *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. 1993)); *See also L.H.*, 130 F. Supp. 3d at 927-28. At this procedural juncture, however, the Court must also accept all well-pleaded facts as true and construe all inferences in Canaan's favor. In the Court's estimation, Canaan plausibly pleads such extreme and outrageous conduct when evaluating her proposed Amended Complaint in accordance with this standard of review and without the benefit of a full evidentiary record.

Even so, Canaan seeks to re-plead her IIED claim against CMU pursuant to a *respondeat superior* theory of liability, so the Court must also evaluate the averments in her proposed Amended Complaint to determine whether she pleads sufficient facts in this regard. This time, Canaan asserts that her IIED claim is based upon the conduct committed by Professor Arscott and by a constellation of important, high-level administrators such as CMU's Dean of Students, Chief Diversity Officer and Vice Provost for DEI, Vice President of Student Affairs, and Title IX Coordinator. (Docket No. 104-2, ¶¶ 2-12, 174-179).

As with her Wiretap Act claim, to plead a plausible IIED claim pursuant to a *respondeat superior* theory, Canaan must allege facts showing that such conduct "'is of a kind and nature that the employee is employed to perform; ... occurs substantially within the authorized time and space limits; [and] is actuated, at least in part, by a purpose to serve the employer....'" *McClain*, 57 F.

Supp. 3d at 441 (quoting *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). In her initial Complaint, Canaan inadequately pled that such conduct, predominantly committed by Professor Arscott, was "actuated, at least in part, by a purpose to serve the employer." Docket No. 104-1 at 7. Canaan cures such deficiencies this time by adding many particularized averments about conduct undertaken by several important CMU administrators at times, in places, and of a kind and nature they each are employed to perform, all in service to CMU. Importantly, Canaan alleges additional factual averments concerning Heading-Grant's surreptitious recording of their meeting with Professor Arscott that supports a *resondeat superior* claim for the same reasons described above in relation to the Wiretap Act claim. Accordingly, the IIED claim is not futile as pled.

    IV.    CONCLUSION

For the foregoing reasons, Plaintiff Yael Canaan's Motion for Leave to File Amended Complaint is GRANTED.

An Order consistent with this Memorandum Opinion follows.

Dated: December 5, 2025
                                          *s/ W. Scott Hardy*
                                          W. Scott Hardy
                                          United States District Judge

cc/ecf: All counsel of record