**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAEL CANAAN,<br><br>Plaintiff,<br><br>v.<br><br>CARNEGIE MELLON UNIVERSITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:23-cv-02107-WSH |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE THE COURT'S ORDER DATED DECEMBER 5, 2025**

For the reasons set forth below, Defendant Carnegie Mellon University (the "University") respectfully requests that the Court deny Plaintiff's Motion to Enforce the Court's Order dated December 5, 2025, and enter Defendant's proposed order, attached hereto as Exhibit A.

## I. The University Complied Fully with the December 5 Order

On December 5, 2025, the Court issued an Opinion and Order granting in part and denying in part Plaintiff's motion to compel discovery concerning CMU's relationship with the State of Qatar (the "December 5 Order"). The Court analyzed the discovery's relevance and proportionality to the case's needs, bearing in mind the burden and expense. The Court found properly discoverable "specific CMU-Qatari contractual provisions and certain interactions Professor Arscott and various DEI officials have had with CMU's Doha campus" (Doc. 141 at 27), which it then outlined and described in detail. The Court denied Plaintiff's motion in all other respects.

The University complied with the December 5 Order fully and in good faith. It dedicated extensive resources and time to diligently search its records to locate all documents and information it was required to produce. The University's efforts are described in correspondence among counsel (Exhibit B), the University's June 15, 2026 submission to the Court (Exhibit C), and on the record during the June 16, 2026 status conference (Exhibit 2 to Plaintiff's Brief). Those documents also respond directly to each of Plaintiff's meritless claims about the adequacy of the University's searches for documents and information responsive to the December 5 Order.

The discovery Plaintiff now seeks goes well beyond what the December 5 Order required. For example, the particularized accounting Plaintiff seeks extends to the entire Office of the Provost (which includes roughly 30 subunits over a span of more than 20 years, many of which had and have no connection to the underlying issues in this case), whereas the December 5 Order does not; instead, it focused on specific individuals and types of funding. (Doc. 141 at 29.) Additionally, Plaintiff now seeks a particularized accounting of the full economic benefit the

University has derived from Qatar and any Qatari entity, with no limitations, even though the December 5 Order specified that this information was to be "comprised of an aggregate number inclusive of the value of Qatar's provision of CMU's campus and infrastructure in Doha, along with annualized 'Allowable Costs' and other specified payments made pursuant to the CMU-Q Agreement." (Doc. 141 at 30.) As a further example, Plaintiff seeks a response to Interrogatory 10 not limited by any objection (even though it is facially vague and ambiguous) and verified personally by the University's General Counsel, notwithstanding that Plaintiff's original Motion to Compel and the December 5 Order do not mention this interrogatory. Nor are the budgets and strategic plans in Plaintiff's proposed order identified as discoverable in the December 5 Order.

Nevertheless, and most importantly here, during negotiations, the University was (and remains) willing to undertake significant additional effort to provide the core substance of the discovery Plaintiff seeks, as reflected in the University's proposed order. (*See* Ex. A.) The University engaged in the conferral process with Plaintiff meaningfully and in good faith, focusing each interaction on concerns that were known to the University at that time and discussing potential resolutions of those concerns. Simultaneously, the University was coordinating with its constituents to assure that it can comply with the terms proposed. That step was (and is) critically important because the parties were working toward a stipulated Order that would not present the same opportunity for after-the-fact refining as ordinary discovery requests, to which parties may respond and confer among themselves to resolve concerns that may arise.

At the end of the conferral period, legitimate implementation challenges came to light, which the University has continued to work through, and which include: (1) needing to define "Qatari" consistently with federal law to ensure that the information needed for the particularized accountings could be located successfully in the University's systems; (2) needing to align the

particularized accountings to reflect standard accounting practices; and (3) needing to maintain at least some portion of the University's objections to Interrogatory 10 because, for example, depending on how one resolves the ambiguity in that interrogatory, the University may first need to determine every person who was "involved in" hiring or appointing anyone at CMU and CMU-Q for more than 20 years, which would present an extraordinary logistical and resource burden, if even possible. The University also had explored as a potential compromise whether Plaintiff would accept an overall certification from Mr. Hill, one of the University's 30(b)(6) witnesses. When Plaintiff insisted on the General Counsel, or potentially another member of senior leadership, the University's concerns with this seemingly punitive and unnecessary provision were heightened.

The University's counsel timely alerted Plaintiff's counsel to the implementation challenges the University identified at that time on a 30-minute phone call and offered to seek an extension to continue negotiations so that Plaintiff would not be prejudiced in otherwise needing to shift attention to preparing a motion. The University's counsel followed up with Plaintiff's counsel about extending negotiations, but Plaintiff would not agree to seek more time.

## II. <u>The Court Should Enter the University's Proposed Form of Order</u>

The University's proposed order aligns with the relevance and proportionality analysis the Court performed in the December 5 Order and is sufficiently specific to assure compliance on a timeline the University reasonably believes it can achieve, notwithstanding the extraordinary effort it will require. Conversely, Plaintiff's proposed order lacks needed specificity and portends further disputes and delay. The University may not realistically be able to comply with Plaintiff's order – particularly with respect to Interrogatory 10 – and attempting to do so would take many months.

To avoid uncertainty in implementation and what is meant by "Qatari relationship," the University's proposed order defines a "Qatari" consistently with federal law, specifies the components of the full economic benefit accountings to align with standard accounting practices,

and best captures returns earned on endowed and non-endowed funds. For Interrogatory 10, the University proposes focusing its answer on people in offices that are reasonably related to the case, rather than surrendering its objections (which the Court has not had occasion to consider) and committing to an enterprise-wide search going back more than 20 years, which would present extraordinary logistical challenges. The University has also addressed Plaintiff's concerns about who will verify the answer to Interrogatory 10 by agreeing to an appropriate administrator different from the individual who previously did so, rather than imposing the extraordinary measure of making the University's General Counsel a fact witness in the case, irrespective of her personal knowledge and primary responsibility to provide privileged legal advice to the University.

Plaintiff's proposed order also contains provisions that are unnecessarily punitive and mistakenly presume a lack of good faith compliance with the December 5 Order. *First*, Plaintiff's order requires the University's General Counsel to sign a sworn declaration verifying overall compliance with the proposed order based on presumed personal knowledge and involvement in the compliance process, compounding the University's aforementioned concerns about the order's breadth and lack of specificity. Plaintiff relies on *Vitamin Energy, Inc. v. Evanston Ins. Co.*, No. 2:19-CV-03672-JHS, 2023 WL 5155781 (E.D. Pa. Feb. 24, 2023), but in that case the party required to certify compliance had admitted deficiencies in their document collection and search. *Id.* at *7. That is not the case here. Moreover, the order in *Vitamin Energy* did not conscript the highest-ranking in-house attorney to perform duties that they do not directly oversee or have intimate knowledge about (indeed, the order did not assign any particular employee to certify compliance on the party's behalf). *Id.* at *9. The University is not aware of any precedent imposing Plaintiff's proposed requirement, which raises serious concerns about having the most senior legal advisor to the University, whose most fundamental responsibility is to provide privileged legal

advice to the institution, become a fact witness in the case. Even without these privilege concerns, this unprecedented requirement violates the apex doctrine. *See United States v. Medtronic, Inc.*, No. CV 15-6264, 2018 WL 11145993, at *1 n.1 (E.D. Pa. Nov. 13, 2018) (barring compelled deposition of high-ranking officer where he lacked "direct and unique knowledge" and "less burdensome means of discovery" existed). Nevertheless, the University's proposed order retains a certification requirement to be provided by one or more appropriate administrators. However, the University objects to certifying its compliance with the Section 117 reporting requirements in this document since the University already acknowledges when submitting its Section 117 reporting information to the U.S. Department of Education that it is subject to 18 U.S.C. § 1001.

*Second*, Plaintiff's order imposes attorneys' fees and costs against the University. Sanctions are unwarranted here; the University complied fully with the December 5 Order as explained in correspondence with counsel and to the Court, and on the record during the most recent status conference. Plaintiff's demand for additional discovery does not justify sanctions.

However, even if the Court were to determine that some aspect of the discovery Plaintiff now seeks falls within the scope of the December 5 Order, that determination should not warrant sanctions because the University complied with the Order reasonably and in good faith and was willing to undertake additional discovery without Court intervention. *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2021 WL 7967551, at *1 n.2 (E.D. Pa. Nov. 15, 2021) (sanctions not warranted when an "alleged failure to comply with discovery obligations was 'substantially justified' or 'harmless.' Conduct is 'substantially justified' if reasonable people could disagree as to whether a party complied with its obligations.") (citations omitted).

The University was (and remains) willing to provide the core substance of the discovery Plaintiff seeks, with clarification and parameters necessary to assure that it is able to comply.

Respectfully submitted,

Dated: August 11, 2026

*/s/ Patrick F. Nugent*

Joshua W. B. Richards (Pa. I.D. 204315)
Patrick F. Nugent (Pa. I.D. 313979)
Saul Ewing LLP
1735 Market St., Suite 3400, Philadelphia, PA 19103-7504
Telephone: (215) 972-7737 / (215) 972-7134
Joshua.Richards@saul.com / Patrick.Nugent@saul.com
*Counsel for Defendant Carnegie Mellon University*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Courts for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 11, 2026 *_/s/ Patrick F. Nugent_*